terms of this Plan. Notwithstanding the foregoing, the Indenture Trustees shall deliver the distributions in accordance with their respective Indentures.

### Section 9.7. *Compliance with Tax Requirements/Allocation*

In connection with this Plan, to the extent applicable, the Trustee in making Distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Trustee may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Trustee the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Trustee to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Trustee the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Trustee to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with this Plan.

The Creditor Trust shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to applicable withholding and reporting requirements. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

### Section 9.8. *Time Bar to Cash Payments*

Checks issued by the Creditor Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Creditor Trust by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and the right to all moneys from the voided checks shall revert to the Creditor Trust for Distribution under this Plan.

### Section 9.9. *Fractional Dollars, De Minimis Distributions*

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Creditor Trust, as successor to the Debtors shall have the discretion not to make payments of less than twenty-five ($25) on account of any Allowed Unsecured Claim, unless a specific request is made in writing to the Debtors on or before ninety days after allowance of such Claim. In addition, after the First Distribution Date, the Creditor Trust shall not be required to make any Distribution on account of any Claim in the event that the costs of making such Distribution payment exceed the amount of such Distribution payment, and all cash that otherwise would have been distributed to the Holders of such de minimis claims shall otherwise be distributed in accordance with the terms of the Plan.

Section 9.10. *Set-Offs*

The Creditor Trust, as successor to the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the Holder of such Allowed Claim. The Holders of Claims may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off any Allowed Claims such Holder possesses against any claim, rights or causes of action of any nature that the Creditor Trust, as successor to the Debtors, may hold against such Holder. Neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or such Holders of any such claims, rights and causes of action that such parties may possess under section 553 of the Bankruptcy Code.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 10.1. *Prosecution of Objections to Claims*

(a)    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as set forth in this Plan, the Creditor Trust shall have the right to make, file and prosecute objections to Unsecured Claims, Administrative Claims, Other Secured Claims and Priority Claims; provided that the Creditor Trust will not have the right, power or authority to pursue the Released Claims. The Creditor Trust shall have the right to prosecute objections to Claims previously filed by the Debtors.

(b)    Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made by the later of (a) ninety (90) days after the Effective Date: or (b) ninety (90) days after a timely Proof of Claim or request for payment with respect to such Claim is filed; provided, however, that the Creditor Trust may seek an extension of such time to object

(c)    Except as set forth in this Plan or Asset Reallocation and Settlement Agreement, nothing in this Plan. the Disclosure Statement. the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that Debtors had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in this Plan or Asset Reallocation and Settlement Agreement. upon Confirmation. the Debtors shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses of the Debtors, which shall be vested in and assigned to the Creditor Trust as of the Effective Date.

Section 10.2. *Estimation of Claims*

The Creditor Trust may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Creditor Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim. that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount

29

constitutes a maximum limitation on such Claim, the Creditor Trust may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

Section 10.3. *Cumulative Remedies*

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved or provided herein or by any mechanism approved by the Bankruptcy Court. Until such time as such Administrative Claim or Claim becomes Allowed, such Claim or Administrative Claim shall be treated as a Disputed Administrative Claim or Disputed Claim for purposes related to allocations, Distributions and voting under this Plan.

Section 10.4. *Allowance of Claims and Interests*

(a)    Disallowance of Claims:  Pursuant to sections 105 and 502(d) of the Bankruptcy Code, no Distributions will be made to Holders of Claims held by Entities from which property is recoverable under sections 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code (including the Rights of Action) until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due to the respective Debtor or the Creditor Trust are turned over to the Debtors or the Creditor Trust. Until such time as any such claim has been settled or resolved by Final Order, the Debtors or the Creditor Trust (as applicable) shall maintain a reserve in respect of such claim in accordance with Section 9.3 hereof.

(b)    Allowance of Claims:  Except as expressly provided in this Plan or Asset Reallocation and Settlement Agreement, no Claim shall be deemed Allowed by virtue of this Plan, Confirmation, or any order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim is deemed Allowed under the Bankruptcy Code.

(c)    No Distribution Pending Allowance:  If any Claim is a Disputed Claim, no distribution provided hereunder shall be made on account of such claim unless such Claim becomes an Allowed Claim.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 11.1 *Rejection of Executory Contracts and Unexpired Leases*

Any executory contracts or unexpired leases which have not expired by their own terms on or prior to the Effective Date, which have not been assumed and assigned or rejected with the approval of the Bankruptcy Court, which are not the subject of (i) a motion to assume the same pending as of the Effective Date, or (ii) not otherwise listed in a notice that the Debtors shall file and serve ten (10) days before the Confirmation Date,[2] shall be deemed rejected by the Debtors on the Effective Date or as otherwise agreed upon by the parties. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

---

[2]    The Debtors shall serve the notice via regular mail upon the (i) affected contract counter-parties, (ii) parties that have requested notice pursuant to Rule 2002, (iii) counsel to the Lenders, (iv) counsel to the Creditors' Committee and (v) US Trustee.

