STEWART CONNECTOR SYSTEMS, INC.

By: _[signature]_

Its: Secretary and General Counsel

SIGNAL CARIBE, INC.

By: _[signature]_

Its: General Counsel

SIGNAL TRANSFORMER CORPORATION, INC.

By: _[signature]_

Its: Secretary and General Counsel

**EXHIBIT A**

AMENDED JOINT LIQUIDATING PLAN

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
                                     :      **Chapter 11**
                                     :
**In re**                            :      **Case No. 02-13672 (KJC)**
                                     :
**INSILCO TECHNOLOGIES, INC., et al.,[1]** :
                                     :      **(Jointly Administered)**
                **Debtors.**         :
                                     :
---------------------------------------------------x

## AMENDED JOINT LIQUIDATING PLAN PURSUANT TO
## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

SHEARMAN & STERLING LLP
Constance A. Fratianni
Scott C. Shelley
Susan A. Fennessey
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

– and –

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Pauline K. Morgan (Del. 3650)
Maureen D. Luke (Del. 3062)
Sharon M. Zieg (Del. 4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Co-Counsel for the Debtors and Debtors in Possession

Dated: February 13, 2004

---

[1]  The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet
Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry,
Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe,
Inc. and Signal Transformer Co., Inc.

ii

# TABLE OF CONTENTS

Page

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW** ........................................................................1

Section 1.1. Rules of Interpretation, Computation of Time and Governing Law ........................1
Section 1.2 Defined Terms ..................................................................................................1

**ARTICLE II SUBSTANTIVE CONSOLIDATION OF DEBTORS; CANCELLATION OF INTERCOMPANY CLAIMS** ........................................................................11

Section 2.1 Substantive Consolidation ................................................................................11
Section 2.2. Cancellation of Intercompany Claims ..............................................................11

**ARTICLE III ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES** ........................12

Section 3.1 Introduction. ...................................................................................................12
Section 3.2 Administrative Claims ......................................................................................13
Section 3.3. Statutory Fees ...............................................................................................13
Section 3.4. Professional Fees ...........................................................................................13

**ARTICLE IV CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS** ........................................................................................14

Section 4.1. Summary. ......................................................................................................14
Section 4.2. Class 1 – Senior Lenders' Claims ....................................................................15
Section 4.3 Class 2 – Other Secured Claims .......................................................................15
Section 4.4. Class 3 – Priority Claims ................................................................................16
Section 4.5. Class 4 – General Unsecured Claims ...............................................................16
Section 4.6. Class 5 – Senior Discount Notes .....................................................................17
Section 4.7. Class 6 – Senior Subordinated Notes ..............................................................17
Section 4.8. Class 7 – Term-C Loan Claims. .......................................................................18
Section 4.9 Class 8 – Equity Interests ...............................................................................18

**ARTICLE V ACCEPTANCE OR REJECTION OF PLAN** ...............................................18

Section 5.1 Voting Classes .................................................................................................18
Section 5.2 Acceptance by Class of Creditors and Holders of Interests ..............................18
Section 5.3. Cramdown. .....................................................................................................18

**ARTICLE VI EFFECT OF CONFIRMATION** .................................................................19

Section 6.1. Vesting of Assets in the Creditor Trust ............................................................19
Section 6.2. Authority to Effectuate Plan ...........................................................................19
Section 6.3. Dismissal of Officers and Directors and Dissolution of the Debtors and Board...20
Section 6.4. Status Reports ...............................................................................................20
Section 6.5. Escrows .........................................................................................................20
Section 6.6. Binding Effect .................................................................................................20
Section 6.7. Corporate Action ............................................................................................20
Section 6.8. Amendment of Final Cash Collateral Order ......................................................20
Section 6.9. Dissolution of Creditors' Committee; Plan Oversight Committee .......................21
Section 6.10. Late Claims ...................................................................................................21

**ARTICLE VII IMPLEMENTATION OF THIS PLAN** .......................................................21

Section 7.1. Funding of Plan ..............................................................................................21
Section 7.2. Creation of the Creditor Trust .........................................................................22

NYDOCS03/672357 16

WP3:973424 1          61683 1001

A - 129

Section 7.3  The Trustees ........................................................................................... 22

ARTICLE VIII RIGHTS OF ACTION .............................................................................. 24

Section 8.1. Maintenance of Rights of Action ................................................................ 24
Section 8.2  Preservation of All Rights of Action Not Expressly Settled or Released ........... 24

ARTICLE IX PROVISIONS REGARDING DISTRIBUTIONS ............................................. 25

Section 9.1. Distribution to Creditors ........................................................................... 25
Section 9.2. Claims Allowed as of the Effective Date ..................................................... 25
Section 9.3. Unsecured Disputed Claims Reserve .......................................................... 26
Section 9.4. Time and Manner of Payments .................................................................. 26
Section 9.5. Delivery of Distributions .......................................................................... 26
Section 9.6. Undeliverable Distributions ...................................................................... 26
Section 9.7. Compliance with Tax Requirements/Allocation ........................................... 27
Section 9.8. Time Bar to Cash Payments ...................................................................... 27
Section 9.9. Fractional Dollars, De Minimis Distributions .............................................. 27
Section 9.10. Set-Offs ................................................................................................ 28

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED CLAIMS ................................ 28

Section 10.1. Prosecution of Objections to Claims ......................................................... 28
Section 10.2. Estimation of Claims .............................................................................. 28
Section 10.3. Cumulative Remedies ............................................................................. 29
Section 10.4. Allowance of Claims and Interests ............................................................ 29

ARTICLE XI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................. 29

Section 11.1. Rejection of Executory Contracts and Unexpired Leases .............................. 29
Section 11.2. Rejection Damage Claims ........................................................................ 30

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE  DATE OF
       THIS PLAN ....................................................................................................... 30

Section 12.1. Conditions Precedent to Confirmation Date of this Plan ............................... 30
Section 12.2. Conditions Precedent to Effective Date of this Plan ..................................... 30
Section 12.3. Waiver of Conditions Precedent ............................................................... 30

ARTICLE XIII RETENTION OF JURISDICTION ............................................................ 31

Section 13.1. Retention of Jurisdiction ......................................................................... 31

