STEWART CONNECTOR SYSTEMS, INC.

By: _____

Its: _____

SIGNAL CARIBE, INC.

By: _____

Its: _____

SIGNAL TRANSFORMER CORPORATION, INC.

By: _____

Its: _____

WP3:1006487 1

61683 1001

A - 351

**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------x
                                :     Chapter 11

In re                          :

                                :     Case No. 02-13672 (KJC)

INSILCO TECHNOLOGIES, INC., et al.,[1]  :

                                :     (Jointly Administered)

                 Debtors.     :

----------------------------------------x

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE AMENDED JOINT LIQUIDATING PLAN PURSUANT TO CHAPTER 11 OF THE UNITED STATES CODE AND (II) SECOND ADMINISTRATIVE BAR DATE

PLEASE TAKE NOTICE that on _____, 2004, an Order (the

"Confirmation Order") confirming the Amended Joint Liquidating Plan Pursuant to Chapter 11

of the United States Bankruptcy Code (as amended or modified, the "Plan"[2]), signed by the

Honorable Kevin J. Carey, United States Bankruptcy Judge, was entered and duly docketed by

the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court") in the above-captioned cases. The Confirmation Order is on file with the

Clerk of the Bankruptcy Court and may be inspected during normal business hours at the Office

of the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware

19801. Copies of the Confirmation Order can also be found at Docket No. _ and obtained

from the Bankruptcy Court's website at www.deb.uscourts.gov or by contacting the undersigned

counsel to the above-captioned debtors (the "Debtors").

---

[1]    The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

[2]    Unless otherwise defined herein, all capitalized terms shall have the same meanings ascribed to them in the Plan.

WP3:1009698 1

61683.1001

A - 353

## SECOND BAR DATE FOR ADMINISTRATIVE CLAIMS

PLEASE TAKE FURTHER NOTICE that holders of Administrative Claims that arose on or before April 30, 2003 were required to file an Administrative Claim on or before May 15, 2003, *i.e.*, the First Administrative Bar Date, pursuant to the Bar Date Order.

PLEASE TAKE FURTHER NOTICE that only holders of Administrative Claims that arose after April 30, 2003 that have not been paid as of the Effective Date must file a request for payment of Administrative Claims with the Court and must serve a copy of such request upon [insert Trustees' counsel and counsel's address/es] such that it is received **no later than the date that is forty-five (45) days after the Confirmation Date**, *i.e.*, the Second Administrative Bar Date. This notice does NOT apply to Administrative Claims that arose prior to April 30, 2003 or Administrative Claims that were previously filed.

IF AN ADMINISTRATIVE CLAIM WAS NOT TIMELY FILED BY THE FIRST ADMINISTRATIVE BAR DATE OR IS NOT TIMELY FILED BY THE SECOND ADMINISTRATIVE BAR DATE, AS APPLICABLE, THEN SUCH ADMINISTRATIVE CLAIM SHALL BE FOREVER BARRED AND SHALL NOT BE ENFORCEABLE AGAINST DEBTORS, THEIR SUCCESSORS, THEIR ASSIGNS OR THEIR PROPERTY, ADMINISTRATIVE CLAIMS RESERVE FUND OR THE CREDITOR TRUST.

PLEASE TAKE FURTHER NOTICE THAT THE PLAN AND

CONFIRMATION ORDER CONTAIN OTHER PROVISIONS THAT MAY AFFECT

YOUR RIGHTS.  YOU ARE ENCOURAGED TO REVIEW THE PLAN AND

CONFIRMATION ORDER IN THEIR ENTIRETY.

