10

efforts to promptly liquidate and reduce to cash the Unliquidated Contributed Assets, provided that the disposition or liquidation of the Unliquidated Contributed Assets shall be on terms reasonably acceptable to the Agent and the Creditors' Committee. The Agent's prepetition and postpetition liens on the Unliquidated Contributed Assets shall remain in place until such Unliquidated Contributed Assets have become Contributed Assets and the Senior Lenders' allocable share of such Assets has been remitted to the Agent for distribution to the Senior Lenders. All interest accruing on the Contributed Assets shall constitute Contributed Assets.

4.    RELEASES AND WAIVER OF CLAIMS AND INTERESTS.

A.  Releases by the Debtors and the Creditors' Committee -- The Debtors and the Creditors' Committee, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns (the "Releasing Estate Parties"), hereby fully waive, release and forever discharge the Agent and each of the Senior Lenders and each of their agents, employees and professionals ("Released Lender Parties") from any and all manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which the Releasing Estate Parties have had, now have, or may hereafter have against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time through and to the Settlement Effective Date; provided, however, that nothing in this Paragraph 4A releases any Parties' obligations or agreements pursuant to this Settlement Agreement, or bars claims directed solely at enforcing the provisions of this Settlement Agreement.

11

B. Releases By Wachovia, U.S. Bank and Noteholders – Wachovia and U.S. Bank, and each of their respective predecessors, successors and assigns (together, the "Trustees") shall use their reasonable best efforts either to obtain authority under their respective indentures or, pursuant to the Bankruptcy Code (including pursuant to a Plan) to cause their constituencies to, fully waive, release and forever discharge the Released Lender Parties from any and all manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which the Releasing Trustee Parties have had, now have, or may hereafter have against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time through and to the Settlement Effective Date relating to or concerning in any way the Debtors, the Credit Agreement, the 12% Senior Subordinated Notes and the 14% Senior Discount Notes (all of the foregoing, collectively the "Noteholder Claims"); provided, however, that nothing in this Paragraph 4B contemplates the release of any Party's obligations or agreements under this Settlement Agreement or the bar of claims directed solely at enforcing the provisions of this Settlement Agreement. The Trustees further agree that, in the event this Settlement Agreement is consummated as part of or otherwise incorporated into a Plan (as defined in Paragraph 6), they shall support and use their reasonable best efforts to obtain acceptance by their constituencies of such Plan, which shall provide for the releases set forth herein by the Trustees and by all holders of the 12% Senior Subordinated Notes and 14% Senior Discount Notes of the Noteholder Claims. Whether the Contributed Assets are distributed under a Plan or otherwise, however, it shall be a condition both (i) to the receipt of any Contributed Assets and any other distributions of any kind and howsoever generated, (such as, by way of

12

example, recoveries obtained by the Creditor Trust), by any Noteholder and (ii) to the waiver by the Senior Lenders, as to any Noteholder, of the Senior Lenders' contractual subordination rights in respect of the 12% Senior Subordinated Notes and structural subordination rights vis-à-vis the holders of the 14% Senior Discount Notes, either that such Noteholder has provided the Agent and Senior Lenders with a release of the Noteholder Claims in a form reasonably satisfactory to the Agent, or that the Bankruptcy Court has determined, in a final order, that the Noteholder Claims have been deemed released as to such Noteholder. The Senior Lenders' waiver of subordination rights shall not apply to any Noteholder who elects not to grant or who is not deemed to have granted such release. With respect to any Noteholder that shall not have granted or deemed to have granted such release, (a) the Agent shall be paid the amount which equals the Noteholder's Share (as defined below) of the amount of Contributed Assets, exclusive of (x) the Contributed Assets described in Paragraph 3(A)(iii), and (y) the pro rata portion of the Administrative Expense Carve Out allocable to such non-releasing Noteholder (which shall be an amount equal to the Noteholder's Share of the Administrative Expense Carve Out), and (b) such Noteholder shall not receive any distributions from the estates, including any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3(A)(iii), with distributions instead to be reallocated, pursuant to a confirmed Plan or other order of the Court, among the allowed claims of other Unsecured Creditors. "Noteholder's Share" shall mean the ratio of the allowed claims of such non-releasing Noteholder to the allowed claims of all Unsecured Creditors.

