| | | |
|---|---|---|
| Furniture | (1) | 3-shelf metals unit |
| Furniture | (8) | 6-shelf metal bookshelves |
| Furniture | (1) | 6 foot folding table |

A - 501

32

<u>Schedule I</u>

[List of Senior Lenders]

WP3:809005.1          63683-1001

Schedule I

## Indebtedness Owed as of 12/16/02 on Revolving Credit, Term Loan A, Term Loan B

| | (1) TLB | (2) TLA | (3) Revolver Clean Advances | (4) Letter of Credit | SUM (1-4) Total |
|---|---|---|---|---|---|
| AERIS FINANCE II | 1,009,405.65 | | | | 1,009,405.65 |
| AG CAPITAL FUNDING PARTNERS L | 4,390,863.71 | | | | 4,390,863.71 |
| ARCHIMEDES FUNDING II | 4,309,947.37 | | | | 4,309,947.37 |
| ARCHIMEDES FUNDING IV (CAYMAN | 4,208,343.52 | | | | 4,208,343.52 |
| ARES IV CLO LTD. | 5,113,690.01 | | | | 5,113,690.01 |
| ARES LEV INVEST FUND II, LP | 3,400,072.60 | | | | 3,400,072.60 |
| AVALON CAPITAL LTD. 2 | 3,205,217.07 | | | | 3,205,217.07 |
| BLACK DIAMOND CLO 2000-1 LTD | 10,094,056.91 | | | | 10,094,056.91 |
| CERES II FINANCE LTD | 5,371,271.42 | | | | 5,371,271.42 |
| CHARTER VIEW PORTFOLIO | 2,680,214.77 | | | | 2,680,214.77 |
| ENDURANCE CLO I LTD | 2,138,811.59 | | | | 2,138,811.59 |
| GSC RECOVERY II LP | 5,797,691.44 | | | | 5,797,691.44 |
| GSC RECOVERY IIA LP | 4,639,470.19 | | | | 4,639,470.19 |
| KZH-ING-2 LLC | 7,485,839.85 | | | | 7,485,839.85 |
| KZH-ING-3 LLC | 1,069,405.65 | | | | 1,069,405.65 |
| LASALLE BANK NA | 3,365,609.25 | 4,737,041.30 | 5,162,662.82 | $718,046.24 | 15,074,259.60 |
| MASSACHUSETTS MUTUAL LIFE INS | 840,623.59 | | | | 840,623.59 |
| MORGAN STANLEY DW PRIME INCOME | 7,335,421.76 | | | | 7,335,421.76 |
| NEMEAN CLO LTD | 5,347,022.46 | | | | 5,347,022.46 |
| NORTHWOODS CAPITAL II LTD | 4,205,116.37 | | | | 4,205,116.37 |
| NORTHWOODS CAPITAL LIMITED | 4,277,822.76 | | | | 4,277,822.76 |
| NORTHWOODS CAPITAL III, LIMITE | 4,277,822.76 | | | | 4,277,822.76 |
| OASIS COLLATERALIZED HIP I LTD | 1,069,405.65 | | | | 1,069,405.65 |
| ORIX FINANCE CORP I | 4,277,822.76 | | | | 4,277,822.76 |
| ING PRIME RATE | 5,347,028.40 | | | | 5,347,028.40 |
| SEQUILS-ING I (HBDGM) | 3,205,217.07 | | | | 3,205,217.07 |
| SILVER OAK CAPITAL LLC | 35,707,092.46 | | | | 35,707,092.46 |
| SUFFIELD CLO, LIMITED | 5,097,047.64 | | | | 5,097,047.64 |
| THIRD AVENUE TRUST | 5,396,123.69 | | | | 5,396,123.69 |
| Bank One, N.A. | | 5,665,527.71 | 8,217,734.30 | $462,375.48 | 12,166,669.50 |
| GE Capital CFE Inc. | | 2,700,363.08 | 4,130,095.27 | $674,816.99 | 8,495,536.34 |
| HunApan National Bank | | 4,737,041.30 | 5,162,662.82 | $720,166.89 | 10,800,710.80 |
| National City Bank | | 3,700,353.09 | 4,130,009.25 | $674,916.99 | 8,445,330.34 |
| Transamerica Business | | 9,216,912.18 | 10,325,155.63 | $1,477,762.49 | 21,218,830.50 |
| **TOTAL** | 160,471,523.00 | 33,216,601.43 | 35,128,246.10 | 4,558,334.00 | 232,713,443.43 |