Section 11.2. *Rejection Damage Claims*

Notwithstanding anything in the Bar Date Order to the contrary, Claims arising out of the rejection of executory contracts or unexpired leases rejected as of the Effective Date pursuant to this Plan must be filed and served on the Creditor Trust pursuant to the procedures specified in the Confirmation Order or another order of the Bankruptcy Court, no later than thirty (30) days after the Effective Date. Any claim not filed within such time will be forever barred from assertion against the Creditor Trust, the Debtors, their estates, their respective successors or their respective properties. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under this Plan.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE
## DATE OF THIS PLAN

Section 12.1. *Conditions Precedent to Confirmation Date of this Plan*

The occurrence of the Confirmation Date shall be subject to the entry of the Confirmation Order in form and substance reasonably acceptable to Debtors, Creditors' Committee and Agent.

Section 12.2. *Conditions Precedent to Effective Date of this Plan*

The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)    Confirmation Order as Final Order:  The Confirmation Order shall, in form and substance reasonably acceptable to Debtors, Creditors' Committee and Agent, be a Final Order in full force and effect and shall not have been amended, modified, stayed or reversed.

(b)    Execution of Documents; Other Actions:  All other actions and documents necessary to implement this Plan shall have been effected or executed.

(c)    Ability to Meet Projected Cash Needs:  The Debtors shall have sufficient Cash and Assets to permit compliance with the terms and conditions of this Plan, including the satisfaction of all the projected fees and expenses of the Creditor Trust and the projected fees, expenses and wind down costs of the Debtors.

(d)    Creditor Trust:  The Creditor Trust is created pursuant to the terms of this Plan once the Bankruptcy Court has approved the identity and appointed the Trustees and approved the Creditor Trust Agreement in form and substance acceptable to the Creditors' Committee and the Agent.

Section 12.3. *Waiver of Conditions Precedent*

To the extent legally permissible, each of the conditions precedent in Sections 12.1 and 12.2 may be waived, in whole or in part, by the Debtors with consent of the Creditors' Committee and the Agent. Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than proceeding to act as if the condition no longer existed.

31

## ARTICLE XIII
## RETENTION OF JURISDICTION

Section 13.1. *Retention of Jurisdiction*

Except as otherwise provided in this Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan. The Bankruptcy Court shall also have exclusive jurisdiction:

(a)    to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any of the Debtors was or is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of this Plan. to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

(b)    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, transactions and other agreements or documents created in connection with this Plan;

(c)    to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

(d)    to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(e)    to hear and determine any timely objections to Administrative Claims or to proofs of Claims and Interests filed, both before and after the Effective Date. including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of. any Claim, in whole or in part;

(f)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(g)    to issue orders in aid of execution of this Plan:

(h)    to consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)    to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)    to hear and determine disputes arising in connection with or relating to this Plan. the interpretation, implementation or enforcement of this Plan. or the extent of any Entity's obligations incurred in connection with or released under this Plan:

(k)    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

(l)    to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument,

32

release or other agreement or document created in connection with this Plan or the Disclosure Statement;

(m)   to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)   to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-filed proofs of claim in accordance with Rule 9006(b) of the Bankruptcy Rules;

(o)   to enter a Final Decree closing the Chapter 11 Cases;

(p)   to determine matters that may arise in connection with the Creditor Trust or the Trust Agreement;

(q)   to determine and hear any actions or controversies by or against Trustees or Plan Oversight Committee; and

(r)   to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including, without limitation, the Global Settlement, or any other act or omission taken or to be taken in connection with the Chapter 11 Cases commenced against any party in the Chapter 11 Cases, including, without limitation, the Creditor Trust, the Debtors, the Creditors' Committee, the Lenders and their respective current and former directors and officers, members, agents, advisors, attorneys, advisors and other professionals and Entities employed pursuant to sections 327 and 1103 of the Bankruptcy Code.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

Section 14.1. *Title to Assets*

Except as otherwise provided by this Plan, on the Effective Date, title to all Assets shall vest in the Creditor Trust in accordance with section 1141 of the Bankruptcy Code, subject to the prepetition liens and security interests of the Agent in all such Assets other than Excluded Assets.

Section 14.2. *Releases of All Liens*

On the Effective Date, subject to the provisions of the Asset Reallocation and Settlement Agreement, all Liens on any of the Excluded Assets shall be deemed to be released and Claims related therein shall be paid pursuant to this Plan.

Section 14.3. *Modification of Plan*

Subject to obtaining the approval of the Creditors' Committee and the Agent, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order. Upon entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. Claimants that

33

have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim.