ARTICLE XIV MISCELLANEOUS PROVISIONS ............................................................ 32

Section 14.1. Title to Assets ....................................................................................... 32
Section 14.2. Releases of All Liens .............................................................................. 32
Section 14.3. Modification of Plan ............................................................................... 32
Section 14.4. Revocation or Withdrawal ....................................................................... 33
Section 14.5. Injunction ............................................................................................. 33
Section 14.6. Discharge .............................................................................................. 33
Section 14.7. Indemnification ..................................................................................... 33
Section 14.8. Term of Existing Injunctions or Stays ....................................................... 34
Section 14.9. Releases ............................................................................................... 34
Section 14.10. Exculpation and Limitation of Liability .................................................... 35
Section 14.11. Cancellation of Notes, Instruments, Debentures and Equity Securities .......... 36
Section 14.12. Post-Effective Date Fees and Expenses .................................................... 36
Section 14.13. Section 1146 Exception ......................................................................... 36
Section 14.14. Severability ......................................................................................... 36

NYDOCS03/672357 16

WP3:973424 1          61683 1001

iv

Section 14.15. Recognition ........................................................................................... 36
Section 14.16. Governing Law ...................................................................................... 36
Section 14.17. Notices .................................................................................................. 37
Section 14.18. Closing of Cases ................................................................................... 38
Section 14.19. Section Headings .................................................................................. 38
Section 14.20. Primacy of Asset Reallocation and Settlement Agreement .................. 38
Section 14.21. Continuing Viability of Other Orders/Agreements ............................... 38
Section 14.22. Administration of Wind Down Budget ................................................... 39

NYDOCS03/672357 16

WP3:973424 1              61683 1001

The above-captioned debtors and debtors in possession respectfully propose the following Amended Joint Liquidating Plan (this "Plan") pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101-1330.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

Section 1.1. *Rules of Interpretation, Computation of Time and Governing Law*

(a)    For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (e) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (f) any term used in capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c)    Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

Section 1.2. *Defined Terms*

(a)    As used in this Plan, the following terms have the respective meanings specified below, which meanings are equally applicable to both the singular and plural forms of the terms defined:

Administrative Claim: Any Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors in Possession, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the administration and implementation of this Plan, any Claims for compensation and reimbursement of expenses arising during the period from and after the Petition Date and to the Confirmation Date or otherwise in accordance with the provisions of this Plan, any fees or charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930 or as determined by the Bankruptcy Court to be an Administrative Claim in a Final Order.

Administrative Claims Reserve Fund: Such amount of Cash, constituting proceeds of Excluded Assets, which are allocable to Administrative Claims under the Asset Reallocation and Settlement

2

Agreement (including under any applicable line items in the Wind Down Budget), as the Debtors and the Creditors' Committee shall determine to be necessary to retain on the Effective Date in respect of unpaid Allowed Administrative Claims and Professional Fees or, if Disputed, for the purpose of paying such Disputed amounts to the extent such Disputed amounts become Allowed. Such Administrative Claims Reserve Fund shall be equal to an amount to be disclosed in a notice that the Debtors will file and serve on or before five (5) days prior to the Confirmation Date (which amount shall not exceed the sum of (i) expenses set forth in the Wind Down Budget from the Effective Date to entry of the Final Decree), and (ii) amounts attributable to Disputed Administrative Claims (not to exceed the amounts available under the Asset Reallocation and Settlement Agreement for the payment of such claims. The Debtors will serve this notice via overnight express mail or Federal Express upon (i) the US Trustee, (ii) counsel to the Lenders, (iii) counsel to the Creditors' Committee, and (iv) parties that have requested notice pursuant to Rule 2002 of the Bankruptcy Rules.

Administrative Expense Carve Out: The amount of Contributed Assets described in Paragraph 3Aii of the Asset Reallocation and Settlement Agreement, up to $250,000 allocated for the payment of administrative expenses, as more particularly defined and provided in Section 3Aii of the Asset Reallocation and Settlement Agreement.

Agent: Bank One, N.A., as Administrative Agent under the Credit Agreement.

Allowed: The term "allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which the Debtors or other party in interest have not filed an objection by the Effective Date; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) in any stipulation with the Debtors of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, (ii) in any stipulation with the Debtors of amount and nature of Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court, or (iii) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with this Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of this Plan.

Allowed Claim/Allowed Interest: Any Claim against or Interest in the Debtors (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim against or Interests in the Debtors, (ii) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent or (iii) any Interest registered in the stock register or partnership documents maintained by or on behalf of the Debtors as of the Record Date and, in each such case in clauses (i), (ii) and (iii) above, a Claim or Interest as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to section 553 of the Bankruptcy Code.

Asset Reallocation and Settlement Agreement: The settlement agreement dated as of May 13, 2003, and approved by Order of the Bankruptcy Court entered on June 16, 2003, by and among (i) Insilco Technologies and its affiliated debtors, (ii) the official committee of unsecured creditors appointed in the Insilco Technologies bankruptcy cases, (iii) Bank One N.A., as agent and the lenders, including Bank One N.A., under the Second Amended and Restated Credit Agreement dated as of August 25, 2000, as

3

amended, (iv) Wachovia Bank, National Association as indenture trustee for the 12% senior subordinated notes due 2007 issued by Insilco Technologies, and (v) U.S. Bank, National Association as indenture trustee for the 14% senior discount notes due 2008 issued by Insilco Holding Co., Inc. A true and correct copy of the Asset Reallocation and Settlement Agreement and the Final Order approving it are attached hereto as Exhibit A and incorporated herein by reference.

Assets: Any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Rights of Action and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

Avoidance Actions: All actions, causes of action or claims of the Debtors or their estates arising under chapter 5 of the Bankruptcy Code, whether or not commenced as of the Effective Date.

Bankruptcy Code: Title 11 of the United States Code, as applicable to the Chapter 11 Cases, as amended.

Bankruptcy Court: The United States Bankruptcy Court for the District of Delaware

Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court.

Bar Date: May 15, 2003

Bar Date Order: The Order (A) Establishing Procedures and Deadlines for the Filing of (i) Proofs of Claim and (ii) Requests for Payment of Administrative Expenses, (B) Establishing Consequences for the Failure to Comply with Such Procedures and Deadlines and (C) Approving Form and Scope of Notice of Such Procedures and Deadlines, entered by the Bankruptcy Court on March 25, 2003.