Dated: Wilmington, Delaware
      June \_\_\_\_, 2004

                        SHEARMAN & STERLING
                        Constance A. Fratianni
                        Scott C. Shelley
                        599 Lexington Avenue
                        New York, New York 10022
                        Telephone:  (212) 848-4000
                        Facsimile:  (212) 848-7179

                               - and –

                        YOUNG CONAWAY STARGATT
                        & TAYLOR, LLP

                        Pauline K. Morgan (No. 3650)
                        Sharon M. Zieg (No. 4196)
                        Alfred Villoch, III (No. 4341)
                        The Brandywine Building
                        1000 West Street, 17th Floor
                        Wilmington, Delaware 19801
                        Telephone:  (302) 571-6600
                        Facsimile:  (302) 571-1253

                        ATTORNEYS FOR DEBTORS AND
                        DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INSILCO TECHNOLOGIES, | : | Case No. 02-13672 (KJC) |
| INC., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Re: Docket No. 1169** |
| | : | |
| | : | **Opposition Date: August 25, 2004** |
| | : | **Reply Date: September 15, 2004** |
| | : | **Hearing Date: September 23, 2004** |
| | : | |

### NOTICE OF MOTION OF TERM-C LENDERS TO ENFORCE ORDERS, DISMISS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND AUTHORIZE DISTRIBUTION

PLEASE TAKE NOTICE that on July 23, 2004, the Term-C Lenders filed the attached **Motion of Term-C Lenders to Enforce Orders, Dismiss Objection of the Official Committee of Unsecured Creditors, and Authorize Distribution** (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that any opposition to the Motion must be made in writing, filed with the Bankruptcy Court at 824 Market Street, 5th Floor Wilmington, Delaware 19801, and served upon, so as to actually be received by the undersigned counsel for the Term-C Lenders, counsel for the Debtors, and counsel to the United States Trustee, on **August 25, 2004**.

PLEASE TAKE FURTHER NOTICE that any reply in support of the Motion must be made in writing with the Bankruptcy Court at 824 Market Street, 5th Floor Wilmington, Delaware 19801 and served so as to be received by counsel for the

548006v1

A - 356

Committee on Unsecured Creditors, counsel for the Debtors and counsel to the United States Trustee on **September 15, 2004**.

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion will be held before the Honorable Kevin J. Carey on **September 23, 2004** at a time to be determined at Courtroom #1, Robert N.C. Nix, Sr. Federal Building, 900 Market Street, Philadelphia, PA 19106.

Dated: Wilmington, Delaware
   July 23, 2004

        Respectfully submitted,

        THE BAYARD FIRM

        By: Charlene D. Davis (I.D. No. 2336)
        222 Delaware Avenue, Suite 900
        PO Box 25130
        Wilmington, DE 19899
        (302) 655-5000

        DAVIS POLK & WARDWELL
        Karen E. Wagner
        Patrick A. Bradford
        James I. McClammy
        450 Lexington Avenue
        New York, New York 10017
        (212) 450-4000

        Attorneys for the Term-C Lenders

548006v1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INSILCO TECHNOLOGIES, | : | Case No. 02-13672 (KJC) |
| INC., *et al.*, | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | **Hearing Date:** September 23, 2004 |
| | : | **Response Date:** August 25, 2004 |
| | : | **Reply Date:** September 15, 2004 |
| | : | |
| | : | Related to Docket No.: 1169 |

## MOTION OF TERM C LENDERS TO ENFORCE ORDERS, DISMISS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND AUTHORIZE DISTRIBUTION

DLJ Merchant Banking Partners II, L.P., DLJ Merchant Banking Partners II-A,

L.P., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB

Partners, L.P., DLJ ESC II, L.P., DLJ Millennium Partners, L.P., DLJ Millennium

Partners-A, L.P., DLJ Offshore Partners II, C.V., MBP II Plan Investors (the "Term C

Lenders") hereby move this Court for an order enforcing the terms of prior orders entered

by this Court, dismissing the First Omnibus Objection of the Official Committee of

Unsecured Creditors to Claims of Class 7 Creditors (Docket No. 1169) with prejudice,

and authorizing distribution under the Debtors Plan of Reorganization on the allowed

claims of the Term C Lenders. In support therefore, the Term C Lenders respectfully

submit the attached Memorandum.