       C. Limitation on Release of Term C-Lenders – The releases and waivers contained in Paragraph 4A of this Settlement Agreement for the benefit of the Released Lender Parties shall also apply to the Term-C Lenders (DLJ Capital Funding, Inc., DLJ Merchant

13

Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Offshore Partners II,

C.V., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB Partners, L.P.,

DLJ Millenium Partners, L.P., DLJ ESC II, L.P., DLJ Millenium Partners-A, L.P. and

Donaldson, Lufkin and Jenrette Securities Corporation (collectively, the "Term-C Lenders")) and

their affiliates, insiders (as defined in Section 101 of the Bankruptcy Code), agents, employees

and professionals, only in respect of the Term-C Loans under the Credit Agreement (as defined

therein) and notwithstanding anything herein to the contrary, the Term-C Lenders and their

affiliates, insiders (as defined in Section 101 of the Bankruptcy Code) agents, employees and

professionals, shall not otherwise be released or deemed released. Nothing contained herein shall

be deemed to discharge, impair or otherwise affect any claim, action, cause of action or right

against the Term-C Lenders and any affiliate, insider, agent or professional of the Term-C

Lenders, except as specifically set forth in the preceding sentence, provided however that the

reservation of non-released claims, causes of action or rights in this Paragraph shall not extend to

the Released Lender Parties.

D. The Agent and the Senior Lenders – Except to the extent specifically

otherwise provided herein, the Agent and the Senior Lenders hereby waive and relinquish any

and all interest in and claims that each of them have or may have against the Contributed Assets

and Avoidance Actions.

E. Release of Certain Avoidance Actions – In consideration for the agreement set

forth herein and the benefits and services provided by the Released Employees (defined below),

and subject to the terms of this Settlement Agreement, the Debtors, the Creditors' Committee,

the Agent and the Senior Lenders, on behalf of themselves and the estates of the Debtors, and

each of their respective predecessors, successors and assigns, hereby fully waive, release and

14

forever discharge all avoidance claims and causes of action arising under chapter 5 of the Bankruptcy Code or otherwise relating to or concerning the conversion from recourse to non-recourse of certain loans and the deferred payment of certain bonuses, in an aggregate amount not to exceed $250,000, in respect of the following employees of the Debtors: Michael Elia, Fred Stewart, Steve Crea, and Phil Pittman ("Released Employees").

F. Scope of Releases – The Parties acknowledge and agree that nothing contained in the foregoing releases shall release or discharge any person or entity other than the specifically identified beneficiaries of the releases in this Paragraph 4.

5.     SUPPLEMENTAL SEVERANCE PROGRAM. On April 14, 2003, the Bankruptcy Court entered an order approving, and authorizing the Debtors to make payments under, Debtors' Employee Compensation Program, in an amount not to exceed $750,000, from sums allocated in the Wind Down Budget, for employees who are not covered by the KERP and the KESP but who are not being hired by the purchasers of the Debtors' assets (the "Severance Pay Order"). Notwithstanding the Severance Pay Order, the Debtors have agreed that until sufficient excess funds have been identified in the Wind Down Budget, the Debtors would not distribute not more than $500,000 of the $750,000 that was identified as "Employee Benefits" unrelated to Sales in the Wind Down Budget, so that the remaining $250,000 of such $750,000 would be applied to the $500,000 of Reallocated Monies. The Debtors have identified sufficient additional unused funds related to wind down costs unrelated to Sales (as set forth in the Wind Down Budget) thus, the Creditors' Committee, Wachovia and U.S. Bank have consented to and agreed, absent any errors with respect to identified recipients and the calculation of applicable amounts, not to raise any objection to, the Debtors making severance payments not to exceed $750,000 in accordance with the Severance Pay Order.