Indebtedness Owed as of 12/16/02 on Term Loan C

| LENDER | COMMITMENT AMOUNT | % OF COMMITMENT | TOTAL INTEREST DUE | Principal and Interest |
|---|---|---|---|---|
| DLJ DIVERSIFIED PARTNERS LP | 552,000.00 | 0.0368000000 | 265,737.51 | 817,737.51 |
| DLJ DIVERSIFIED PARTNERS-A LP | 205,000.00 | 0.0136666667 | 98,688.75 | 303,688.76 |
| DLJ EAB PARTNERS LP | 42,000.00 | 0.0028000000 | 20,218.16 | 62,218.16 |
| DLJ ESC II LP | 1,035,000.00 | 0.0690000000 | 498,257.64 | 1,533,257.64 |
| DLJ MERCHANT BANKING PARTNERS II Lf | 378,010.00 | 0.0250686667 | 181,009.61 | 559,019.61 |
| DLJ MERCHANT BANKING PARTNERS II A | 8,449,000.00 | 0.5829333333 | 4,648,829.28 | 13,997,829.28 |
| DLJ MILLENIUM PARTNERS-A LP | 30,000.00 | 0.0020000000 | 14,442.26 | 44,442.26 |
| DLJ MILLENIUM PARTNERS LP | 163,000.00 | 0.0102000000 | 73,655.51 | 226,655.51 |
| DLJ OFFSHORE PARTNERS II CV | 465,000.00 | 0.0310000000 | 223,854.07 | 688,854.07 |
| MBP II PLAN INVESTORS LP | 2,893,000.00 | 0.1795333333 | 1,298,433.19 | 3,985,433.19 |
| TOTALS: | 15,000,000.00 | 1.0000000000 | 7,221,128.08 | 22,221,128.08 |

# EXHIBIT B

JUN-10-2004  12:43

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ------------------------------------------x | Chapter 11 |
| In re | Case No. 02-13672 (KJC) |
| INSILCO TECHNOLOGIES, INC., et al.,[1] | (Jointly Administered) |
| Debtors. | |
| ------------------------------------------x | RE: Docket No. 1019 |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER SECTION 1129 OF THE BANKRUPTCY CODE AND RULE 3020 OF THE BANKRUPTCY RULES CONFIRMING THE AMENDED JOINT LIQUIDATING PLAN PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

### RECITALS

A.     On December 16, 2002 (the "Petition Date"), Insilco Holding Co. and certain of its direct and indirect subsidiaries (collectively, the "Debtors") commenced these cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). On December 17, 2002, the Debtors' chapter 11 cases were consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are acting as debtors in possession.[2]

---

[1]  The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation. Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

[2]  Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Amended Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code, dated February 13, 2004 (the "Plan")

B.     No trustee or examiner has been appointed in these chapter 11 cases. On January 3, 2003, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these cases.

C.     As of the Petition Date, the Debtors and their non-debtor affiliates were leading global manufacturers and developers of highly-specialized electronic interconnection components and systems, serving the telecommunications, computer networking, electronics, automotive and medical markets. They offered a broad range of magnetic interface products, cable assemblies, wire harnesses, fiber optic assemblies and subassemblies, high-speed data transmission connectors, power transformers and planar magnetic products, and highly engineered, precision-stamped metal components.