Section 14.4. *Revocation or Withdrawal*

This Plan may be revoked or withdrawn by the Debtors prior to the Confirmation Date. If this Plan is revoked or withdrawn prior to the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

Section 14.5. *Injunction*

(a)    **Except as otherwise expressly provided in this Plan, all Entities who have held, hold or may hold Claims or Interests are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Creditor Trust or the Trustees; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Creditor Trust or the Trustees; and (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, their estates, the Creditor Trust or the Trustees against the property or interests in property of any of the foregoing Entities. Except with respect to the Released Claims, nothing contained in this Plan or the Confirmation Order shall prohibit or restrain the prosecution of any Claims or Rights of Action against the Debtors' present or former directors and officers or Holders of Equity Interests based on acts, events or omissions occurring before the Petition Date.**

(b)    **With respect to the matters within the scope of Section 13.1(q) herein, all Persons and Entities shall be and are permanently enjoined from commencing or continuing any such matter except in the Bankruptcy Court and the Bankruptcy Court shall retain exclusive jurisdiction over such matters.**

Section 14.6. *Discharge*

Consistent with section 1141(d)(3) of the Bankruptcy Code, this Plan does not grant the Debtors a discharge. Notwithstanding the foregoing, except as otherwise provided herein, (1) the rights afforded in this Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, discharge and release of such Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Creditor Trust and any of its assets or properties, and (2) all Persons and Entities shall be precluded from asserting against the Creditor Trust or any of its assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date, except as otherwise provided in this Plan.

Section 14.7. *Indemnification*

**The Creditor Trust shall indemnify and hold harmless (i) Trustees, (ii) Plan Oversight Committee, and (iii) all professionals retained by the Trustee or Plan Oversight Committee (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Debtors or the implementation or administration of this Plan, if the Indemnified Parties acted**

in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Debtors, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful; provided, however, that the Unsecured Creditor Series of the Creditor Trust shall be exclusively responsible (and the Senior Lender Series shall have no obligation) for such indemnity as it relates to the Unsecured Creditors' Trustee, the Plan Oversight Committee and all professionals retained by either. To the extent the Creditor Trust indemnifies and holds harmless the Indemnified Parties comprised of the Unsecured Creditors' Trustee, Plan Oversight Committee or their professionals, as provided above, the legal fees and costs related to the defense of such claims giving rise to the right of indemnification shall be paid out of the Rights of Action Recovery. The Senior Lender Series shall be exclusively responsible (and the Unsecured Creditor Series shall have no obligation) for the foregoing indemnity as it relates to the Senior Lender Trustee, the Agent and all professionals retained by either.

Section 14.8. *Term of Existing Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

Section 14.9. *Releases*

The releases set forth in the Asset Reallocation and Settlement Agreement are approved and ratified (as applicable) as set forth herein:

(a)    Releases by the Debtors and the Creditors' Committee. Pursuant to Paragraph 4A of the Asset Reallocation and Settlement Agreement, the Debtors and the Creditors' Committee have provided the releases, waivers and discharge in respect of the Released Lender Parties as set forth therein. Pursuant to Paragraph 4C of the Asset Reallocation and Settlement Agreement, the release, waiver and discharge of the Term C Lenders is expressly limited and qualified as set forth therein.

(b)    Noteholder Releases. As of the Effective Date, each Holder of a Claim in Class 5 and each Holder of a Claim in Class 6 that is entitled to vote on this Plan shall be deemed to have unconditionally and fully waived, released and forever discharged the Released Lender Parties from any and all manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which such Holder or Trustee has had, now has, or may hereafter have against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time through and to the Effective Date, relating to or concerning the Debtors, the Credit Agreement, the Senior Subordinated Notes or the Senior Discount Notes; provided, however, that the foregoing release does not apply to claims (if any) for enforcement of the Senior Lenders' obligations under the Asset Reallocation and Settlement Agreement, and provided further that each Holder of a claim in Class 5 and each Holder of a Claim in Class 6 entitled to vote on this Plan may elect, by checking the box provided on the Ballot, not to grant the releases set forth in this Section 14.9(b); provided further, that all Noteholders that do not expressly "opt out" of the Plan releases by returning a Ballot electing such "opt out" (including all Noteholders who do not return a Ballot) or who receive a Distribution under the Plan shall be deemed to have granted the releases as set forth in Section 14.9 of the Plan. However, as provided under the Asset Reallocation and Settlement Agreement the granting of the release set forth herein shall be a condition to both (i) the receipt of any distribution under this Plan by any Noteholder, and (ii) the waiver by the Senior

Lenders of their contractual and structural subordination rights in respect of the Holders of Class 5 and Class 6 Claims. In addition, the releases set forth in and in the manner provided by Section 4.B. of the Asset Reallocation and Settlement Agreement shall be deemed delivered by the 12% Note Indenture Trustee and the 14% Note Indenture Trustee as of the Effective Date.

(c)    **Releases by the Agent and the Senior Lenders.** Pursuant to Paragraph 4D of the Asset Reallocation and Settlement Agreement, the Agent and the Senior Lenders waived and relinquished any and all interest in and claims that each of them have or may have against the Excluded Assets, including the Contributed Assets and Rights of Action, except to the extent specifically set forth in the Asset Reallocation and Settlement Agreement.

(d)    **Release of Certain Avoidance Actions.** Pursuant to Paragraph 4E of the Asset Reallocation and Settlement Agreement, the Debtors, the Creditors' Committee, the Agent and the Senior Lenders, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns, have fully waived, released and forever discharged all Avoidance Actions arising under chapter 5 of the Bankruptcy Code or otherwise relating to or concerning the conversion from recourse to non-recourse of certain loans and the deferred payment of certain bonuses, in an aggregate amount not to exceed $250,000, in respect of the Released Employees.