Budget: The budget annexed to this Plan as Exhibit B, which sets forth the expenses of the wind-down of the Debtors from and after the Effective Date, and which is incorporated by reference in its entirety in this Plan. The Budget shall be funded exclusively from Excluded Assets subject to and in accordance with the Asset Reallocation and Settlement Agreement and as provided under the Cash Collateral Order in respect of the Wind Down Budget and the Carve Out (as defined in the Cash Collateral Order).

Cash: Cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

Cash Collateral Order: The Final Order Authorizing Use of Cash Collateral and Granting Replacement Liens entered by the Bankruptcy Court on January 16, 2003, as amended.

Chapter 11 Cases: The cases under chapter 11 of the Bankruptcy Code, commenced by Debtors in the Bankruptcy Court, being jointly administered under Case No. 02-13672 (KJC).

4

**Charging Lien:** Any lien or other priority in payment arising prior to the Effective Date to which the Indenture Trustees are entitled, pursuant to the Indentures, against distributions to be made to Noteholders

**Claim:** Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Claims Reserve Balance:** The Cash constituting proceeds of Excluded Assets in the Unsecured Creditor Disputed Claims Reserve on the first date after which (a) all Distributions or payments to be made under this Plan or a Final Order in respect of each Allowed Unsecured Creditor Claim have been made, (b) no Unsecured Creditor Claim is a Disputed Claim and (c) all payments to be made from the Unsecured Creditor Disputed Claims Reserve have been made.

**Class:** A category of Holders of Claims or Equity Interests as set forth in Article IV of this Plan.

**Confirmation Date:** The date upon which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**Confirmation Order:** The order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**Consummation:** The occurrence of the Effective Date.

**Contributed Assets:** Subject to the provisions of Paragraph 4B of the Asset Reallocation and Settlement Agreement, the following cash and proceeds have been reallocated by the Senior Lenders to the Holders of Allowed Unsecured Claims pursuant to Paragraph 3 of the Asset Reallocation and Settlement Agreement:

(a)   $1,750,000 from the Net Proceeds realized from the closing of the Going Concern Sales;

(b)   Net Proceeds from the sale of the Debtors' real properties located in Larne, Northern Ireland, Taylorsville, North Carolina and McAllen, Texas and the Net Proceeds from the sale of the miscellaneous office equipment and furnishings located in the Debtors' Columbus, Ohio offices as listed on Schedule 1 hereto; _provided, however,_ that, to the extent that the Estates do not otherwise have sufficient readily available unencumbered assets to pay Administrative Claims (other than Professional Fees) required to be paid in order to obtain confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, the Estates shall be entitled to use up to $250,000 of the Net Proceeds described in this subparagraph (b) for the payment of such Administrative Claims; and _provided further_ that the aggregate Net Proceeds provided in this subparagraph (b) shall not exceed $1,250,000 (inclusive of the $250,000 that may be allocated for Administrative Claims hereunder). Any Net Proceeds from the sale of the assets described in this subparagraph (b) that exceed $1,250,000 shall not be considered Contributed Assets and shall be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement;

5

(c)     $250,000 of cash collateral (which shall be asset sale proceeds), plus 10% of the net recoveries derived from (x) the Debtors' claims and causes of action against Star Services, Inc. relating to the litigation bearing Supreme Court of the State of New York Index No. 605676/97 and generally referred to as the "Star Services Litigation" and (y) income tax refunds received by the Debtors from and after April 15, 2003, for the purpose of establishing a "Creditor Trust" to investigate and pursue Rights of Action Recoveries, provided the Contributed Assets under this subparagraph (c) shall not exceed $750,000, with any excess over $750,000 to be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement and which excess (including any net recoveries derived from the assets described under (x) and (y) beyond the amount allocated to the Creditor Trust in this paragraph (c)) will not constitute "Contributed Assets";

(d)     the Reallocated Monies; provided, however, that the first $200,000 of any such Reallocated Monies shall be allocated first to the payment of the Allowed fees and expenses of the Creditors' Committee's professionals incurred from and after May 1, 2003, with any remaining Reallocated Monies available for the payment of other Administrative Claims.

Credit Agreement:  The Second Amended and Restated Credit Agreement, dated as of August 25, 2000, as thereafter amended from time to time, among Insilco Technologies and TAT Technology Inc., as Borrowers, U.S. Bank, N.A , as Administrative Agent, DLJ Capital Funding, Inc., as Lead Arranger and Syndication Agent, TransAmerica Business Credit Corporation and LaSalle National Bank, as Co-Documentation Agents, and the various financial institutions party thereto.

Creditor Trust:  The statutory trust created pursuant to the Delaware Statutory Trust Act (12 Del. C. Section 3801 et. seq.), organized in series and composed of an Unsecured Creditor Series and a Senior Lender Series, created pursuant to Sections 3804 and 3806(b)(2) of the Delaware Statutory Trust Act, the Trust Agreement and this Plan.

Creditor Trust Expense Fund:  A fund, which shall be held by the Creditor Trust for use in paying the expenses of administering the Unsecured Creditor Series of the Creditor Trust, consisting of the following Contributed Assets: $250,000 of cash collateral plus ten percent of the net proceeds recovered from (a) the Star Services Litigation and (b) Tax Refunds, with all of the foregoing to be used to fund prosecution of the Rights of Action and expenses of the Creditor Trust or otherwise distributed to Holders of Allowed Unsecured Claims pursuant to the provisions of the Asset Reallocation and Settlement Agreement, as incorporated in this Plan; provided, however, that the aggregate amount of the Contributed Assets funding the Creditor Trust Expense Fund shall not exceed $750,000, with any excess over $750,000 deemed not to constitute Contributed Assets and to be immediately remitted to or retained by the Agent for the benefit of the Senior Lenders in accordance with the Asset Reallocation and Settlement Agreement.

Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on or about January 3, 2003.

Debtors or Debtors in Possession:  Insilco Technologies, Inc., Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

6

Disclosure Statement:  The amended disclosure statement for this Plan, filed concurrently herewith, and approved by the Bankruptcy Court as containing adequate information on or about February 13, 2004.

Disputed:  Any Claim or Equity Interest (a) listed on the Schedules as unliquidated, disputed or contingent, or (b) as to which Debtors or any other party in interest with standing have interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtors or any other party in interest with standing in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) unless otherwise indicated in this Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

Distribution:  The Cash or Assets to be distributed to Holders of Allowed Claims under the terms of this Plan.