Dated: Wilmington, Delaware
      July 23, 2004

                  Respectfully submitted,
                  THE BAYARD FIRM
                  By

                  Neil B. Glassman    (No. 2087)
                  Charlene B. Davis    (No. 2336)
                  222 Delaware Avenue, 9th Floor
                  Wilmington, Delaware 19801

                  Tele:   (302) 655-5000
                  Fax:    (302) 658-6395

                  DAVIS POLK & WARDWELL
                  Karen E. Wagner
                  Patrick A. Bradford
                  James I. McClammy
                  450 Lexington Avenue
                  New York, New York 10017

                  Tele:   (212) 450 4000
                  Fax:    (212) 450 3800
                  Counsel for the Term C Lenders

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| INSILCO TECHNOLOGIES, | : | Case No. 02-13672 (KJC) |
| INC., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Re: Docket Nos. 1169 and _____** |
| | : | |

**ORDER GRANTING MOTION OF TERM C LENDERS TO ENFORCE
ORDERS, DISMISS OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, AND AUTHORIZE DISTRIBUTION**

THE COURT, having considered the Motion of DLJ Merchant Banking Partners

II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Diversified Partners, L.P., DLJ

Diversified Partners-A, L.P., DLJ EAB Partners, L.P., DLJ ESC II, L.P., DLJ Millennium

Partners, L.P., DLJ Millennium Partners-A, L.P., DLJ Offshore Partners II, C.V., MBP II

Plan Investors (the "Term C Lenders) to Enforce Orders, Dismiss Objection of the

Official Committee of Unsecured Creditors, and Authorize Distribution (the "Motion")

and the memoranda of law submitted in support thereof, and the responsive papers of the

Committee, and having heard the parties hereto at a hearing on September __, 2004, the

Court now finds AND CONCLUDES:

1. The Objection[1] was filed in contravention of this Court's Orders (i)

approving the Asset Reallocation and Settlement Agreement (Order Pursuant to

Bankruptcy Code Section 363(b) and 105(a) and Fed. R. Bankr. P. 9010 Approving

Settlement Agreement by and Among the Debtors, the Official Committee of Unsecured

Creditors, Wachovia Bank, N.A., U.S. Bank, N.A., Certain of the Debtors' Senior secured

---

[1] Capitalized Terms used herein, have the same meaning as set forth in the memorandum of law filed in
support of the Motion, unless stated otherwise

Lenders and the Agent for the Debtors' Senior Secured Lenders, dated June 11, 2003, Docket No. 721); and (ii) confirming the plan (Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming the Amended Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code, dated June 10, 2004, Docket No. 1173) and in violation of the Settlement Agreement; and

2.    This Court has the authority to enforce the terms of the Settlement Order and the Confirmation Order; and

3.    This Court has no subject matter jurisdiction over the Objection; the Objection fails to state a claim for the relief requested therein;  therefore,

IT IS HEREBY ORDERED:

1.    The Objection is dismissed with prejudice; and

2.    The Term C Claims are allowed subject to no further challenge, and therefore the Debtors are ordered to make distribution on the Term C Claims as mandated by the Plan and Confirmation Order.


Dated: _____, 2004          _____
                                          Honorable Kevin J. Carey
                                          United States Bankruptcy Judge

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re | Chapter 11 |
|  | Case No. 02-13672 (KJC) |
| INSILCO TECHNOLOGIES, INC., *et al.*, |  |
|  | Jointly Administered |
| Debtors. |  |
|  | Related to: Docket No. 1169 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW OF TERM C LENDERS IN SUPPORT OF MOTION TO ENFORCE ORDERS, DISMISS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND <u>AUTHORIZE DISTRIBUTION</u>

THE BAYARD FIRM

Neil B. Glassman (No. 2087)
Charlene D. Davis (No. 2336)
222 Delaware Avenue, 9th Floor
Wilmington, Delaware 19801
Tel:  (302) 655-5000
Fax: (302) 658-6395


DAVIS POLK & WARDWELL

Karen E. Wagner
Patrick A. Bradford
James I. McClammy
450 Lexington Avenue
New York, New York 10017

Tele: (212) 450-4000
Fax:  (212) 450-4800

Counsel for the Term C Lenders

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

JURISDICTION ............................................................................................................. 2

FACTUAL BACKGROUND .......................................................................................... 3

ARGUMENT ................................................................................................................. 12