15

6.    **SETTLEMENT EFFECTIVE DATE.** Subject to Paragraph 7 herein, the date this Settlement Agreement shall become effective and shall be binding upon and inure to the benefit of all the Senior Lenders, the Agent, the Debtors, the Creditors' Committee, Wachovia and U.S. Bank (the "Settlement Effective Date") shall be the earlier of (i) the date on which the Bankruptcy Court enters a final and non-appealable order approving this Settlement Agreement if the Settlement Agreement is executed by or on behalf of all of the Senior Lenders, or (ii) the date on which the Bankruptcy Court enters a final and non-appealable order confirming a plan of liquidation proposed by the Debtors which incorporates the terms of and is otherwise consistent with this Settlement Agreement and is in form and substance reasonably acceptable to the Creditors' Committee, Wachovia, U.S. Bank, the Debtors and the Agent ("Plan"). Notwithstanding the prior occurrence of the Settlement Effective Date, no holder of the 12% Senior Subordinated Notes or the 14% Senior Discount Notes shall be bound by or entitled to the benefit of this Settlement Agreement until such holder shall have provided (or be deemed to have provided) the release set forth in Paragraph 4B. For the avoidance of doubt, upon the Settlement Effective Date, the obligations of the Agent and the Senior Lenders, whether under this Settlement Agreement or otherwise, to the Debtors and the other signatories to this Settlement Agreement shall be limited to their consent to the reallocation of the Contributed Assets in accordance with and subject to the terms and conditions of this Settlement Agreement, the obligations under the Cash Collateral Order in respect of the Carve Out and the Wind Down Budget, the continuing confidentiality obligations under the Credit Agreement and, to the extent the Agent and the Debtors may mutually agree, to the continuation of the existing cash management system with the Agent  For the further avoidance of doubt, the allowance of the Senior Lenders' liens and claims, as set forth in Paragraph 1, the treatment of the Allowed Senior

16

Lenders' Claims, as set forth in Paragraph 2, the releases of the Senior Lenders set forth in Paragraph 4 and the reallocation of the Contributed Assets set forth in Paragraph 3 shall be final and irrevocable upon the Settlement Effective Date, without regard to whether the Debtors effectuate a Plan or whether (or in what manner) the distributions contemplated herein for Unsecured Creditors are effected.

7.   **SETTLEMENT TERMINATION EVENT.**  A Settlement Termination Event shall be the earliest to occur of the following, provided that the Settlement Effective Date shall not previously have occurred:  (i) May 14, 2003, (x) if this Settlement Agreement has not been executed by or on behalf of the Creditors' Committee, the Debtors, Wachovia, U.S. Bank and holders of not less than two-thirds (2/3) in amount and over one-half (1/2) in number of the holders of the Senior Lenders' claims, or (y) a motion for approval of this executed Settlement Agreement ("Settlement Motion") has not been filed with the court; (ii) ~~June 15,~~ 2003, if a final _June 30,_ and non-appealable order approving the Settlement Motion has not been entered by the Bankruptcy Court and become final; (iii) May 30, 2003, if the Plan and disclosure statement have not been filed with the Court; and (iv) ~~August 15,~~ 2003, if a final and non-appealable _September 30,_ confirmation order has not been entered in respect of such Plan.  In the event of the occurrence of a Settlement Termination Event for any reason, including the failure to confirm the Plan due to the insufficiency of estate funds to pay administrative or priority claims under a Plan, the Settlement Agreement shall be deemed withdrawn and shall be null and void and of no further force and effect, and the parties shall be restored to their respective rights as if the Settlement Agreement had not been executed, except that (i) the Bar Date Amendment (as defined in Paragraph 9(a) below) shall survive the occurrence of any subsequent Settlement Termination

17

Event and (ii) provided that this Settlement Agreement is approved by order of the Bankruptcy Court, the provisions of Paragraph 8 of this Settlement Agreement shall survive the occurrence of any subsequent Settlement Termination Event.

8.    WITHDRAWAL OF TRUSTEE MOTION.  Upon the entry of a final order approving this Settlement Agreement, the Creditors' Committee will withdraw its Trustee Motion and such withdrawal shall be with prejudice to the filing by the Creditors' Committee of any future motion seeking the same or similar relief on substantially the same factual grounds, provided that nothing in this Paragraph 8 shall limit the Creditors' Committee's right to file a motion for appointment of a chapter 11 trustee or examiner based on events or facts occurring after the date of this Settlement Agreement.  Wachovia and U.S. Bank likewise agree not to file any further motion(s) seeking similar relief on substantially the same factual grounds as are set forth in the Trustee Motion, but shall retain the right to file a motion for appointment of a chapter 11 trustee or examiner based on events or facts occurring after the date of this Settlement Agreement.