D.     Due to the continuing depressed state of the telecommunications industry, many of the Debtors' primary customers significantly reduced the volume of products purchased from the Debtors and the Debtors' revenues failed to reach previous levels. As a result of their diminished cash flow, the Debtors did not have the ability to service their significant long-term debt obligations in the ordinary course of business. After examining numerous restructuring alternatives with their investment advisors and consulting with their senior secured lenders, the Debtors determined that it was in the best interest of their creditors, customers and employees to file these chapter 11 proceedings.

E.     On December 19 and 20, 2002, the Debtors filed motions in these cases seeking approval of bidding procedures for sales of substantially all of the Debtors' assets on a going concern basis and authorization to consummate such sales (the "Going Concern Sales"). On January 30, 2003, this Court entered orders approving bidding procedures to govern the Going Concern Sales. On March 7, 2003, the Court held hearings on the five Going Concern

2

JUN-10-2004  12:03

Sales motions. At the March 7, 2003 hearing, the parties informed the Court that the Creditors' Committee, the agent for the Lenders (the "Agent") and the Debtors reached an agreement in principle over the terms of a "global" settlement. The Court subsequently signed orders approving the Going Concern Sales, which orders were entered by the Court on March 11, 2003. The Debtors consummated each of the Going Concern Sales between March 14 and March 25, 2003.

        F.    The aforementioned global settlement was incorporated into the Asset Reallocation and Settlement Agreement, dated as of May 13, 2003 (the "Asset Reallocation and Settlement Agreement"), by and among (i) the Debtors, (ii) the Creditors' Committee, (iii) Bank One, NA, as Agent, and the lenders, including Bank One, NA, under the Second Amended and Restated Credit Agreement, dated as of August 25, 2000, as amended, that have consented to the terms of the Asset Reallocation and Settlement Agreement, (iv) Wachovia Bank, National Association, as indenture trustee for the 12% senior subordinated notes due 2007 issued by Insilco Technologies, Inc., and (v) U.S. Bank National Association, as the indenture trustee for the 14% senior discount notes due 2008 issued by Insilco Holding Co. The Asset Reallocation and Settlement Agreement was approved by order of the Court dated June 14, 2003.

        G.    On January 27, 2004, the Debtors filed (a) the Motion for an Order: (I) Scheduling Confirmation Hearing; (II) Approving Form and Manner of Solicitation Packages; (III) Approving Form and Manner of Notice of the Confirmation Hearing; (IV) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages; (V) Approving Forms of Ballots; (VI) Establishing Last Date for Receipt of Ballots; (VII) Approving Procedures for Vote Tabulations; and (VIII) Establishing Deadline and Procedures for Filing Objections to Confirmation of the Plan, dated January 27, 2004 (the "Solicitation Procedures

3

Motion") and (b) a notice of hearing in connection thereto.  The Solicitation Procedures Motion was served by regular mail on the Office of the United States Trustee for the District of Delaware and all entities that had filed a notice of appearance and request for service of papers in these chapter 11 cases

H.    After a hearing on February 13, 2004 to consider the Solicitation Procedures Motion, this Court entered the Order: (I) Approving Amended Disclosure Statement for the Debtors' Joint Liquidating Plan; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Solicitation Packages; (IV) Approving Form and Manner of Notice of the Confirmation Hearing; (V) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages; (VI) Approving Forms of Ballots; (VII) Establishing Last Date for Receipt of Ballots; (VIII) Approving Procedures for Vote Tabulations; and (IX) Establishing Deadline and Procedures for Filing Objections to Confirmation of the Plan (the "Solicitation Procedures Order").

I.    As required by the Solicitation Procedures Order, on or before February 23, 2004 (the "Distribution Date"), the Debtors caused PatLett, Inc. ("PatLett"), the Debtors' solicitation and voting agent, to mail Non-Voting Creditor Notices to Unimpaired Creditors and to the Class 8 interest holders.

J.    Also as required by the Solicitation Procedures Order, on or before the Distribution Date, the Debtors caused PatLett to mail (or make available electronically) (i) Solicitation Packages or Non-Voting Creditor Notices (whichever were applicable) and (ii) the Committee Letter, to all creditors and parties in interest in these cases.