Section 14.10. *Exculpation and Limitation of Liability*

(a)    None of the Agent, the Debtors, the Creditor Trust, the Trustees, the Creditors' Committee, the Senior Lenders or the Indenture Trustees, nor any of their respective present of former members, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, including, without limitation, the Asset Reallocation and Settlement Agreement, the formulating, negotiating or implementing of this Plan, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct, and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11 Cases and under this Plan.

(b)    Notwithstanding any other provision of this Plan, no holder of a Claim or Equity Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Creditor Trust, the Trustees, any of the Debtors, any statutory committee, or any of their respective present or former members, officers, directors, employees, advisors or attorneys, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing this Plan, the consummation of this Plan, the confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except to the extent such right of action arises from any such party's gross negligence or willful misconduct.

(c)    The Creditor Trust shall indemnify each Person exculpated pursuant to this Section 14.10 against, hold each such Person harmless from, and reimburse each such Person for, any and all losses, costs, expenses (including attorneys' fees and expenses), liabilities and damages sustained by such Person arising from any liability described in Section 14.10(a) of this Plan.

36

Section 14.11. *Cancellation of Notes, Instruments, Debentures and Equity Securities*

On the Effective Date, except to the extent provided otherwise in this Plan, all notes, instruments, certificates and other documents evidencing Claims and all Equity Interests in any of the Debtors shall be canceled and deemed terminated, without any further act or action under any applicable agreement, law, regulations, order or rule. On the Effective Date, except to the extent provided otherwise in this Plan, any indenture relating to any of the foregoing, shall be deemed canceled as permitted by section 1123(a)(5)(F) of the Bankruptcy Code. The Indentures shall survive confirmation of this Plan solely to effectuate Distributions to be made to holders of the Senior Notes as provided herein and to enforce the rights, duties and administrative functions of the Indenture Trustees as provided herein and therein with respect to such Distributions, and permitting the Indenture Trustees to assert the Charging Lien against such Distributions for the payment of the Indenture Trustees' fees and expenses. Upon the final Distributions to the holders of the Senior Notes pursuant to this Plan, the Indentures shall be canceled and deemed terminated and the Indenture Trustees shall be discharged of any further duties, without any further act or action under any applicable agreement, law, regulations, order or rule and the obligations of the Debtors under such Indentures shall be terminated.

Section 14.12. *Post-Effective Date Fees and Expenses*

From and after the Effective Date, the Creditor Trust shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Plan Oversight Committee, the Indenture Trustees in their capacity as disbursing agents, and the Creditor Trust related to implementation and consummation of this Plan, subject to any restrictions imposed under the Cash Collateral Order, provided that such payment shall be borne by the Series of the Creditor Trust to which such fees and expenses relate.

Section 14.13. *Section 1146 Exception*

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under this Plan, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

Section 14.14. *Severability*

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors, the Creditors' Committee and the Lenders and such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

Section 14.15. *Recognition*

As of the close of business on the Record Date, the Indenture Trustees will have no obligation to recognize any transfer of Notes occurring after the Record Date. For purposes of making distributions under this Plan, the Indenture Trustees will be entitled to recognize and deal for all purposes herein with only those holders of record stated on the transfer ledger maintained by the Indenture Trustees or their designees as of the close of business on the Record Date.

Section 14.16. *Governing Law*

Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and

37

construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New York.

Section 14.17. *Notices*

    All notices, requests and demands to or upon the Debtors, the Creditor Trust, the Creditors' Committee or the Lenders to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following or, in the case of notice by facsimile transmission, when received by all of the following and telephonically confirmed, addressed as follows or to such other addresses as filed with the Bankruptcy Court.

        To:

        **On behalf of the Debtors:**

        Constance A. Fratianni
        Scott C. Shelley
        SHEARMAN & STERLING LLP
        599 Lexington Avenue
        New York, New York 10022
        Telephone: (212) 848-4000
        Facsimile: (212) 848-7179

          - and -

        Pauline K. Morgan
        YOUNG CONAWAY STARGATT
        & TAYLOR, LLP
        The Brandywine Building
        1000 West Street, 17th Floor
        Wilmington, Delaware 19801
        Telephone: (302) 571-6600
        Facsimile: (302) 571-1253

        **On behalf of the Creditor Trust:**

        _____
        _____
        _____
        _____
        _____
        Telephone: _____
        Facsimile: _____

        **On behalf of the Creditors' Committee:**

        Andrew I. Silfen
        ARENT FOX KINTER PLOTKIN & KAHN

38

> 1675 Broadway
> New York, NY 10019
> Telephone: (212) 484-3903
> Facsimile: (212) 484-3990

**On behalf of the Prepetition Agent:**

> Janet E. Henderson
> SIDLEY AUSTIN BROWN & WOOD
> 10 South Dearborn Street
> Chicago, IL 60603
> Telephone: (312) 853-7000
> Facsimile: (312) 853-7036

**On behalf of the US Trustee:**

> David L. Buchbinder
> Officer of the United States Trustee
> 844 King Street
> Suite 2313
> Wilmington, DE 19801
> Telephone: (302) 573-6491
> Facsimile: (302) 573-6497

Section 14.18. *Closing of Cases*

The Creditor Trust shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to obtain a Final Decree closing the Chapter 11 Cases.