Distribution Date:  Any date on which the Creditor Trust makes a Distribution pursuant to this Plan.

Effective Date:  The eleventh day following the Confirmation Date or, if an appeal of the Confirmation Order has been taken, the first business day following the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions specified in Article XII of this Plan have been (i) satisfied or (ii) waived pursuant to Article XII.

Effective Date Distributions:  Those Distributions payable on the Effective Date in respect of (i) Allowed Administrative Claims, (ii) Other Secured Claims, and (iii) Priority Claims.

Entity:  An entity as defined in section 101(15) of the Bankruptcy Code.

Equity Interests:  Any equity interest in one or more of the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

Excluded Assets:  Those Assets defined as Excluded Assets in Paragraph 2 of the Asset Reallocation and Settlement Agreement.

Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

Final Order:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

First Administrative Bar Date:  May 15, 2003.

14% Note Indenture:  That certain Indenture governing the Senior Discount Notes dated August 17, 1998, between Silkworm Acquisition Corporation, as issuer, and Star Bank, N.A n/k/a U.S Bank, as indenture trustee, together with any amendments thereto

7

<u>14% Note Indenture Trustee</u>:  Star Bank, N.A. n/k/a U.S. Bank, National Association, as indenture trustee under the 14% Note Indenture.

<u>General Unsecured Claims</u>:  Unsecured Claims other than Noteholder Claims and Term-C Loan Claims.

<u>Going Concern Sales</u>:  The sales of substantially all of the Debtors' Assets pursuant to (i) an Asset Purchase Agreement with SRDF Acquisition Company, LLC for the sale of assets related to the Debtors' precision stampings business for approximately $13 million dated as of December 15, 2002; (ii) a Stock and Asset Purchase Agreement with Amphenol Corporation and Amphenol Technical Products International Co. for the sale of the assets related to the Debtors' custom assemblies business for $10.14 million, dated as of December 15, 2002; (iii) a Stock and Asset Purchase Agreement with Bel Fuse Ltd., Bel Fuse Macau, L.D.A., Bel Connector Inc. and Bel Transformer Inc. for the sale of the assets related to the Debtors passive components business for $35 million, dated as of December 15, 2002; (iv) a Share Sale and Purchase Agreement with Stephen Bullock for the sale of the Debtors' interest in Insilco Teoranta for $100,000 and the assumption of certain liabilities, dated as of December 15, 2002; and (v) an Asset Purchase Agreement with LL&R Partnership for $1.7 million for the sale of the Debtors' North Myrtle Beach, South Carolina facility, dated as of December 15, 2002.

<u>Holder</u>:  An Entity holding an Equity Interest or Claim

<u>Impaired</u>:  A Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

<u>Indenture</u>:  The 12% Note Indenture and the 14% Note Indenture.

<u>Indenture Trustees</u>:  The 12% Note Indenture Trustee and the 14% Note Indenture Trustee.

<u>Initial Distribution Date</u>:  The first Distribution Date, which date shall be fifteen days following the date on which at least 80% in amount of the General Unsecured Claims filed against the Debtors in these cases are Allowed Claims or have been disallowed or as soon as practicable thereafter.

<u>Intercompany Claims</u>:  Any Claim held by any of the Debtors against any other Debtor.

<u>Interim Compensation Order</u>:  The Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Professionals entered by the Bankruptcy Court on January 10, 2003, as amended by the amended order dated February 20, 2003

<u>Lenders</u>:  The lenders and financial institutions (and any of their successors or assigns) that are party to the Credit Agreement

<u>Lien</u>:  Any charge against or interest in property to secure payment or performance of a claim, debt or obligation.

<u>Net Proceeds</u>:  The total proceeds derived from the sale, liquidation, disposition or other recoveries on any Asset or the Going Concern Sales, net of all direct and indirect expenses of such disposition, including, but not limited to, the costs of maintaining, preparing and marketing such Asset for sale.

<u>Noteholder Claims</u>:  The Claims of Noteholders.

8

**Noteholder Release:** The release, waiver and discharge of the Senior Lenders described in Paragraph 4B of the Asset Reallocation and Settlement Agreement and set forth in Section 14 9 hereof.

**Noteholders:** The Holders of the Senior Discount Notes and the Senior Subordinated Notes.

**Noteholder's Share:** The ratio of (x) the allowed claims of Holders of Class 5 Claims or Class 6 Claims that have not granted or are not deemed to have granted the Noteholder Release to (y) the allowed claims of all Unsecured Creditors.

**Other Secured Claims:** Those Secured Claims other than the Senior Lenders' Secured Claims as of the Petition Date.

**Petition Date:** December 16, 2002.

**Plan Oversight Committee:** The committee created pursuant to Section 6.9 of this Plan.

**Priority Claims:** Those claims afforded priority under sections 507(a) and 502(f) of the Bankruptcy Code.

**Professionals:** An Entity (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**Professional Fees:** Those fees and expenses claimed by Professionals retained through a Bankruptcy Court order under sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Effective Date.

**Reallocated Monies:** A sum of Cash, not to exceed $500,000, equal to the difference between (x) the amounts allocated to line items other than "Selling Costs" in the Wind Down Budget and (y) the actual amounts necessary to fund such line items, which sum may be reallocated and used by the Debtors' estates for the purposes set forth in Paragraph 3A(iv) of the Asset Reallocation and Settlement Agreement.

**Record Date:** The Confirmation Date, unless otherwise provided by order of the Bankruptcy Court.

**Released Claims:** Those Rights of Action or Claims that were specifically waived and released under the Asset Reallocation and Settlement Agreement.

**Released Employees:** Collectively, Michael Elia, Fred Stewart, Steve Crea and Phil Pitman.

**Released Lender Parties:** The Agent and each of the Senior Lenders and each of their agents, employees and professionals.

**Releasing Estate Parties:** The Debtors and the Creditors' Committee, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns.

**Rights of Action:** All actions, causes of action, suits, rights of action, counterclaims, crossclaims, rights of setoff, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

9

contracts, controversies, agreements, promises, variances, trespasses, damages or judgments arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including the Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender Parties and Released Employees), in each case held by or in favor of any of the Debtors or their estates whether or not commenced on the Effective Date, but excluding any of the foregoing which (i) are Released Claims or (ii) relate to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.