POINT I
THE OBJECTION VIOLATES THE SETTLEMENT ORDER
AND THE CONFIRMATION ORDER .................................................................. 12

POINT II
THIS COURT HAS NO JURISDICTION OVER THE OBJECTION .................... 15

POINT III
THE CLAIMS OBJECTION FAILS TO STATE A CLAIM FOR
EQUITABLE SUBORDINATION OR RECHARACTERIZATION ........................ 17

    1.  The Objection Fails to State Facts Relevant to The Claimants ................ 18

    2.  Neither Subordination nor Recharacterization is Properly Pleaded ......... 21

        a.  The Indenture Provides No Basis for Subordination ...................... 22

        b.  No Deepening Insolvency Cause of Action is Pleaded .................. 22

CONCLUSION .............................................................................................................. 26

i

TABLE OF AUTHORITIES

<u>CASES</u>

PAGE

<u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410 (3d Cir. 1997) ...................................17

<u>Caplin v. Marine Midland Grace Trust Co.</u>, 406 U.S. 416 (1972)........................................22,23

<u>Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims</u>,
        160 F.3d 982 (3d Cir. 1998)...........................................................................................21

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957)..................................................................................18

<u>In re Continental Airlines, Inc.</u>, 236 B.R. 318 (Bankr. D. Del. 1999) ...................................2,14

<u>CoreStates Bank, N.A. v. Huls Am., Inc.</u>, 176 F.3d 187 (3d Cir. 1999)..............................12-13

<u>Coroles v. Sabey</u>, 79 P.3d 974 (Utah Ct. App. 2003) .........................................................23

<u>Donaldson v. Bernstein</u>, 104 F.3d 547 (3d Cir. 1997) .......................................................13

<u>Eastern Minerals & Chems. Co. v. Mahan</u>, 225 F.3d 330 (3d Cir. 2000)...........................21

<u>Ernst & Young LLP v. Baker O'Neal Holdings, Inc.</u>, 304 F.3d 753 (7th Cir. 2002) ..............13

<u>In re Exide Technologies, Inc.</u>, 299 B.R. 732 (Bankr. D. Del. 2003)...........................21,23,24,25

<u>First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough</u>,
        81 F.3d 1310 (4th Cir. 1996)...........................................................................................13

<u>In re Glenn</u>, 124 B.R. 195 (Bankr. W.D. Pa. 1991) .............................................................13

<u>Holland v. Arthur Andersen & Co.</u>, 212 Ill. App. 3d 645 (Ill. App. Ct. 1991).....................23

<u>Katchen v. Landy</u>, 382 U.S. 323 (1966)...............................................................................12

<u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375 (1994)..............................14

<u>Local Loan Co. v. Hunt</u>, 292 U.S. 234 (1934) ...................................................................2,14

<u>Morse v. Lower Merion School District</u>, 132 F.3d 902 (3d Cir. 1997) ............................17-18

<u>Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel.
        Cybergenics Corp. v. Chinery</u>, 330 F.3d 548 (3d Cir. 2003) .........................................14

ii

<u>CASES</u>

<u>PAGE</u>

<u>Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.</u>,
    267 F.3d 340 (3d Cir. 2001) ............................................................................ 22-23

<u>In re Pacific Express</u>, 69 B.R. 112 (B.A.P. 9th Cir. 1986) .................................. 24

<u>In re Providian Fin. Corp. ERISA Litig.</u>, No. C 01-05027,
    2002 WL 31785044 (N.D. Cal. Nov. 14, 2002) ............................................... 20

<u>Rainville Co. v. Consupak, Inc.</u>, 407 F. Supp. 221 (D.N.J. 1976) ....................... 26

<u>In re Resorts Int'l, Inc.</u>, 372 F.3d 154 (3d Cir. 2004) ............................... *passim*

<u>Stoll v. Gottlieb</u>, 305 U.S. 165 (1938) ................................................................. 12

<u>In re SubMicron Sys. Corp.</u>, 291 B.R. 314 (D. Del. 2003) .................................. 25