9.    AMENDMENTS OF OTHER ORDERS.  A.  The Cash Collateral Order shall be amended (or deemed amended as of the Settlement Effective Date) to the extent necessary to implement the provisions of Paragraphs 3A(iv) and 5 herein.

B.    Except as expressly amended hereby, the provisions of the Cash Collateral Order shall continue in full force and effect and shall not be deemed altered or affected in any way by this Settlement Agreement.

18

10.     <u>SUBSTANTIVE CONSOLIDATION/CREDITORS' TRUST.</u> The Plan shall provide for the substantive consolidation of the Debtors' estates for purposes of Plan distributions. The Plan shall also provide for the creation and implementation of a Creditors' Trust for the benefit of Unsecured Creditors of the Debtors, which would be funded with the proceeds of the Contributed Assets received under Paragraph 3A(iii) and the Avoidance Actions and the Creditors' Trust shall pursue all claims, actions and causes of action that have been or could be asserted by the Debtors or their estates, including Avoidance Actions, other than the claims specifically released under this Settlement Agreement.

11.     <u>MONITORING/ADMINISTRATION/SUPPORT.</u> All parties to this Settlement Agreement shall be entitled to a monthly written accounting and status report from the Debtors or such other legal entity as may be administering the estate or the implementation of this Settlement Agreement, which shall include an accounting of all asset dispositions, distributions, cash and other assets in which the estate has an interest and such other information as may be necessary or desirable in order to monitor the implementation of this Settlement Agreement. Representatives of the Parties shall continue to be provided reasonable access to the entity administering the estate and the implementation of this Settlement Agreement, and the books, records and other relevant information in order to further monitor the implementation of this Settlement Agreement. The Parties shall use their reasonable best efforts and endeavor in good faith to implement, and conclude, as expeditiously and cost effectively as possible, the Settlement Agreement through a Plan or otherwise. The Chapter 11 Cases shall not be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code unless and until procedures reasonably acceptable to the Parties hereto have been adopted to carry out the provisions of this

19

Settlement Agreement, including the disposition of assets and distribution of proceeds as set forth herein and the turnover of cash and proceeds to the Agent, as provided herein, provided that the foregoing requirements are not intended to and shall not contravene the Debtor's exercise of its fiduciary duties. To the extent that the Agent is required to take any action to enforce its rights under this Settlement Agreement, the Parties to this Settlement Agreement agree not to contest the Agent's entitlement to an administrative claim for its reasonable fees and expenses, including professional fees, with respect to such enforcement. To the extent that confirmation of a Plan is necessary to achieve the Settlement Effective Date (or to achieve the releases set forth in Paragraph 4B), then, subject to the terms and conditions of this Settlement Agreement, the Parties shall recommend to their constituencies entitled to vote on such a Plan that they vote in favor of the Plan.

   12. <u>BINDING EFFECT.</u> From and after the Settlement Effective Date, this Settlement Agreement shall inure to the benefit of and be binding upon the Parties and their respective agents, representatives, successors and assigns, including without limitation, any chapter 7 trustee or any other representative of these estates, custodian of the assets subject to this Settlement Agreement or such other legal entity as may be responsible for carrying out all or any portion of this Settlement Agreement. Prior to the Settlement Effective Date, no signatory hereto shall assign its claim against the Debtors unless such assignee executes a written agreement consenting to the terms of this Settlement Agreement and agreeing to comply with the terms and conditions hereof.

   13. <u>MISCELLANEOUS.</u> The terms of this Settlement Agreement are conditioned upon the completion of documentation, including pleadings, in form and substance

20

reasonably acceptable to all parties. This Settlement Agreement is not and shall not be deemed to be a solicitation for consents to a Plan. Acceptance of a Plan shall not be solicited from any creditor until such creditor has received the appropriate disclosure statement and related ballots, as approved by the Bankruptcy Court.