4

K.    Also as required by the Solicitation Procedures Order, on or before March 1, 2004, the Debtors made a one-time publication of a notice of the Confirmation Hearing in USA Today.

L.    Except as explicitly set forth below, on or before the Distribution Date, the Debtors caused PatLett to mail Solicitation Packages, each containing a copy of (i) the Solicitation Procedures Order, (ii) the Confirmation Hearing Notice, (iii) the Committee Letter, (iv) ballot and return envelope addressed to the Ballot Tabulation Center and (v) the Disclosure Statement, together with all exhibits thereto, including the Plan, to (a) each entity listed on the Debtors' schedules of assets and liabilities (other than (x) Unimpaired Creditors and (y) creditors with claims scheduled as disputed, contingent or unliquidated, who had failed to timely file proofs of claim), as amended or reconstituted by the Record Date, (b) each entity that had filed a proof of claim in accordance with this Court's order, dated February 25, 2003, which claim had not been disallowed, withdrawn or expunged, (c) the beneficial owners of the Senior Notes as identified by The Depository Trust Company ("DTC") as of the Record Date and (d) Nominees as identified by DTC as of the Record Date.

M.    Pursuant to the Solicitation Procedures Order, ballots to accept or reject the Plan were required to be submitted to PatLett by no later than 4:00 p.m. prevailing Eastern time on April 19, 2004 (the "Voting Deadline").

N.    On or about April 10, 2004, the Debtors were informed that certain Class 5 claimholders (the "Affected Claimholders") had not received Solicitation Packages. Soon thereafter, on or about April 14, 2004, the Debtors caused PatLett to mail Solicitation Packages to such claimholders by express/overnight mail. Moreover, on April 19, 2004, the Debtors filed the Debtors' Motion for Order Pursuant to 11 U.S.C. § 105(a) and Rule 9006(b) of the Federal

5

Rules of Bankruptcy Procedure Permitting Debtors to Extend the Voting Deadline (the "Voting Deadline Extension Motion"). No objections were filed with the Court or received by the Debtors prior to the objection deadline, and on May 17, 2004, the Debtors filed a certificate of no objection. The Debtors have agreed to extend the Voting Deadline with respect to each ballot cast by an Affected Claimholder that was received after the Voting Deadline.

O.      As described more fully in the Affidavit of Patricia E. Hackett-Lett Certifying Voting on and Tabulation of Ballots Accepting and Rejecting the Debtors' Amended Plan of Liquidation (the "Voting Report"), the Plan has been accepted by all impaired classes of claims and interests entitled to vote.

P.      The Solicitation Procedures Order further required that any objections to confirmation of the Plan be in writing, filed with the Court and served upon the Service Parties, together with proof of service, by no later than April 19, 2004. As of April 19, 2004, the Debtors had received copies of the following objections/joinders:

(i)  Objection by the United States (Internal Revenue Service) to the Debtors' Amended Joint Liquidating Plan;

(ii)  Objection of New York State to Debtors' Amended Joint Liquidating Plan;

(iii)  Objection of SUSA Mt. Vernon LLC to the Debtors' Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code;

(iv)  Limited Objection to Confirmation by Chapter 7 Trustee for the Bankruptcy Estate of Star Services, Inc. of Delaware; and

(v)  Joinder of Lawrence F. DeGeorge in Limited Objection to Confirmation and Motion for Relief from the Automatic Stay Filed by Chapter 7 Trustee for the Bankruptcy Estate of Star Services, Inc. of Delaware.

6

JUN-10-2004  12:44                                                          P-49

> Q.  On or about June 7, 2004, the Debtors filed a technical modification to the Plan, wherein the Debtors modified the definition of the term "Trust Agreement" to provide that the Trust Agreement may be filed with the Court prior to the Effective Date (the "Technical Modification").