Section 14.19. *Section Headings*

The section headings contained in this Plan are for reference purposes only and shall not affect the meaning or interpretation of this Plan.

Section 14.20. *Primacy of Asset Reallocation and Settlement Agreement*

To the extent of any conflict or inconsistency between the provisions of this Plan and the provisions of the Asset Reallocation and Settlement Agreement, the provisions of the Asset Reallocation and Settlement Agreement shall govern and be deemed controlling. Notwithstanding anything herein to the contrary, the rights and entitlement of the Senior Lenders, as set forth in the Asset Reallocation and Settlement Agreement, shall in no way be dependent upon, and are expressly independent of, the provisions of this Plan.

Section 14.21. *Continuing Viability of Other Orders/Agreements*

Except to the extent expressly modified by this Plan or the Asset Reallocation and Settlement Agreement, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between creditors or between the debtors and their creditors shall continue in full force and effect.

39

Section 14.22. *Administration of Wind Down Budget*

The Trustees shall provide the Agent and the Plan Oversight Committee upon request and no less frequently than monthly a written accounting of (i) all line item expenses paid in the prior month pursuant to the Wind Down Budget and (ii) all projected payments for line item expenses. As soon as the Unsecured Creditors' Trustee determines in his reasonable judgment that any line item expense provided for in the Wind Down Budget has been paid, the Trustee shall, in accordance with the Cash Collateral Order, remit to the Agent for the benefit of the Senior Lenders any and all remaining cash collateral allocable to such line item in the Wind Down Budget, provided that the Unsecured Creditors' Trustee shall remit to the Agent all remaining unused cash allocable to the Wind Down Budget no later than January 5, 2004 (or such later date as the Agent may agree in writing). Notwithstanding anything herein to the contrary, and except as expressly provided in the Asset Reallocation and Settlement Agreement, the Creditor Trust or Contributed Assets shall not be subject to any Claims payable under the Wind Down Budget.

Dated:  Wilmington, Delaware
        February _23_ , 2004

Respectfully Submitted,

INSILCO HOLDING CORPORATION
By: _Carol Wster_
Its: _President and General Counsel_

INSILCO TECHNOLOGIES, INC.
By: _Carol W_
Its: _President and General Counsel_

INNET TECHNOLOGIES, INC.
By: _Carol Wn_
Its: _Secretary and General Counsel_

INSILCO INTERNATIONAL HOLDINGS, INC.
By: _Carol Wster_
Its: _Secretary and General Counsel_

PRECISION CABLE MFG. CORPORATION
By: _Carol Wn_
Its: _General Counsel_

EYELETS FOR INDUSTRY, INC.
By: _Carol Wn_
Its: _Secretary and General Counsel_

EFI METAL FORMING, INC.
By: _Carol Wn_
Its: _Secretary and General Counsel_

STEWART STAMPING CORPORATION
By: _Carol Wster_
Its: _Secretary and General Counsel_

A - 114

STEWART CONNECTOR SYSTEMS, INC.

By: _Carol W Steib_

Its: _Secretary and General Counsel_

SIGNAL CARIBE, INC.

By: _Carol W Steib_

Its: _General Counsel_

SIGNAL TRANSFORMER CORPORATION, INC.

By: _Carol W Steib_

Its: _Secretary and General Counsel_

# EXHIBIT A

ASSET REALLOCATION AND SETTLEMENT AGREEMENT

## ASSET REALLOCATION AND SETTLEMENT AGREEMENT

THIS ASSET REALLOCATION AND SETTLEMENT AGREEMENT ("SETTLEMENT AGREEMENT") dated as of May 13, 2003, by and among (i) Insilco Technologies, Inc. ("Technologies") and its undersigned affiliated debtors (together with Technologies, the "Debtors") in the administratively consolidated chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") bearing docket number 02-13672 (KJC) (the "Chapter 11 Cases"), (ii) the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "Creditors' Committee"), (iii) Bank One, NA as agent (the "Agent") and the lenders, including Bank One, NA, under the Second Amended and Restated Credit Agreement dated as of August 25, 2000, as amended (the "Credit Agreement") that have consented to the terms of this Settlement Agreement (the "Senior Lenders")[1], (iv) Wachovia Bank, National Association, as indenture trustee for the 12% senior subordinated notes due 2007 (the "12% Senior Subordinated Notes") issued by Technologies ("Wachovia") and (v) U.S. Bank, N.A. ("U.S. Bank") as the indenture trustee for the 14% senior discount notes due 2008 (the "14% Senior Discount Notes") issued by Insilco Holding Co. (collectively, the parties to this Settlement Agreement are hereinafter referred to as the "Parties")  Except as expressly provided otherwise herein, the terms and provisions of this Settlement Agreement shall become effective and binding upon the Settlement Effective Date, as defined in Paragraph 6 below.