Rights of Action Recovery:  Any Cash recovery from the Rights of Action less those costs and expenses of the Unsecured Creditors' Trustee and Plan Oversight Committee relating to the prosecution of the Rights of Actions (including those costs and expenses incurred by professionals retained by the Unsecured Creditors' Trustee and Plan Oversight Committee that are not paid from the Reallocated Monies) in excess of the Creditor Trust Expense Fund, that shall be payable to Holders of Unsecured Claims pursuant to the Asset Reallocation and Settlement Agreement, as incorporated in this Plan.

Schedules:  The Debtors' schedules of assets and liabilities, statements of financial affairs, and such other schedules filed with the Bankruptcy Court on January 23, 2003 by the Debtors in accordance with section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as amended.

Second Administrative Bar Date:  The date that is forty-five (45) days after the Confirmation Date.

Secured Claim:  A Claim against the Debtors that is secured by a Lien on the Debtors' property or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Debtors' property or to the extent of the amount subject to setoff as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code.

Senior Discount Notes:  The 14% Senior Discount Notes issued by Insilco Holding Co., f/k/a Silkworm Acquisition Corporation, due 2008, and governed by the 14% Note Indenture.

Senior Lenders:  The Lenders other than the Term C-Lenders.

Senior Lender Series:  The series of the Creditor Trust created and maintained for the benefit of the Senior Lenders.

Senior Lenders' Trustee:  The co-trustee of the Creditor Trust appointed by the Agent to administer the Senior Lender Series of the Creditor Trust.

Senior Notes:  Collectively, the Senior Discount Notes and the Senior Subordinated Notes.

Senior Subordinated Notes:  The 12% Senior Subordinated Notes issued by Insilco Technologies, Inc., f/k/a Insilco Corporation, due 2007, and governed by the 12% Note Indenture.

Series:  The Senior Lenders Series and/or the Unsecured Creditor Series.

Settlement Proceeds:  The total proceeds derived from the sale, liquidation, disposition or other recoveries on all Assets except Excluded Assets, and including, without limitation, (i) all proceeds, all Cash or cash equivalents in the possession of the Debtors as of the Effective Date or to which the Debtors

10

are entitled or receive in the future, (ii) all accounts receivable, (iii) all deposits, rebates, Tax Refunds (other than the percentage constituting Contributed Assets under the Asset Reallocation and Settlement Agreement), escrow accounts, or other similar security accounts to which the Debtors are entitled, (iv) insurance proceeds, (v) any proceeds from the disposition of Assets (other than Excluded Assets), whether before or after the Effective Date (other than the $1.75 million allocated under the Asset Reallocation and Settlement Agreement), (vi) all recoveries from the Star Services Litigation (other than the percentage constituting Contributed Assets under the Asset Reallocation and Settlement Agreement), (vii) all amounts allocated for line item expenses under the Wind Down Budget that are in excess of the actual line item expenses for which such amounts were allocated (less, for the avoidance of doubt, the Reallocated Monies), (viii) unused Professional retainers after application of such retainers in payment of allowed Professional fees pursuant to an order entered on the final fee application in respect of any Professional holding such retainer, and (ix) refunded monies relating to security for self-insured claims or unused insurance premiums.

Star Services Litigation: The Debtors' claims and causes of action against Star Services, Inc. relating to the litigation bearing Supreme Court of the State of New York Index No. 605676/97.

Tax Refunds: All tax refunds of whatever kind or nature received by or payable to the Debtors from and after April 15, 2003, from any municipal, federal, state, foreign or other taxing authority.

Term-C Lenders: DLJ Merchant Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Offshore Partners II, C.V., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB Partners, L.P., DLJ Millennium Partners, L.P., DLJ ESC II, L.P., DLJ Millennium Partners-A, L.P. and MBP II Plan Investors and their respective successors and assigns.

Term-C Loan: The loan made pursuant to Section 2.1.6 of the Credit Agreement.

Trust Agreement: The series trust agreement that documents the powers, duties and responsibilities of the Trustees, which agreement shall be in form and substance acceptable to the Creditors' Committee and the Agent and filed with the Bankruptcy Court not less than five (5) days prior to the date of the hearing fixed by the Bankruptcy Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

Trustees: The co-trustees of the Creditor Trust, comprising the Unsecured Creditors' Trustee and the Senior Lenders' Trustee.

12% Note Indenture: That certain Indenture governing the Senior Subordinated Notes, dated November 9, 1998, between Insilco Corporation, as issuer, and Star Bank, N.A., as original indenture trustee (having been succeeded by Wachovia Bank, National Association), together with any amendments thereto.

12% Note Indenture Trustee: Wachovia Bank, National Association as successor indenture trustee under the 12% Note Indenture.

Unsecured Claim: Any Claim that is not a Secured Claim or a Claim entitled to priority under section 507(a) of the Bankruptcy Code.

Unsecured Creditor Disputed Claims Reserve: The amount of the Unsecured Creditor Distribution Fund to be placed in a reserve account, as determined by the Debtors or Unsecured Creditors' Trustee before any Distribution to Unsecured Creditors is made herein in order to ensure that

11

Disputed Unsecured Claims receive their ratable share of such Distribution if such Claims ultimately become Allowed.

Unsecured Creditor Distribution Fund:  The Cash derived from Excluded Assets to be distributed to Unsecured Creditors under this Plan, in accordance with the terms of the Asset Reallocation and Settlement Agreement and this Plan, following liquidation of any unliquidated Contributed Assets.

Unsecured Creditor Series:  The series of the Creditor Trust created and maintained for the benefit of the Holders of Unsecured Claims.

Unsecured Creditors' Trustee:  The co-trustee appointed by the Creditors' Committee to administer the Unsecured Creditor Series of the Creditor Trust.

US Trustee:  The United States Trustee for the District of Delaware.

Wind Down Budget:  The Budget annexed to the Cash Collateral Order as Exhibit B.

(b)    Other Definitions:  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.  Unless otherwise specified, all section, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

## ARTICLE II
## SUBSTANTIVE CONSOLIDATION OF DEBTORS;
## CANCELLATION OF INTERCOMPANY CLAIMS

Section 2.1 *Substantive Consolidation*

On the Effective Date, the Chapter 11 Cases and the Debtors and their estates shall be deemed to be substantively consolidated for voting and distribution purposes only under this Plan.  The assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate.  Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to Distributions under this Plan only with respect to such single Claim.  Notwithstanding the foregoing, substantive consolidation shall not affect the obligations of any Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is closed, dismissed or converted.