<u>In re Sugarhouse Realty, Inc.</u>, 192 B.R. 355 (E.D. Pa. 1996) ............................ 13

<u>In re Sunbeam Corp.</u>, 284 B.R. 355 (Bankr. S.D.N.Y. 2002)
    <u>app. dism.</u>, <u>mot. denied</u>, 287 B.R. 861 (S.D.N.Y. 2003) ........................... 18-19

<u>U.S. Brass Corp. v. Travelers Ins. Group, Inc.</u>, 301 F.3d 296 (5th Cir. 2002) ......... 15

<u>United States v. Noland</u>, 517 U.S. 535 (1996) .................................................... 21

<u>United States v. State St. Bank & Trust Co.</u>, 303 B.R. 35 (Bankr. D. Del. 2003) ........ 24

<u>Wolfgram v. El Dorado County</u>, No. 90-15820,
    1991 U.S. App. LEXIS 11754 (9th Cir. May 31, 1991) .................................. 20

iii

STATUTES & RULES

PAGE

11 U.S.C. § 105 ....................................................................................................................... 2, 13

11 U.S.C. § 1141(a) .............................................................................................................. 12,13

28 U.S.C. § 157 ........................................................................................................................ 15

28 U.S.C. § 1334 .................................................................................................................. 2,15

Fed. R. Bankr. P. 7008 ........................................................................................................... 2,18

Fed. R. Bankr. P. 7012 ........................................................................................................... 2,25

Fed. R. Civ. P. 8(a) .................................................................................................................. 18

iv

## PRELIMINARY STATEMENT

DLJ Merchant Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB Partners, L.P., DLJ ESC II, L.P., DLJ Millennium Partners, L.P., DLJ Millennium Partners-A, L.P., DLJ Offshore Partners II, C.V., MBP II Plan Investors (the "Term C Lenders"), by their counsel, submit this memorandum of law in support of their motion:

(a) to enforce the prior orders of this Court;

(b) to dismiss the First Omnibus (Substantive) Objection (the "Objection") of the Official Committee of Unsecured Creditors (the "Committee") to Claims of Class 7 Creditors (Claim Nos. 607-616) (the "Term C Claims") pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

(c) to order distribution on the Allowed Term C Claims.

First, pursuant to a Settlement Agreement embodied in two final Orders of this Court, and incorporated into the confirmed plan in these cases by the confirmation order, the Debtors and the Committee have released all claims and defenses relating to the Term C Loans, and the Term C Claims have been allowed, subject to no further challenge. The Objection violates the Orders of this Court and the confirmed plan. Therefore, the prior Orders of this Court must be enforced and the Objection dismissed with prejudice.

Second, pursuant to a recent ruling of the Court of Appeals of the Third Circuit, this Court has no subject matter jurisdiction over the Objection.

Third, no claim for equitable subordination or recharacterization is adequately pleaded.

## JURISDICTION

This Court has inherent and statutory jurisdiction to enforce its prior Orders. <u>See,</u> <u>e.g.,</u> <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234 (1934) (court has jurisdiction to preserve prior order); <u>In re Continental Airlines, Inc.,</u> 236 B.R. 318, 325 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders."); 11 U.S.C. § 105 (court may take "any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process").

Pursuant to the recent decision of the Court of Appeals for the Third Circuit in <u>In</u> <u>re Resorts Int'l, Inc.,</u> 372 F.3d 154 (3d Cir. 2004), this Court has no jurisdiction over the Objection pursuant to 28 U.S.C. § 1334. The predicates for dismissal are Rules 7008 and 7012 of the Bankruptcy Rules.

2

## FACTUAL BACKGROUND

### The Debtor and Its Credit Facilities

Insilco Technologies, Inc. ("Insilco" or the "Debtor"), one of the debtors in these
cases, was engaged in manufacturing of various sorts. (Obj. ¶ 14.)[1] Prior to its
bankruptcy filing, it had certain credit facilities. (Id. ¶¶ 47, 61.) One was the Term C
Loan, made by the Term C Lenders, as part of the existing credit facilities in August of
2001 in the principal amount of $15 million. (Id. ¶¶ 61, 62.) The Term C Lenders are
distinct legal entities – funds organized as limited partnerships and managed by DLJ
Merchant Banking Partners II – that held equity interests in Insilco. (Id. ¶ 22(b).) Insilco
had also issued public debt, one series of which (the "12% Senior Subordinated Notes")
was issued pursuant to an indenture (the "12% Note Indenture"). (Obj. ¶ 9.)