14.    FIDUCIARY OBLIGATIONS. Nothing herein shall be interpreted to conflict with or to restrict the performance of any fiduciary duty of the Debtors, the Creditors' Committee or the Trustees, except that it is acknowledged and agreed that, based upon the present facts known to the Parties as of the date of this Settlement Agreement, the terms of this Settlement Agreement are in the best interest of the Debtors' estates and of the unsecured creditors of such estates, and therefore consistent with such fiduciary duties

15.    REPRESENTATION, WARRANTIES AND COVENANTS. Each of the Parties to this Settlement Agreement hereby represents and warrant as to itself as of the date hereof that:

A.    Each of the Parties has full right, power, authority, and legal capacity and is competent to enter into and perform this Settlement Agreement and each agreement, document or instrument executed hereunder.

B.    For each such Party that is a corporation, it is a corporation duly organized and validly existing under the laws of its state of incorporation.

C.    This Settlement Agreement constitutes the valid and binding obligation of such Party and is enforceable in accordance with its terms.

21

D.     Each of the Senior Lenders listed on Schedule 1 hereto is the owner of the indebtedness owed by the Debtors under the Credit Agreement in the approximate amount reflected on Schedule 1 hereto.

16.     **INDEPENDENT INVESTIGATION.** As part of the foregoing release and compromise, the Parties acknowledge that they understand and accept the risk that the facts with respect to which this Settlement Agreement is entered into may be different from the facts now known or believed by such Parties to be true. This Settlement Agreement shall remain in all respects effective and shall not be subject to termination or rescission by virtue of any such differences in fact. In entering into this Settlement Agreement, the Parties acknowledge that they have each conducted their own independent investigations, have consulted with legal counsel of their own respective choice or been afforded the opportunity to do so, and have not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Settlement Agreement.

17.     **HEADINGS.** The paragraph, section and subsection headings contained herein are for reference purposes only, and shall not in any way affect the construction, meaning or interpretation of any of the terms or provisions of this Settlement Agreement. The paragraph, section and article headings herein in no way define, limit, extend or interpret the scope of this Settlement Agreement or of any particular paragraph or section or article.

18.     **PRONOUNS.** All pronouns and nouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the parties or the context may require.

19.     **ENTIRE AGREEMENT.** This Settlement Agreement and the documents, agreements and instruments to be executed hereunder set forth the entire

22

understanding and agreement of the Parties in respect to the transactions contemplated herein and supersede all prior agreements, arrangements and understandings, written or oral, relating to the subject matter hereof.

20.     **AMENDMENTS AND WAIVERS TO BE IN WRITING.**  No amendment, change or modification of this Settlement Agreement and no waiver of any of the terms, covenants, representations, warranties or conditions hereof, shall be effective except by a written instrument signed by the Party against whom enforcement of any amendment, change or modification is sought, or in the case of a waiver, by the Party waiving compliance.  The failure of any Party at any time to require performance of any provision hereof shall in no manner affect the right at a later time to enforce the same.

21.     **RIGHTS.**  No delay or omission on the part of any Party in exercising any right hereunder shall operate as a waiver of such right or of any other right of such Party nor shall any waiver by any Party of any such right or rights on any one occasion by deemed to operate as a waiver of the same right or rights on any future occasion.  The rights, options, powers and remedies provided for the benefit of the Parties herein shall be cumulative and no one or more of them shall be exclusive of the other or others.

22.     **LIMITATIONS ON USE.**  This Settlement Agreement is being entered into solely to compromise the disputes between the Parties and to implement the terms of the settlement set forth herein.  It is not and shall not be construed as an admission of liability by any Party or as a concession by any Party regarding the merits of its respective claims against any Party.  It may not be used in evidence by any Party, except to enforce its terms.  It is further understood and agreed that this Settlement Agreement and the terms hereof shall not be subject to any claim of mistake of fact.

23

23. **GOVERNING LAW.** This Settlement Agreement shall be construed and enforced in accordance with the laws of the State of New York and, to the extent applicable, the Bankruptcy Code.

24. **CONSENT TO JURISDICTION.** Each of the Parties hereby irrevocably consent and submit to the jurisdiction of the Bankruptcy Court for the purpose of any action or proceeding arising out of or relating to this Settlement Agreement or the transactions contemplated herein.