> R.  On June 7, 2004, the Debtors filed the Memorandum in Support of Confirmation of Amended Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Confirmation Memorandum"), and on June 9, 2004, the Debtors filed the Declaration of Carol G. Stebbins (the "Stebbins Declaration") in support of confirmation.

> S.  The Confirmation Hearing was held on June 10, 2004 at 10:00 a.m. Eastern daylight time.

NOW, THEREFORE, based upon the Court's review of the Confirmation Memorandum and the Voting Report previously filed with the Court and upon (i) all of the evidence proffered or adduced and arguments of counsel made at the Confirmation Hearing and (ii) the entire record of these chapter 11 cases, and after due deliberation thereon and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

IT IS HEREBY FOUND AND DETERMINED THAT:

1.  Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409). This Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

7

JUN-18-2004  12:44                                                        P. 69

has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions

of the Bankruptcy Code and should be confirmed.

     2.    Judicial Notice. This Court takes judicial notice of the docket of these

chapter 11 cases maintained by the clerk of the Court and/or its duly-appointed agent, including,

without limitation, all pleadings and other documents filed, all orders entered, and all evidence

and arguments made, proffered or adduced at the hearings held before the Court during these

chapter 11 cases, including, without limitation, the hearing to consider the adequacy of the

Disclosure Statement.

     3    Burden Of Proof. The Debtors, as proponents of the Plan, have the burden

of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a

preponderance of the evidence and the Debtors have met that burden as further found and

determined herein.

     4    Transmittal and Mailing of Materials: Notice. The Solicitation Packages

were transmitted and served in compliance with the Solicitation Procedures Order, the

Bankruptcy Code and the Bankruptcy Rules, and such transmittal and service were adequate and

sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other dates and

hearings described in the Solicitation Procedures Order was given in compliance with the

Bankruptcy Rules, the Bankruptcy Code and the Solicitation Procedures Order, and no other or

further notice is or shall be required.

     5.    Voting. Votes to accept or reject the Plan have been solicited and

tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the

Bankruptcy Rules, the Solicitation Procedures Order and industry practice. All of the impaired

classes of Claims voting under the Plan have voted to accept the Plan, with the requisite Holders

8

JUN-10-2004  12:44                                                              P.10

(in number and amount) in each of Class 4 Claims, Class 5 Claims, Class 6 Claims and Class 7 Claims having voted to accept the Plan, without the need to include any acceptance of the Plan by an insider. No Noteholder has submitted a ballot opting out of the Noteholder Releases.

6.    The Plan Modification (11 U.S.C. § 1127). Subsequent to solicitation, the Debtors made a technical modification to the Plan, on or about June 7, 2004, wherein the Debtors modified the definition of the term "Trust Agreement." This modification does not adversely affect the treatment of any Claims or Interests in the Debtors under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, this modification does not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor does such modification require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan as modified shall constitute the Plan submitted for confirmation by the Bankruptcy Court.

7.    Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

          i.    Proper Classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)). With the exception of Administrative Claims and claims based on Statutory Fees and Professional Fees, which need not be classified, the Plan designates eight (8) classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in such Class. Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and, therefore, the Plan does not unfairly discriminate among holders of Claims or Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

9

JUN-10-2004  12:44                                                       P. 11

    ii.    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Classes 1, 2 and 3 are not impaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

    iii.    Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan designates Classes 4, 5, 6, 7 and 8 as impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

    iv.    Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Interest in a particular Class unless the holder of a particular Claim or Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

    v.    Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

    vi.    Charter Provisions (11 U.S.C. § 1123(a)(6)). Pursuant to the Plan, upon the Effective Date, (i) the existing board of directors of each Debtor and any remaining officer of any Debtor will be dismissed and (ii) each of the Debtors will be deemed dissolved. Accordingly, as each of the Debtors will be deemed dissolved, there is no issue as to (x) the issuance of nonvoting equity securities or (y) the "appropriate distribution" of voting power among the securities possessing voting power. Therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable.

    vii.    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). Pursuant to the Plan, upon the Effective Date, the existing board of directors of each Debtor and any remaining officer of any Debtor will be dismissed. In view of the fact that the Debtors are not reorganizing their businesses, but rather are liquidating their properties, that is consistent with the interests of creditors, equity holders, and public policy because it will promote cost-efficient and expeditious administration of the Plan. Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

    viii.    Rule 3016(a) of the Bankruptcy Rules. The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.