## RECITALS

---

[1] As used herein, the term "Senior Lenders" does not include those lenders participating in Term Loan C, except in respect of Paragraph 1 only, wherein the term "Senior Lenders" shall include those lenders participating in Term Loan C

3

    e.   Share Sale and Asset Purchase Agreement between Insilco Technologies, Inc. and Stephen Bullock, dated as of December 15, 2002.

    C.   On January 3, 2003, the Office of the United States Trustee appointed five members to serve on the Creditors' Committee in these cases.

    D.   On January 14, 2003, the Creditors' Committee and Wachovia filed objections to the bidding procedures. After extensive negotiations with the Creditors' Committee and Wachovia at the January 16, 2003 hearing to consider approval of the bidding procedures, the Debtors consented to various amendments to Debtors' proposed bidding procedures and agreed to continue the hearing on the Sale Motions until March 7, 2003.

    E.   On January 16, 2003, the Bankruptcy Court entered the Final Order Authorizing Use of Cash Collateral and Granting Replacement Liens (the "Cash Collateral Order"). Annexed to the Cash Collateral Order as Exhibit B is a budget listing anticipated wind down expenses (the "Wind Down Budget"), including line items for payments that may be triggered under the Debtors' Key Executive and Key Employee Severance Plan (the "KESP") and the Debtors' Key Executive and Key Employee Retention Plan (the "KERP"). Paragraph 3 of the Cash Collateral Order provides that, subject to certain limitations, to the extent amounts allocated to line items other than "Selling Costs" in the Wind Down Budget exceed the amounts necessary to fund such line items, then up to $500,000 of the amount allocated to non "Selling Costs" line items may be reallocated and used by the Debtors' estates for other necessary expenses for a period of six months following the completion of the Sales (the "Reallocated Monies"), at which time the remaining balance of the Reallocated Monies shall be returned to the Agent.

4

F.    On January 30, 2003, the Court docketed the orders approving the Bidding

Procedures. With respect to the Custom Assemblies deal and the N. Myrtle Beach deal, the

Debtors submitted revised orders to effect certain ministerial changes, on or about February 6,

2003. These revised orders were entered by the Bankruptcy Court on February 19, 2003.

G.    On February 26, 2003, the Creditors' Committee and Wachovia filed

objections to the Sale Motions, and on March 6, 2003, the Creditors' Committee filed a

supplement to the objection (collectively, the "Sale Objections").

H.    On March 5, 2003, the Creditors' Committee filed a motion seeking inter

alia appointment of a chapter 11 trustee for the Debtors' estates or an examiner (the "Trustee

Motion").

I.    At the Sale Hearing on March 7, 2003, the Debtors presented argument

and evidence in support of the Sales. Prior to the Committee and Wachovia presenting evidence

in support of the Sale Objections and a ruling by the Bankruptcy Court on the Sale Motions,

counsel for the Debtors, the Agent and the Creditors' Committee informed the Bankruptcy Court

that they, together with Wachovia, had reached a settlement in principle pursuant to which the

Sale Objections were withdrawn. Counsel for the Debtors, the Agent and the Creditors'

Committee described certain of the general terms and conditions of the settlement on the record

at the Sale Hearing and noted that the settlement was subject to definitive documentation and

certain further approvals, including Bankruptcy Court approval and, in the case of the Agent,

approval of the terms of the settlement by the requisite majorities of the Senior Lenders sufficient

to bind the Senior Lenders, including as a class under a plan incorporating the settlement terms,

if necessary.

Claim is impaired under the Plan and is not of a Class that is deemed to have accepted or rejected the Plan pursuant to sections 1126(f) and (g) of the Bankruptcy Code and (b) either (i) such Holder's Claim has been scheduled by the Debtors (and such Claim is not scheduled as disputed, contingent or unliquidated), or (ii) such Holder has filed a proof of claim on or before the Bar Date

Any holder of an Interest in the Debtors is not entitled to vote to accept or reject the Plan because Class 8 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Unless otherwise permitted in the Plan, the holder of any Disputed Claim is not entitled to vote with respect to such Disputed Claim, unless the Bankruptcy Court, upon application by such holder, temporarily allows such Disputed Claim for the limited purpose of voting to accept or reject the Plan. Any such application must be heard and determined by the Bankruptcy Court prior to the Confirmation Hearing. A vote on the Plan may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C. Vote Required for Acceptance by Classes of Claims

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan. Thus, acceptance by a class of claims occurs only if at least two-thirds in dollar amount and a majority in number of the holders of such claims voting cast their ballots in favor of acceptance. A Class of Holders of Claims shall be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a Ballot by the Ballot Date

CREDITORS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE DISCLOSURE STATEMENT ORDER AND THE PLAN FOR A FULL UNDERSTANDING OF VOTING REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, USE OF BALLOTS AND MASTER BALLOTS.