Section 2.2. *Cancellation of Intercompany Claims*

On the Effective Date, all Intercompany Claims shall be eliminated and extinguished.

12

## ARTICLE III
## ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES

Section 3.1. *Introduction*

Certain types of Claims are not placed into voting Classes. Such Claims are not considered Impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. These non-voting Claims and their treatment are described in this Article III.

Section 3.2. *Administrative Claims*

All Allowed Administrative Claims shall be paid in Cash from proceeds of Excluded Assets, in accordance with the allocations therefore as set forth in the Asset Reallocation and Settlement Agreement and in the Wind Down Budget, as applicable.

On or before the Effective Date, the Debtors (in accordance with the Budget) shall pay in full the amount of Allowed Administrative Claims as of such date and shall fund the Administrative Claims Reserve Fund and the Creditor Trust shall pay each Administrative Claim in full, without interest and in Cash (except for Professional Fees to the extent that their treatment, which is set forth below, differs) when and to the extent the Administrative Claim is or becomes Allowed. The Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by such Holder and the respective Debtor.

Holders of Administrative Claims that arose on or before April 30, 2003 were required to file an Administrative Claim on or before May 15, 2003 (the First Administrative Bar Date) pursuant to the Bar Date Order. Holders of Administrative Claims that arose after April 30, 2003 that have not been paid as of the Effective Date must file a request for payment of Administrative Claims with the Bankruptcy Court and serve the same upon counsel to each of the Trustees such that it is received no later than the Second Administrative Bar Date. If an Administrative Claim was not timely filed by the First Administrative Bar Date or is not timely filed by the Second Administrative Bar Date, as applicable, then such Administrative Claim shall be forever barred and shall not be enforceable against Debtors, their successors, their assigns or their property, Administrative Claims Reserve Fund or Creditor Trust. The foregoing shall not apply to the Professional Fee Claims. An objection to an Administrative Claim filed pursuant to this provision must be filed within ninety (90) days from the later of the date such Administrative Claim is filed and properly served or ninety (90) days after the Effective Date. The Debtors and Creditors' Committee reserve the right to seek an extension of the time to object.

Subject to the provisions of this Plan and the Cash Collateral Order, and within the confines of the Budget, all reasonable fees for services rendered in connection with the Chapter 11 Cases and this Plan after the Effective Date, including those relating to the resolution of pending Claims, shall be paid by the Creditor Trust after the submission of a monthly fee statement with service upon counsel to each of the Trustees and the Agent's counsel, provided that no objections are received within ten (10) days of such service. If no objections are received, the Trustees shall be authorized to pay such amounts requested without further Bankruptcy Court authorization. If objections are received and such objections are not capable of being resolved between the parties in a timely manner, the Bankruptcy Court shall reserve jurisdiction to resolve such disputes.

13

Section 3 3. *Statutory Fees*

Without limiting the foregoing, all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date from the Budget. Payments after the Effective Date shall be made as required by statute and shall be paid by the Creditor Trust in accordance with the Budget.

Section 3.4. *Professional Fees*

(a)      The Creditor Trust shall pay Professionals who are entitled to allowance of fees and reimbursement of expenses as of the Effective Date from the Creditor Trust Expense Fund as provided under the Asset Reallocation and Settlement Agreement.

(b)      The Bankruptcy Court must rule on each request for payment of Professional Fees before the fees will be paid, except as such fees have been paid pursuant to the Interim Compensation Order. For all Professional Fees, the Professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be owed and required to be paid under this Plan; provided that nothing herein shall be deemed a waiver by the Professionals of the unpaid portions of their Allowed but unpaid Professional Fee Claims, nor shall anything herein abrogate or modify the terms of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees.

(c)      Except as otherwise provided by Bankruptcy Court order for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve, pursuant to the notice provisions of the Interim Compensation Order and the Bankruptcy Code, an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court and to the provisions of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees. Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of expenses that do not file such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtors or their successors, their assigns or their property. Any objection to Professional Fee Claims shall be filed on or before the date specified in the application for final compensation.

(d)      Notwithstanding anything herein to the contrary, following the occurrence of the Effective Date, Professionals shall be authorized to retain any funds held on retainer for payment of fees and expenses authorized to be paid pursuant to this Plan, including fees and expenses approved by the Bankruptcy Court in connection with such Professionals' final applications for allowance of compensation and reimbursement of expenses. Thereafter (a) Shearman & Sterling LLP, counsel for the Debtors, shall be authorized to continue to hold a retainer in the amount of $25,000 until the earlier of (i) six months after the Effective Date or (ii) entry of the Final Decree and shall be authorized without further order of the Bankruptcy Court to apply such retainer to fees and expenses incurred in connection with services rendered on behalf of the Debtors or the Creditor Trust on or after the Effective Date, and (b) other Professionals shall return the unapplied balance of any retainer to the Senior Lenders' Trustee for distribution to the Senior Lenders.

14

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Section 4.1 *Summary*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and Distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The Senior Lenders' Claims are Allowed Claims, pursuant to the Final Order approving the Asset Reallocation and Settlement Agreement. In accordance with and subject to the provisions of the Asset Reallocation and Settlement Agreement, the Senior Lenders have agreed to waive (i) any right to seek a Distribution on account of their unsecured deficiency Claims, and (ii) subject to the receipt of the Noteholder Releases from the Class 6 and Class 7 Noteholders, any enforcement of their contractual and structural subordination rights with respect to the Senior Notes.

The classification of Claims and Equity Interests against the Debtors pursuant to this Plan is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| Class 1 | Senior Lenders' Claims | Unimpaired | Not entitled to vote |
| Class 2 | Other Secured Claims | Unimpaired | Not entitled to vote |
| Class 3 | Priority Claims | Unimpaired | Not entitled to vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 5 | Senior Discount Notes | Impaired | Entitled to vote |
| Class 6 | Senior Subordinated Notes | Impaired | Entitled to vote |
| Class 7 | Term-C Loan Claims | Impaired | Entitled to vote |
| Class 8 | Equity Interests | Impaired | Not entitled to vote (deemed to have rejected Plan under the Bankruptcy Code) |

Section 4.2 *Class 1 – Senior Lenders' Claims*

(a)    <u>Classification</u>: Class 1 consists of the Senior Lenders' Allowed Claims against the Debtors in the amount of $232,712,443.42.