### The Settlement Agreement

On December 16, 2002, Insilco and its affiliates filed voluntary Chapter 11
petitions in this Court. On January 3, 2003, the Committee was appointed. (Docket No.
78.)

On March 5, 2003, the Committee filed a motion for the appointment of a
Trustee. (Docket No. 398.) That motion was resolved pursuant to an "Asset
Reallocation and Settlement Agreement" dated May 13, 2003 (the "Settlement
Agreement"), entered into by the Debtor, the pre-petition lenders, including the Indenture

---

[1] The Objection fails properly to identify the parties whose actions are alleged to serve as the basis
for this adversary proceeding. The only parties presently before this Court are the Committee and the Term
C Lenders, which are certain distinct limited partnership funds that held stock in Insilco and that made a
$15 million loan to Insilco fourteen months before its bankruptcy filing

3

Trustee for the 12% Note Indenture, and the Committee. (Settlement Agreement, Ex. A

to June 11, 2003 "Order Approving Settlement Agreement" (Docket No. 721).)

　　　Under the Settlement Agreement, the pre-petition claims of the lenders were to be

allowed, and all claims and defenses against the lenders were released. Specifically, the

Settlement Agreement provides:

> 1. <u>Allowance of Senior Lenders' Claims.</u> The Senior Lenders' liens and
> claims against the Debtors (i.e., the prepetition revolving credit facility,
> Term Loan A, Term Loan B and Term Loan C) are fully and finally
> allowed in the amount of $254,933,571.49[3] (the 'Allowed Senior Lenders'
> Claims').

*　*　*

> A.　　<u>Releases by the Debtors and the Creditors' Committee</u> –
> The Debtors and the Creditors' Committee, on behalf of themselves and
> the estates of the Debtors, and each of their respective predecessors,
> successors and assigns (the 'Releasing Estate Parties'), hereby fully waive,
> release and forever discharge the Agent and each of the Senior Lenders
> and each of their agents, employees and professionals ('Released Lender
> Parties') from any and all manner of actions, causes of action, in law or in
> equity, suits, debts, liens, contracts, agreements, promises, liabilities,
> claims, damages, losses, controversies, trespasses, remedies, defenses, set-
> offs, surcharges, costs or expenses of any nature whatsoever, known or
> unknown, fixed or contingent, which the Releasing Estate Parties have
> had, now have, or may hereafter have against the Released Lender Parties,
> by reason of any matter, cause or thing whatsoever, from the beginning of
> time through and to the Settlement Date[.]

*　*　*

> B.　　<u>Releases By Wachovia [the Indenture Trustee], U.S. Bank
> and Noteholders</u> – Wachovia and U.S. Bank, and each of their respective
> predecessors, successors and assigns (together, the 'Trustees') shall use
> their reasonable best efforts either to obtain authority under their
> respective indentures or, pursuant to the Bankruptcy Code (including
> pursuant to a Plan) to cause their constituencies to fully waive, release and
> forever discharge the Released Lender Parties from any and all manner of
> actions, causes of action, in law or inequity, suits, debts, liens, contracts,
> agreements, promises, liabilities, claims, damages, losses, controversies,
> trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of

4

any nature whatsoever, known or unknown, fixed or contingent, which the Releasing Trustee Parties have had, now have, or may hereafter have against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time through to the Settlement

---

[3] Of this amount $232,712,443.42 represents principal, accrued interest and fees owing on the revolving credit facility, Term Loan A and Term Loan B as of the Petition Date, and $22,221,128.07 represents principal and accrued interest owing on Term Loan C as of the Petition Date.

Effective Date relating to or concerning in any way the Debtors, the Credit Agreement, the 12% Senior Subordinated Notes and the 14% Senior Discount Notes (all of the foregoing, collectively the 'Noteholder Claims')[.]