25. **NO INTERPRETATION BASED ON DRAFTING.** This Settlement Agreement shall not be interpreted or construed against any of the Parties because that Party or a representative of that Party drafted or participated in the drafting of this Settlement Agreement or any provision hereof.

26. **FURTHER ASSURANCES.** The Parties shall each use their best reasonable efforts and shall act in good faith to take or cause to be taken all action and do or cause to be done all things necessary, proper or advisable to obtain Bankruptcy Court approval of, and to consummate or perform, the transactions contemplated by this Settlement Agreement.

27. **NOTICES.** All notices or other communications hereunder shall be in writing and shall be deemed to have been duly given if addressed to the parties at their addresses set forth below, or at such other addresses as they may designate by notice given as aforesaid by hand delivery or overnight express mail or courier or facsimile transmission. Notices shall be deemed given when sent in accordance with the foregoing:

> If to the Debtors:
>
> Shearman & Sterling
> 599 Lexington Avenue
> New York, New York 10022-6069

24

Attention: Constance A. Fratianni, Esq.
and Scott C. Shelley, Esq.
(fax no. 212-848-7179)

If to the Creditors' Committee:

Arent Fox Kintner Plotkin & Kahn, PLLC
1675 Broadway
25th Floor
New York, New York 10019
Attention: Andrew I. Silfen, Esq.
(fax no. 212-484-3990)

If to Wachovia:

Riker, Danzig, Scherer, Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Attention: Warren Martin
(fax no. 973-538-1984)

If to U.S. Bank:

Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
Attention: Judy A. Groves
(fax no. 617-227-4420)

If to the Agent:

Sidley Austin Brown & Wood
10 So. Dearborn
Chicago, IL 60603
Attention: Janet E. Henderson
(fax no. 312-853-7036)

28.    **TIME IS OF THE ESSENCE.** Time is of the essence with respect to the

performance of this Settlement Agreement, and all of the terms, covenants and conditions

thereof.

25

29.    COUNTERPARTS/TELECOPIER. This Settlement Agreement may be executed in any number of counterparts and by any combination of parties hereto in separate counterparts, each of which counterparts shall be an original and all of which taken together shall constitute one and the same Settlement Agreement. Delivery of an executed counterpart of a signature page of this Settlement Agreement by telecopier shall be effective as delivery of a manually executed counterpart hereof.

30.    NO THIRD PARTY BENEFICIARIES. The provisions of this Agreement shall not confer or be deemed to confer upon any person or entity not a Party hereto (other than those persons specifically released pursuant to Paragraph 4 hereof) any of the benefits (including releases and waivers) or legal or equitable rights, remedies or claims under this Settlement Agreement.

31.    NOTEHOLDER RATIFICATION. This agreement shall be deemed ratified by the holders of the 12% Senior Subordinated Notes and 14% Senior Discount Notes only upon confirmation of a Plan providing for such ratification.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be signed as of the day and year first set forth above.

[REMAINDER INTENTIONALLY LEFT BLANK]

26

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement

Agreement to be signed as of the day and year first set forth above.

INSILCO TECHNOLOGIES, INC.

By: _____

Name: _Corn B. Stebbins_

Title: _President_

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF INSILCO
TECHNOLOGIES, INC. ET AL.

By: _____

Name: _____

Title: _____

BANK ONE, NA, AS LENDER AND AS AGENT
FOR THE SENIOR LENDERS LISTED ON
SCHEDULE I HERETO

By: _____

Name: _____

Title: _____

WACHOVIA BANK, NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE
FOR THE 12% SENIOR SUBORDINATED
NOTES

By: _____

Name: _____

Title: _____

U.S. BANK, AS TRUSTEE FOR THE 14%
SENIOR DISCOUNT NOTES

ARENT FOX                                              ☒003.

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF INSILCO
TECHNOLOGIES, INC. ET AL.