10

JUN-18-2004  12:45                                                              P.12

ix.  Rule 3016(c) of the Bankruptcy Rules. The Plan describes in specific and conspicuous italicized language all acts to be enjoined and identifies the entities that would be subject to the injunction.

8.  Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

i.  the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

ii.  the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Court; and

iii  the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Confirmation Hearing Notice and the Solicitation Packages and in soliciting and tabulating votes on the Plan.

9.  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these chapter 11 cases and the formulation of the Plan. These chapter 11 cases were filed, and the Plan was proposed, with the legitimate and honest purpose of distributing the proceeds of the sale of substantially all of the Debtors' assets so as to provide the greatest possible distribution to the Debtors' creditors.

10.  Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Except as otherwise provided or permitted by (i) the Plan or (ii) the Court's order dated January 10, 2003 (as amended by the amended order dated February 20, 2003) establishing procedures

11

for interim compensation and reimbursement of expenses for professionals (the "Interim Compensation Order"), any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

11.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). Section 1129(a)(5) of the Bankruptcy Code is inapplicable in the instant case because the Plan provides that upon the Effective Date, (i) the existing board of directors of each Debtor and any remaining officer of any Debtor will be dismissed and (ii) each of the Debtors will be deemed dissolved.

12.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors will not operate any businesses, therefore, their prices are not subject to governmental regulation. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the instant case.

13.    Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence or challenged and (iii) establishes that each holder of a Claim or Interest in an impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

14.    Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)). The Plan's treatment of Allowed Administrative Claims and Allowed Priority Claims satisfies the requirements of sections 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code, respectively.

12

A - 517

JUN-10-2004  12:45                                                                P.14

Under the Plan, holders of priority claims under sections 507(a) and 502(f) of the Bankruptcy

Code will receive, on the Effective Date, Cash equal to the full amount of Allowed Priority

Claims. The Plan also provides for (i) payment in full of Allowed Administrative Claims on or

before the Effective Date and (ii) funding of the Administrative Claims Reserve Fund for

payment in full of Administrative Claims that become allowed after the Effective Date.

   15. Acceptance of at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).

Classes 4, 5, 6 and 7 have each voted to accept the Plan (without the need to include any

acceptance of the Plan by any insider), thereby satisfying section 1129(a)(10) of the Bankruptcy

Code.

   16. Feasibility (11 U.S.C. § 1129(a)(11)). The Plan provides for the

liquidation of the Debtors' remaining assets and the distribution of cash to creditors and interest

holders in accordance with the priority scheme of the Bankruptcy Code and the terms of the

Plan. Further, the Plan contemplates the formation of, and reserves funds for compensation of, a

Creditor Trust. The Disclosure Statement and the evidence proffered or adduced at the

Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other

evidence or challenged and (iii) establish that the Plan is feasible, thus satisfying the

requirements of section 1129(a)(11) of the Bankruptcy Code.

   17. Payment of Certain Fees (11 U.S.C. § 1129(a)(12)). All fees payable on

or before the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid on the

Effective Date pursuant to the Plan. Accordingly, the Plan satisfies section 1129(a)(12) of the

Bankruptcy Code.

   18. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The evidence

adduced at the Confirmation Hearing establishes that the Debtors are not obligated, now or in the

13

P.15

future, to pay retiree benefits. Thus, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

19.    Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Class 8 is not entitled to receive or retain any property under the Plan and, therefore, is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors presented uncontroverted evidence at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 8, as required by section 1129(b)(1) of the Bankruptcy Code. Thus, although section 1129(a)(8) has not been satisfied with respect to Class 8, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code with respect to Class 8.