## ARTICLE VII
## CONFIRMATION OF THE PLAN

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

## A. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. By order of the Bankruptcy Court, the Confirmation Hearing has been scheduled for April 28, 2004 at 10:00 a.m (prevailing Eastern Time) before the Hon. Kevin J. Carey in United States Bankruptcy Court for the District of Delaware, 900 Market Street, Courtroom 1, Philadelphia, Pennsylvania. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court and set forth the name of the objecting party, the nature and amount of the Claim or Equity Interest held or asserted by the objecting party against the Debtors' estates or property, the basis for the objection and the specific grounds therefor. The objection, together with proof of service thereof, must then be filed with the

WP3:973405 1                                                                                                      61683 1001

A - 120

Bankruptcy Court, with a copy to chambers, and served upon (i) Shearman & Sterling LLP, Attorneys for the Debtors, 599 Lexington Avenue, New York, New York 10022, Attn: Constance A. Fratianni, Esq. and Scott C. Shelley, Esq.; (ii) Young Conaway Stargatt & Taylor, LLP, Attorneys for the Debtors, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Pauline K. Morgan, Esq.; (iii) Arent Fox Kitner Plotkin & Kahn PLLC, Attorneys for the Creditors Committee, 1675 Broadway, New York, NY 10019, Attn: Andrew Silfen, Esq.; (iv) Sidley Austin Brown & Wood, Attorneys for the Lenders, Bank One Plaza, 10 S. Dearborn Street, Chicago, IL 60603, Attn: Janet Henderson, Esq.; and (v) Office of the U.S. Trustee, J. Caleb Boggs Federal Building, Suite 2313, Wilmington, DE 19801, Attn: David L. Buchbinder

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY AND PROPERLY SERVED AND FILED BY APRIL 19, 2004 AT 4:00 P.M. (PREVAILING EASTERN TIME), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## B. Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that the Plan (a) is accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (b) is feasible and (c) is in the "best interests" of Holders of Claims and Equity Interests impaired under the Plan.

### 1. Acceptance

Claims in Class 4, 5, 6 and 7 are impaired and the Holders of such Claims are entitled to vote on the Plan.

Claims in Class 1, 2 and 3 are unimpaired by the Plan, and the Holders thereof are conclusively presumed to have accepted the Plan.

Holders of Class 8 Equity Interests are deemed to have rejected the Plan because they will not receive a Distribution.

### 2. Fair and Equitable Test

The Debtors will seek to confirm the Plan notwithstanding the nonacceptance or deemed nonacceptance of the Plan by any impaired Class of Claims. To obtain such confirmation, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such dissenting impaired Class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class receives more than it is entitled to for its claims or interests. The Debtors believe that the Plan satisfies this requirement.

The Bankruptcy Code establishes different "fair and equitable" tests for secured claims, unsecured claims and interests, as follows:

(a)    <u>Secured Claims</u>: Either the plan must provide: (i) for the holders of such claims to retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another

entity, to the extent of the allowed amount of such claims, and each holder of a claim receives deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; (ii) for the sale of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale; or (iii) for the realization by such Holders of the indubitable equivalent of such claims.

(b)    Unsecured Claims:  Either (i) each Holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the Holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

(c)    Equity Interests:  Either (i) each interest holder will receive or retain under the plan property of a value equal to the greater of (y) the fixed liquidation preference or redemption price, if any, of such stock or (z) the value of the stock, or (ii) the Holders of interests that are junior to the stock will not receive any property under the plan.

THE DEBTORS BELIEVE THAT THE PLAN MAY BE CONFIRMED ON A NONCONSENSUAL BASIS (PROVIDED AT LEAST ONE IMPAIRED CLASS OF CLAIMS VOTES TO ACCEPT THE PLAN). ACCORDINGLY, THE DEBTORS WILL DEMONSTRATE AT THE CONFIRMATION HEARING THAT THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE AS TO ANY NON-ACCEPTING CLASS.

## C.  Feasibility

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor other than as set forth in such plan. The Plan contemplates that all assets of the Debtors will ultimately be disposed of and all proceeds of the assets will be distributed to the creditors pursuant to the terms of the Plan. Since no further financial reorganization of the Debtors will be possible, the Debtors believe that the Plan meets the feasibility requirement. In addition, based upon the availability of assets for distribution resulting from the Going Concern Sales and the Asset Reallocation and Settlement Agreement, the Debtors believe that sufficient funds will exist at confirmation to make all payments required by the Plan.

### 1.  "Best Interests" Test

With respect to each impaired Class of Claims and Equity Interests, confirmation of the Plan requires that each such Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

This analysis requires the Bankruptcy Court to determine what the Holders of Allowed Claims and Allowed Equity Interests in each impaired class would receive from the liquidation of the Debtors' assets and properties in the context of chapter 7 liquidation cases. The value that would be available for the satisfaction of Unsecured Claims and Equity Interests of the Debtors would consist of the cash and other assets reallocated to general unsecured creditors by the Senior Lenders pursuant to the Asset Reallocation and Settlement Agreement, the proceeds, if any, resulting from the disposition of the

unencumbered assets of the Debtors, augmented by the unencumbered Cash, if any, held by the Debtors at the time of the commencement of the liquidation cases. The Debtors do not believe that they own any unencumbered assets. The value available for distribution to unsecured creditors and the Holders of Equity Interests would be reduced by the costs and expenses of the liquidation and by such additional administrative and priority claims that may result from the termination of the Debtors' business and the use of chapter 7 for the purposes of liquidation.