15

(b)    <u>Treatment</u>: Holders of Allowed Class 1 Claims shall continue to receive the treatment set forth in the Asset Reallocation and Settlement Agreement and approved pursuant to the Final Order entered on June 16, 2003, including specifically, the receipt, for application to their Allowed Secured Claims, of (i) all Settlement Proceeds and (ii) to the extent Noteholder Releases are not obtained, an amount equal to the non-releasing Noteholder's Share of the amount of the Contributed Assets (subject to certain exclusions), as set forth in Paragraph 4B of the Asset Reallocation and Settlement Agreement. The treatment of the Claims of the Senior Lenders set forth in the Asset Reallocation and Settlement Agreement is incorporated by reference in this Plan, but is in no way dependent upon the confirmation or consummation of this Plan and shall not be deemed a Distribution hereunder. All Cash held by the Debtors for payment of line item expenditures under the Wind Down Budget that have already been paid or for which no further payment is provided for or required, together with all other Cash not constituting Excluded Assets, shall be remitted directly to the Agent on or prior to the Effective Date and shall not vest in the Creditor Trust. All Cash held by the Debtors for payment of line item expenditures under the Wind Down Budget that have not been paid as of the Effective Date shall vest in the Creditor Trust for use in paying such line item expenditures, with any remaining balance to be remitted promptly to the Agent by the Unsecured Creditors' Trustee once such expenditures have been paid or at such time as it appears that no further payments in respect of such expenditures will be required.

(c)    <u>Voting</u>: Class 1 is, by agreement, an Unimpaired Class and Holders of Class 1 Claims are, therefore, not entitled to vote to accept or reject this Plan.

Section 4.3. *Class 2 – Other Secured Claims*

(a)    <u>Classification</u>: Class 2 consists of Secured Claims against the Debtors other than those Class 1 Secured Claims.

(b)    <u>Treatment</u>: Unless the Holder of a Class 2 Claim agrees to a different treatment, each Holder of an Allowed Class 2 Claim shall receive on the Effective Date, either (i) the return of such Assets on which the Holder has a senior perfected and indefeasible lien or security interest, or (ii) all proceeds (up to the amount of the Allowed Class 2 Claim) from the sale, liquidation, or abandonment of any Asset on account of which the Holder has a senior, perfected and indefeasible Lien or security interest, including those proceeds of Going Concern Sales held by the Debtors to fund the Wind Down Budget (but solely to the extent that such Lien or security interest as of the Petition Date is senior in priority to any lien or security interest of the Senior Lenders on the same Asset) as full and complete satisfaction of all Class 2 Claims.

(c)    <u>Voting</u>: Class 2 is an Unimpaired Class and Holders of Class 2 Claims are, therefore, not entitled to vote to accept or reject this Plan.

Section 4.4. *Class 3 – Priority Claims*

(a)    <u>Classification</u>: Class 3 consists of Holders of Priority Claims specified under sections 507(a) and 502(f) of the Bankruptcy Code, including but not limited to priority tax Claims and priority wage Claims.

(b)    <u>Treatment</u>: The Bankruptcy Code requires that each Holder of such an Allowed Priority Claim receive the present value of such Claim. On the Effective Date, each Holder of an

16

Allowed Priority Class 3 Claim shall be entitled to receive Cash derived from Excluded Assets equal to the full amount of such Allowed Priority Claim.

(c)     Voting: Class 3 is an Unimpaired Class and Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan.

Section 4.5. *Class 4 – General Unsecured Claims*

(a)     Classification: Class 4 consists of the Unsecured Claims other than (i) the Noteholder Claims and (ii) the Term-C Loan Claims.

(b)     Treatment: Unless the Holder of a Class 4 Claim agrees to a different treatment, each Holder of an Allowed Class 4 Claim shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date. The distributions to be made to Holders of Class 4 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

(c)     Voting: Holders of Class 4 Claims are entitled to vote to accept or reject this Plan.

Section 4.6. *Class 5 – Senior Discount Notes*

(a)     Classification: Class 5 consists of the Claims in respect of the Senior Discount Notes.

(b)     Treatment: Each Holder of a Class 5 Claim that is deemed to have provided a Noteholder Release in accordance with the terms of this Plan shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date from the Creditor Trust. In accordance with Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 14.9 of this Plan, the Senior Lenders' waiver of subordination rights shall not apply to any Holder of a Class 5 Claim that has elected not to grant such a Noteholder Release (which election may be made by checking the appropriate box on the ballot provided). With respect to any Holder of a Class 5 Claim that has elected not to grant such Release, (a) the Agent shall be paid an amount which equals the Noteholder's Share of the amount of Contributed Assets (exclusive only of the Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement and the Noteholder's pro rata portion of the Administrative Expense Carve Out), and (b) such Noteholder shall not receive any distribution, including, without limitation, any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3Aiii of the Settlement Agreement. The Distributions to be made to Holders of Class 5 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

(c)     Voting: Holders of Class 5 Claims are entitled to vote to accept or reject this Plan.

Section 4.7. *Class 6 – Senior Subordinated Notes*

(a)    <u>Classification</u>:  Class 6 consists of the Claims in respect of the Senior Subordinated Notes

(b)    <u>Treatment</u>:  Subject to the possible application of the subordination provisions of the 12% Note Indenture (as described in Article V, Paragraph J(2) of the Disclosure Statement, each Holder of a Class 6 Claim that is deemed to have provided a Noteholder Release in accordance with the terms of this Plan shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date from the Creditor Trust.  In accordance with Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 14.9 of this Plan, the Senior Lenders' waiver of subordination rights shall not apply to any Holder of a Class 6 Claim that has elected not to grant such Noteholder Release (which election may be made by checking the appropriate box on the ballot provided).  With respect to any Holder of a Class 6 Claim that has elected not to grant such Release, (a) the Agent shall be paid an amount which equals the Noteholder's Share of the amount of Contributed Assets (exclusive only of the Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement and the Noteholder's pro rata portion of the Administrative Expense Carve Out) and (b) such Holder of a Class 6 Claim shall not receive any distribution, including, without limitation, any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement.  The Distributions to be made to Holders of Class 6 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

(c)    <u>Voting</u>:  Holders of Class 6 Claims are entitled to vote to accept or reject this Plan.