As to the Term C Lenders, the release was granted only "in respect of the Term C Loan," but the definition of "Term C Lenders" included not only the distinct limited partnership funds that made the loans, but also their affiliates and others, so the release broadly reached many DLJ affiliated entities:[2]

> C.    Limitation on Release of Term C Lenders – The releases and waivers contained in Paragraph 4A of this Settlement Agreement for the benefit of the Released Lender Partners shall also apply to the Term C Lenders (DLJ Capital Funding Inc., DLJ Merchant Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Offshore Partners II, C.V., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJEAB Partners, L.P., DLJ Millenium Partners, L.P., DLJESC II., L.P., DLJ Millenium Partners-A, L.P. and Donaldson, Lufkin and Jenrette Securities Corporation (collectively, the 'Term C Lenders')) and their affiliates, insiders (as defined in Section 101 of the Bankruptcy Code), agents, employees and professionals, only in respect of the Term C Loans under the Credit Agreement (as defined therein) and notwithstanding anything herein to the contrary, the Term C Lenders and their affiliates, insiders (as defined in Section 101 of the Bankruptcy Code) agents, employees and professionals, shall not otherwise be released or deemed released. Nothing contained herein shall be deemed to discharge, impair

---

[2] The definition of Term C Lender, as used in the Settlement Agreement, is therefore broader in scope than the definition of Term C Lender set forth in the Objection or in the Plan, both of which used the definition to mean the claimants only

or otherwise affect any claim, action, cause of action or right against the Term C Lenders and any affiliate, insider, agent or professional of the Term C Lenders, except as specifically set forth in the preceding sentence, provided however, that the reservation of non-released claims, causes of action or rights in this Paragraph shall not extend to the Released Lender Parties.

### The Term C Claims

On May 13, 2004, the Term C Lenders (as defined herein) filed proofs of claim arising from the Term C Loans (the "Term C Claims"). (Obj., Exh. B.) The Term C Claims sought recovery based only upon the making of the Term C Loans. (Id.)

### The Settlement Order

The Debtor, with the Committee's support, sought approval of the Settlement Agreement, as it was to be, and in fact became, the cornerstone of the Plan. The terms of the Settlement Agreement were approved by, and incorporated in, an order of this Court dated June 11, 2003 (the "Settlement Order"). (Docket No. 721.) The Settlement Order, which is now final, provides that the claims of the Term C Lenders shall not be subject to any further challenge. (Settlement Order, ¶ 5.) Specifically, the Settlement Order provides that:

> 1.    The Motion is granted.
>
> 2.    The settlement by and among the Settling Parties, as embodied in the Settlement Agreement, is hereby approved, and the terms of the Settlement Agreement are hereby incorporated herein by reference.
>
> 3.    The Settlement Agreement constitutes valid and binding obligations of the Settling Parties which shall be enforceable in accordance with the terms thereof.
>
> *  *  *
>
> 5.    The Senior Lenders' liens and claims against the Debtors (i.e., the claims arising under prepetition revolving credit facility, Term

6

Loan A, Term Loan B and Term Loan C) are fully and finally allowed in the amount of $254,933,571.49[4] (the 'Allowed Senior Lenders' Claims').

---

4. Of this amount $232,712,443.42 represents principal, accrued interest and fees owing in respect of the revolving credit facility, Term Loan A and Term Loan B as of the Petition Date, and $22,221,128.07 represents principal and accrued interest owing in respect of the Term Loan C as of the Petition Date

The Liens and security interests of the Senior Lenders (other than the Term Loan C Lenders, which are, under the terms of the Credit Agreement, unsecured) are deemed valid, perfected, first priority and indefensible and neither such liens nor such claims shall be subject to any further challenge, and the Senior Lenders shall not be required to file any proof of claim or further evidence of the indebtedness owing by the Debtors or of any collateral securing such indebtedness.

\* \* \*

8.    The waivers and releases contained in the Settlement Agreement are supported by good, valid and sufficient consideration and are hereby approved, and the Settling Parties are hereby released to the extent and in the manner provided in the Settlement Agreement.