26

By: _Andrew I. Siffen (llum)_
Name: _Andrew I. Siffen_
Title: _Member_

BANK ONE, NA, AS LENDER AND AS
AGENT FOR THE SENIOR LENDERS
LISTED ON SCHEDULE I HERETO

By: _____
Name: _____
Title: _____

WACHOVIA BANK, NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE
FOR THE 12% SENIOR SUBORDINATED
NOTES

By: _____
Name: _____
Title: _____

U.S. BANK, AS TRUSTEE FOR THE 14%
SENIOR DISCOUNT NOTES

By: _____
Name: _____
Title: _____

CHARTER VIEW PORTFOLIO          AERIES FINANCE-II LTD.

By: _____     By: _____
Name: _____   Name: _____
Title: _____  Title: _____

AVALON CAPITAL LTD. 2           CERES II FINANCE LTD.

By: _____     By: _____
Name: _____   Name: _____
Title: _____  Title: _____

26

By:_____
Name:_____
Title:_____

BANK ONE, NA, AS LENDER AND AS
AGENT FOR THE SENIOR LENDERS
LISTED ON SCHEDULE I HERETO

By: _Ken Christensen_
Name: _KEVIN CHRISTENSEN_
Title: _1st VP_

WACHOVIA BANK, NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE
FOR THE 12% SENIOR SUBORDINATED
NOTES

By:_____
Name:_____
Title:_____

U.S. BANK, AS TRUSTEE FOR THE 14%
SENIOR DISCOUNT NOTES

By:_____
Name:_____
Title:_____

| CHARTER VIEW PORTFOLIO | AERIES FINANCE-II LTD. |
|---|---|
| By: _____ <br> Name: <br> Title: | By: _____ <br> Name: <br> Title: |
| AVALON CAPITAL LTD. 2 | CERES II FINANCE LTD. |
| By: _____ <br> Name: <br> Title: | By: _____ <br> Name: <br> Title: |

May-15-2003  04:17pm   From-ARENT FOX                              T-824  P 001/002  F-878

26

By:_____
Name:_____
Title:_____

BANK ONE, NA, AS LENDER AND AS
AGENT FOR THE SENIOR LENDERS
LISTED ON SCHEDULE I HERETO

By:_____
Name:_____
Title:_____

WACHOVIA BANK, NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE
FOR THE 12% SENIOR SUBORDINATED
NOTES

By: _Robert L. Bice II_
Name: _Robert L. Bice II_
Title: _Vice President_

U.S. BANK, AS TRUSTEE FOR THE 14%
SENIOR DISCOUNT NOTES

By:_____
Name:_____
Title:_____

CHARTER VIEW PORTFOLIO              AERIES FINANCE-II LTD.

By:_____                 By:_____
Name:_____                 Name:_____
Title:_____                 Title:_____

AVALON CAPITAL LTD. 2               CERES II FINANCE LTD.

By:_____                 By:_____
Name:_____                 Name:_____
Title:_____                 Title:_____

May-14-2003 12:42pm    From-AGENT FOX                                T-609  P 002/002  F-651

26

By:_____
Name:_____
Title:_____

**BANK ONE, NA, AS LENDER AND AS
AGENT FOR THE SENIOR LENDERS
LISTED ON SCHEDULE I HERETO**

By:_____
Name:_____
Title:_____

**WACHOVIA BANK, NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE
FOR THE 12% SENIOR SUBORDINATED
NOTES**

By:_____
Name:_____
Title:_____

**U.S. BANK, AS TRUSTEE FOR THE 14%
SENIOR DISCOUNT NOTES**

By:_____
Name: _Patricia J. Kapsch_
Title: _Assistant Vice President_

**CHARTER VIEW PORTFOLIO**               **AERIES FINANCE-II LTD.**

By:                                      By:
Name:                                    Name:
Title:                                   Title:

**AVALON CAPITAL LTD. 2**                **CERES II FINANCE LTD.**

By:                                      By:
Name:                                    Name:
Title:                                   Title:

TOTAL P.02

A - 471

May-01-02　10:14am　From-　　　　　　　　　　　　　　　　　　　　T-254　P 002/003　F-909

26

By:_____
Name:_____
Title:_____

**BANK ONE, NA, AS LENDER AND AS AGENT FOR THE SENIOR LENDERS LISTED ON SCHEDULE I HERETO**

By:_____
Name:_____
Title:_____

**WACHOVIA BANK, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR THE 12% SENIOR SUBORDINATED NOTES**

By:_____
Name:_____
Title:_____

**U.S. BANK, AS TRUSTEE FOR THE 14% SENIOR DISCOUNT NOTES**

By:_____
Name:_____
Title:_____

CHARTER VIEW PORTFOLIO
By: INVESCO Senior Secured Management, Inc.
　　As Investment Adviser