20.    Only One Plan (11 U.S.C. § 1129(c)). Other than the Plan (including previous versions thereof), no other plan has been filed in these chapter 11 cases. Accordingly, the requirements of section 1129(c) have been satisfied.

21.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

22.    Good Faith Solicitation (11 U.S.C. § 1125(e)). Based upon the record before the Court, the Debtors and their agent have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpatory and injunctive provisions set forth in the Plan.

14

P.16

23.    Assumption and Rejection of Executory Contracts and Unexpired Leases. Article XI of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(b) of the Bankruptcy Code.

24.    Releases, Exculpation and Injunctions. Based upon the facts and circumstances of these chapter 11 cases, the release, exculpation and injunction provisions contained in the Plan are fair and equitable, are an essential component of the agreement among the parties in interest, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities as provided in the Plan and are hereby approved.

25.    Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for confirmation set forth in subsections 1129(a) and (b) of the Bankruptcy Code.

26.    Retention of Jurisdiction. The Court may properly retain jurisdiction over the matters set forth in Article XIII of the Plan and paragraph 40 below.

## DECREES

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

27.    Confirmation. The Plan (a copy of which – including the Technical Modification -- is annexed hereto as Exhibit A), is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of each of the documents in the Plan (subject to further modifications by the Debtors, the Creditors' Committee and the Agent and the Lenders, which modifications shall not be inconsistent with the Plan or this Confirmation Order) are approved, and are incorporated by reference into, and are an integral part of the Plan.

15

28.    Objections Withdrawn or Overruled.  The objections of the United States and Lawrence P. DeGeorge have been resolved and withdrawn, based upon the Debtors' inclusion of certain language satisfactory to such parties in Paragraph 34 below.  Except as expressly provided in this Confirmation Order, each of the remaining objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are hereby denied and overruled on the merits.

29.    Provisions of Plan and Order Nonseverable and Mutually Dependent.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

30    Plan Classification Controlling.  The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors and equity holders in connection with voting on the Plan (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, and (iii) shall not be binding on the Debtors, their estates, the Creditor Trust or the Trustees.

31.    Binding Effect.  Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) the Debtors, (ii) the Creditor Trust, (iii) the Trustees, (iv) all holders of Claims against and Interests in the Debtors, whether or not impaired

16

under the Plan and whether or not, if impaired, such holders accepted the Plan and (v) each person acquiring property under the Plan.

32.    Vesting of Assets. Pursuant to the Plan, upon the Effective Date, all Assets of the Debtors (other than Cash required to be remitted to the Agent pursuant to Section 4 2(b) of the Plan) shall vest in the Creditor Trust. The Excluded Assets in the Unsecured Creditor Series shall be held, managed and used for the sole purpose of achieving Consummation and carrying out the Plan and effectuating the Distributions provided for in the Plan, including the payments required pursuant to or under the Plan and the Asset Reallocation and Settlement Agreement. The unliquidated Assets held as part of the Senior Lender Series of the Creditor Trust (including the Star Litigation, Tax Refunds and the estate's interest in retainers or any other Assets that would give rise to Settlement Proceeds) shall be administered by the Senior Lenders' Trustee subject to the obligation to remit to the Unsecured Creditors' Trustee such amount as may be required by the Asset Reallocation and Settlement Agreement and the Plan.

33.    The Unsecured Creditor Trustee. On and after the Effective Date, the Unsecured Creditors' Trustee shall be authorized and empowered to pursue and prosecute, maintain, settle or to decline to pursue the Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date. The Unsecured Creditors' Trustee may pursue, abandon, settle or release any or all Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Unsecured Creditors' Trustee may, in its sole discretion (subject to restrictions of the Plan and the Asset Reallocation and Settlement Agreement), offset, setoff or net any Claim held

17

A - 522

JUN-18-2004  12:46                                                    P.19

against a Holder of a Claim against any payment due against such Holder of a Claim under the Plan.