The Debtors' costs of liquidation under chapter 7 would include the fees payable to a trustee in bankruptcy, as well as those payable to attorneys, real estate brokers, accountants and other professionals that such a trustee may engage, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Cases, such as compensation for attorneys, financial advisors, accountants and costs and expenses of members of any official committees that are allowed in the chapter 7 cases.

The foregoing types of Claims and such other claims which may arise in the liquidation cases or result from the pending Chapter 11 Cases would be entitled to be paid in full from the unencumbered liquidation proceeds, if any, before the balance of those proceeds would be made available to pay prepetition Claims.

To determine if the Plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the Debtors' unencumbered assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of Claims and Equity Interests under the Plan.

The Asset Reallocation Settlement Agreement is, by its terms and pursuant to the Bankruptcy Court order approving the agreement, dated June 16, 2003, binding upon a chapter 7 trustee. Because the Asset Reallocation and Settlement Agreement is binding upon a chapter 7 trustee, and because the Debtors have no unencumbered assets, creditors will receive no greater dividend under chapter 7 than under the Plan.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors, including (a) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee and (b) the anticipated erosion in value of assets in a chapter 7 case resulting from and the "forced sale" atmosphere that would prevail, the Debtors believe that confirmation of the Plan will provide each holder of an Allowed Claim with more than the amount it would receive pursuant to liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

**ARTICLE VIII**
**FINANCIAL INFORMATION**

The Debtors have filed Statements of Financial Affairs and Schedules of Assets and Liabilities with the Bankruptcy Court as required by the Bankruptcy Code. As debtors in possession, the Debtors have filed and will continue to file monthly operating reports required by the United States Trustee operating guidelines. This financial information may be examined in the Bankruptcy Court Clerk*s Office. Also, attached hereto as Exhibit C is the Debtors' most current unaudited balance sheet.

**ARTICLE IX**
**ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

If the Plan is not confirmed and consummated, the alternatives include (a) liquidation of the Debtors under chapter 7 of the Bankruptcy Code or (b) dismissal of the Chapter 11 Cases.

50

## A. Liquidation Under Chapter 7

If no plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to liquidate any remaining assets of the Debtors for distribution to their creditors in accordance with the Asset Reallocation and Settlement Agreement. The Debtors believe that conversion of the Cases to cases under chapter 7 of the Bankruptcy Code would result in diminished distributions to creditors due to the projected reduced value the Debtors' estates would realize from their remaining assets due to the "forced sale" environment of a chapter 7 liquidation, the increased costs of administration and potential difficulties of implementing the Asset Reallocation and Settlement Agreement in chapter 7 proceedings. The Debtors' liquidation analysis is attached hereto as <u>Exhibit D</u>.

## B. Alternative Chapter 11 Plan

If the Plan is not confirmed, the Debtors, the Creditors' Committee, or any of the parties in interest could attempt to formulate a different chapter 11 plan. However, the Asset Reallocation and Settlement Agreement has been approved by a final order of the Bankruptcy Court and is binding on all parties in interest. Accordingly, any plan proposed by a party other than the Debtors would have to incorporate the Asset Reallocation and Settlement Agreement, and would yield no greater dividend to unsecured creditors. Moreover, in light of the additional administrative expenses attendant to an alternative plan, it is doubtful that sufficient funds would be available to pay such expenses and confirm an alternative plan. The Debtors believe that the Plan described herein will provide the greatest and most expeditious return to creditors.

### ARTICLE X
### CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The confirmation and execution of the Plan may have tax consequences to Holders of Claims and Equity Interests. The Debtors do not offer an opinion as to any federal, state, local, or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Plan. All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Plan. THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS LEGAL OR TAX ADVICE TO ANY CREDITOR.

### ARTICLE XI
### CONCLUSION AND RECOMMENDATION

The Debtors, the Agent for the Lenders and the Creditors' Committee all believe that the Plan is in the best interests of all Holders of Claims and urge the Holders of impaired Claims in Classes 4, 5, 6 and 7 to vote to accept the Plan and to evidence such acceptance by returning their ballots to the Balloting Agent at the address set forth in Article VI of this Disclosure Statement so that they will be actually received on or before 4:00 p.m., prevailing Eastern Time, on April 19, 2004.

Dated:  Wilmington, Delaware
February  /3  , 2004

INSILCO TECHNOLOGIES, INC.

By: _____

Its: _____

INSILCO HOLDING CORPORATION

By: _____

Its: _____

INNET TECHNOLOGIES, INC.

By: _____

Its: _____

INSILCO INTERNATIONAL HOLDINGS, INC.

By: _____

Its: _____

PRECISION CABLE MFG. CORPORATION

By: _____

Its: _____

EYELETS FOR INDUSTRY, INC.

By: _____

Its: _____

EFI METAL FORMING, INC.

By: _____

Its: _____

STEWART STAMPING CORPORATION

By: _____

Its: _____

A - 125