Section 4.8. *Class 7 – Term-C Loan Claims*

(a)    <u>Classification</u>:  Class 7 consists of the Claims of the Term-C Lenders under the Term-C Loan in the amount of $22,221,128.07.

(b)    <u>Treatment</u>:  Unless the Debtors (or the Creditors' Committee on behalf of the Debtors or their estates) or Indenture Trustees have commenced an adversary proceeding or contested matter prior to the Confirmation Date seeking to subordinate or reclassify the Allowed Claims in Class 7, each Holder of an Allowed Class 7 Claim shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of the Unsecured Creditor Distribution Fund available for Distribution on such Distribution Date and the Rights of Action Recovery available for Distribution on each such Distribution Date.  If the Debtors (or the Creditors' Committee or Indenture Trustees) have commenced such an adversary proceeding or contested matter prior to the Confirmation Date, then the Allowed Class 7 Claims shall be Disputed Claims, and any Distribution otherwise payable to the Holders of Class 7 Claims shall be held in the Unsecured Creditor Disputed Claims Reserve pending the resolution of such adversary proceeding or contested matter by a Final Order.  Any Distribution made hereunder to holders of Class 7 Claims represents a reallocation from holders of claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.  The subordination rights of the Term-C Lenders are unaffected by the Plan, and, in particular, the holders of Class

18

7 Claims have not waived any right of subordination with respect to any recovery by the holders of Class 6 Claims. However, the holders of Class 7 Claims have agreed with the 12% Note Indenture Trustee that no right of subordination will be asserted with respect to recovery of any distribution made on the Initial Distribution Date to the holders of Class 6 Claims, and that the holders of Class 7 claims do not otherwise waive any right of subordination, including, without limitation, in respect of any subsequent distributions or with respect to any right of setoff in connection with any litigation or proceeding brought against the holders of Class 7 Claims or related parties or entities, or otherwise.

(c)     Voting: Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

Section 4.9. *Class 8 – Equity Interests*

(a)     Classification: Class 8 consists of all Equity Interests in the Debtors.

(b)     Treatment: All Equity Interests of each of the Debtors shall be cancelled on the Effective Date and Holders of such Equity Interests should not receive or retain any property or Distributions under this Plan.

(c)     Voting: Class 8 Equity Interests will receive no Distribution under this Plan and are, therefore, deemed to have rejected this Plan. Accordingly, Class 8 Equity Interests are not entitled to vote.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF PLAN

Section 5.1. *Voting Classes*

Each Holder of a Claim in Classes 4, 5, 6 and 7 shall be entitled to vote separately to accept or reject this Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain confirmation. Class 8 is conclusively deemed to have rejected this Plan and is not entitled to vote.

Section 5.2. *Acceptance by Class of Creditors and Holders of Interests*

Under the Bankruptcy Code, an impaired Class of Holders of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have voted to accept or reject this Plan.

Section 5.3. *Cramdown*

If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8) thereof, the Debtors intend to request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, this Plan.

19

## ARTICLE VI
## EFFECT OF CONFIRMATION

Section 6.1. *Vesting of Assets in the Creditor Trust*

On the Effective Date, all Assets of the Debtors, including Excluded Assets (but excluding Cash remitted to the Agent pursuant to Section 4.2(b) herein) shall vest in the Creditor Trust, with the Excluded Assets to be held by and separately accounted for as part of the Unsecured Creditor Series and all other Assets (including specifically Tax Refunds and the Star Litigation) to be held by and separately accounted for as part of the Senior Lender Series. Except to the extent expressly provided for in the Asset Reallocation and Settlement Agreement or the Creditor Trust Agreement, the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of such Series only, and not against the assets of the Creditor Trust generally or the assets of the other Series, and the Budget (including Wind Down Budget) shall be allocable in accordance with the foregoing. The Unsecured Creditor Distribution Fund, the Administrative Claims Reserve Fund, the Creditor Trust Expense Fund, and the Rights of Action shall all be assets of the Unsecured Creditor Series; any other Assets (including the Star Litigation, Tax Refunds and any other Assets that will give rise to Settlement Proceeds) shall be part of the Senior Lender Series. The Excluded Assets in the Unsecured Creditor Series shall be managed and used for the sole purposes of achieving Consummation and carrying out this Plan and effectuating the Distributions provided for in this Plan provided, however, that, in accordance with and subject to the Asset Reallocation and Settlement Agreement and the Cash Collateral Order, any amounts included in the Wind Down Budget (other than the Reallocated Monies) that are not required to fund specific line item expenses for which such amounts were allocated, together with any other amounts to which the Agent is entitled under the Asset Reallocation and Settlement Agreement, shall be promptly remitted by the Unsecured Creditors' Trustee to the Agent for the benefit of the Senior Lenders. Notwithstanding anything herein to the contrary, in accordance with the Asset Reallocation and Settlement Agreement, the Agent's liens shall continue to attach to all Assets in the Creditor Trust other than Excluded Assets, including, without limitation, unliquidated Contributed Assets, the Star Services Litigation and all Tax Refunds and any amounts required to be remitted to the Agent due to the failure of any Noteholders to provide Noteholder Releases as provided under this Plan. The unliquidated Assets held as part of the Senior Lender Series of the Creditor Trust (including the Star Litigation, Tax Refunds and the estate's interest in retainers or any other Assets that would give rise to Settlement Proceeds) shall be administered by the Senior Lenders' Trustee subject to the obligation to remit to the Unsecured Creditors' Trustee such amount as may be required by the Asset Reallocation and Settlement Agreement.

Section 6.2. *Authority to Effectuate Plan*

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Creditor Trust and the Trustees shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out this Plan and to effectuate the Distributions provided for thereunder, subject to the provisions of this Plan, including Article VII. The Creditor Trust and the Trustees are expressly authorized to sell or dispose of any and all Excluded Assets and to pay all costs and expenses associated with such sale or disposition without further order of the Bankruptcy Court, subject to the provisions of the Asset Reallocation and Settlement Agreement and the provisions of this Plan, including Article VII.