**The Confirmation Order**

On February 13, 2004, the Debtors filed an Amended Joint Liquidating Plan of Reorganization (the "Plan") (Docket No. 1019) and an Amended Disclosure Statement (Docket No. 1020).

Sections 7.2 and 7.3 of the Plan specifically exclude the Released Claims, defined by Section 1.2 of the Plan to include "[t]hose Rights of Action or Claims that were specifically waived and released under the Asset Reallocation and Settlement" from the scope of Rights of Action conveyed to the Committee. Similarly, Section 8.2 provides that all claims of the Debtors are reserved "unless a claim or Right of Action against a Creditor or other Entity is expressly relinquished, released, compromised or settled in the Asset Reallocation and Settlement Agreement, this Plan, or any Final Order." Section

7

A - 373

14.5 of the Plan states that "**[e]xcept with respect to the Released Claims, nothing contained in this Plan or the Confirmation order shall prohibit or restrain the prosecution of any Claims or Rights of Action against the Debtors' present or former directors or officers or holders of Equity Interests based on acts, events or omissions occurring before the Petition Date.**" (Emphasis in original.)

The Term C Lenders, in reliance upon the express terms of the Settlement Agreement and the Settlement Order, as well as the terms of the proposed Plan, in order to facilitate confirmation both voted for the Plan and agreed with the Trustee for the 12% Indenture not to enforce their subordination rights as to the initial distribution in this matter. (See Plan, Section 4.8.)

The Plan was confirmed by order of this Court (the "Confirmation Order") after a hearing held on June 10, 2004. (Docket No. 1173.) The Confirmation Order states that "nothing in this Confirmation Order shall undermine or impair the effectiveness of the Asset Reallocation and Settlement Agreement, and to the extent there is any conflict between this Confirmation Order and the provisions of the Asset Reallocation Agreement, the provisions of the Asset Reallocation and Settlement Agreement shall control." (Confirmation Order ¶ 52.)[3]

### The Objection

On June 9, 2004, in violation of the Settlement Order and the Confirmation Order, both of which are final, the Committee subjected the Term C Claims to "further

---

[3] This is consistent with the terms of the Plan, which states "To the extent of any conflict or inconsistency between the provisions of this Plan and the provisions of the Asset Reallocation and Settlement Agreement, the provisions of the Asset Reallocation and Settlement Agreement shall govern and be deemed controlling." (Plan, Section 14.20.)

challenge" by filing the Objection, which seeks subordination or reclassification of the Term C Claims.[4]

The Objection was filed on the eve of the hearing on confirmation of the Plan, apparently so as to deprive the Term C Lenders of the distribution otherwise due them under the Plan. Plan Section 4.8(b) states in relevant part: "Unless the Debtors (or the Creditors' Committee on behalf of the Debtors or their estates) … have commenced an adversary proceeding or contested matter prior to the Confirmation Date seeking to subordinate or reclassify the Allowed Claims in Class 7 [the Term C Claims], each Holder of an Allowed Class 7 Claim shall receive, on each Distribution Date, [an appropriate distribution]." The Objection, however, recites no authorization for the Committee to assert claims of the Debtors or their estates.

The Committee alleges two principal bases for subordination or recharacterization: first, that the making of the Term C Loans violated the terms of the 12% Note Indenture and, second, that the Term C Lenders caused the "deepening insolvency" of Insilco to the detriment of its unsecured creditors.

### Allegations Regarding the Indenture

The Committee asserts that Section 10.10 of the 12% Note Indenture prohibited the issuance of debt that was subordinate in right of payment to Senior Debt under the Credit Agreement, but that was senior in right of payment to the 12% Senior Notes. (Obj. ¶ 11.) The Committee then alleges that Insilco and DLJ "attempted" to accomplish

---

[4] The Committee predicates the relief it seeks on several code provisions, including Sections 502, 506, 510, 544, 547, 549, 550 and 1109(b) of the Bankruptcy Code, although the only affirmative relief sought – subordination and reclassification – implicates only Section 510.

9