By:_____
Name:
Title:　　　Gregory Stoeckle
　　　　　Authorized Signatory

AVALON CAPITAL LTD. 2
By: INVESCO Senior Secured Management, Inc.
　　As Portfolio Advisor

By:_____
Name:
Title:　　　Gregory Stoeckle
　　　　　Authorized Signatory

AERIES FINANCE-II LTD.
By: INVESCO Senior Secured Management, Inc.
　　As Sub-Managing Agent

By:_____
Name:
Title:　　　Gregory Stoeckle
　　　　　Authorized Signatory

CERES II FINANCE LTD.
By: INVESCO Senior Secured Management, Inc.
　　As Sub-Managing Agent (Financial)

By:_____
Name:
Title:　　　Gregory Stoeckle
　　　　　Authorized Signatory

May-08-03    10:14am    From-                                          T-251    P 093/093    F-700

27

OASIS COLLATERALIZED HIGH INCOME PORTFOLIOS-1,    NEMEAN CLO, LTD.
LTD.
By: INVESCO Senior Secured Management, Inc. As Subadvisor

By:                                                    By:
Name:                                                  Name:
Title:        Gregory Stoscdale                        Title:
              Authorized Signatory

ENDURANCE CLO I, LTD.                        ARCHIMEDES FUNDING II, LTD.

By:                                                    By:
Name:                                                  Name:
Title:                                                 Title:

ARCHIMEDES FUNDING IV (CAYMAN),    SEQUILS-INC I (HBDGM), LTD.
LTD.

By:                                                    By:
Name:                                                  Name:
Title:                                                 Title:

KZH ING-3 LLC                                KZH ING-2 LLC

By:                                                    By:
Name:                                                  Name:
Title:                                                 Title:
NORTHWOODS CAPITAL II, LIMITED               NORTHWOODS CAPITAL III, LIMITED

By:                                                    By:
Name:                                                  Name:
Title:                                                 Title:

NORTHWOODS CAPITAL, LIMITED                  AG CAPITAL FUNDING PARTNERS, L.P.

By:                                                    By:
Name:                                                  Name:
Title:                                                 Title:

05/08/2003 09:42 FAX 213 821 3797        ING                              ☒004/005

ASSET REALLOCATION & SETTLEMENT AGREEMENT
FOR INSILCO TECHNOLOGIES
5/8/03

ENDURANCE CLO I, LTD.

c/o: ING Capital Advisors LLC,
as Collateral Manager

BY: _____
Name:      GORDON COOK
Title:     SENIOR VICE PRESIDENT
           & PORTFOLIO MANAGER

ARCHIMEDES FUNDING II, LTD.

BY: ING Capital Advisors LLC,
as Collateral Manager

BY: _____
Name:      GORDON COOK
Title:     SENIOR VICE PRESIDENT
           & PORTFOLIO MANAGER

ARCHIMEDES FUNDING IV (CAYMAN), LTD.

BY: ING Capital Advisors LLC,
as Collateral Manager

BY: _____
Name:      GORDON COOK
Title:     SENIOR VICE PRESIDENT
           & PORTFOLIO MANAGER

NEMEAN CLO, LTD.

BY: ING Capital Advisors LLC,
as Investment Manager

BY: _____
Name:      GORDON COOK
Title:     SENIOR VICE PRESIDENT
           & PORTFOLIO MANAGER

05/09/2003 09:42 FAX 213 821 3797          ING                                    ⓐ003/003

ASSET REALLOCATION & SETTLEMENT AGREEMENT
FOR INSILCO TECHNOLOGIES
5/8/03

SEQUILS-ING I (HBDGM), LTD.

BY:   ING Capital Advisors LLC,
      as Collateral Manager

BY:   _____
Name:
Title:        GORDON COOK
          SENIOR VICE PRESIDENT
          & PORTFOLIO MANAGER