34.    Injunction.  Except as otherwise provided in the Plan or as expressly provided in this Confirmation Order, from and after the Confirmation Date all persons who have held, hold or may hold Claims against or Interests in the Debtors are permanently enjoined from taking any of the following actions against the Debtors, the Debtors' estates, the Creditor Trust or the Trustees or any of their respective properties on account of such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Lien or encumbrance; and (d) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan, provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan; provided further, that (i) notwithstanding anything to the contrary in the Plan or this Confirmation Order, confirmation of the Plan shall not affect the setoff and recoupment rights of the United States, if any, in respect of any future refunds that may be payable to the Debtors, nor shall confirmation of the Plan affect any defenses the Debtors or the Creditor Trust may have to such setoff or recoupment rights, (ii) nothing in the Plan or this Confirmation Order shall be deemed to discharge, release, exculpate or relieve any party from any liability arising under §§ 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended, and (iii) if a proceeding is brought in the chapter 7 bankruptcy proceedings of Star Services, Inc. of Delaware ("Star Services"), Case No. 04-31168 pending in the United States Bankruptcy Court for the Southern District of Florida to determine the relative priorities of the liens claimed *as permitted pursuant to the Court's Order of June 10, 2004 granting relief from the automatic stay to Deborah Menotte as trustee in Bankruptcy for Star Services, Inc. of Delaware and/or*

by Insilco Technologies, Inc. ("Insilco") and Lawrence F. DeGeorge against property held by Star Services, Insilco or its successor(s) can be named a party in such proceeding without violating Section 14.5, or any other provision of, the Plan, or this Confirmation Order.

35.    Continuation of Automatic Stay  All injunctions or stays provided for in these chapter 11 cases under sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

36.    Rejected Contracts and Leases  Except as otherwise provided in the Plan, any executory contracts or unexpired leases which have not expired by their own terms on or prior to the Effective Date, which have not been assumed and assigned or rejected with the approval of the Court, which are not the subject of (i) a motion to assume the same pending as of the Effective Date or (ii) not otherwise listed in a notice filed and served by the Debtors ten (10) days before the Confirmation Date, shall be deemed rejected by the Debtors on the Effective Date or as otherwise agreed upon by the parties.  The entry of the Confirmation Order by the Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

37.    General Authorizations; Plan Modifications.  Pursuant to section 1142(b) of the Bankruptcy Code, (i) the Debtors, (ii) the Creditor Trust, (iii) the Trustees and (iv) all other necessary parties are authorized and empowered to (x) execute and deliver any instrument, agreement or document and (y) perform any act that is necessary, desirable or required to comply with the terms and conditions of the Plan and consummation of the Plan, and are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents

19

created in connection with the Plan. After entry of this Confirmation Order, the Debtors (or, after the Effective Date, the Creditor Trust) may, without further order of the Court, make non-material amendments or modifications to the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan, in such manner as may be necessary to carry out the purpose and intent of the Plan.

38.     Corporate Action.  Any corporate action required to be taken by the Debtors in respect of any of the matters provided for under the Plan shall, as of the Effective Date, be deemed to have been taken and shall be effective as provided herein, and such corporate action shall be authorized and approved in all respects without any requirement of further action by stockholders, officers or directors of any of the Debtors.

39.     Exemption From Transfer Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code, any transfer from the Debtors to the Creditor Trust or otherwise pursuant to the Plan shall not be subject to any stamp tax or similar tax, and all appropriate state or local governmental officials or agents are hereby directed to forego the collection of any such tax and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax.

40.     Substantive Consolidation   Pursuant to Sections 2.1 and 2.2 of the Plan, on the Effective Date, and for purposes of Distributions under the Plan, the Chapter 11 Cases shall be substantively consolidated and (i) all Claims among the Debtors shall be eliminated, (ii) all assets and liabilities of the Debtors shall be treated as though they were merged (such liabilities to be satisfied in accordance with and subject to the terms of the Plan), (iii) all cross guaranties, indemnities, co-signatures, sureties or otherwise shall be eliminated and any obligation of any Debtors by one or more of the Debtors shall be deemed to be a single

20