obligation of the consolidated Debtors, (iv) any Claims filed or to be filed in connection with any such obligation shall be deemed one Claim against the consolidated Debtors, and (v) each and every Claim filed or to be filed in the individual chapter 11 case of any of the Debtors shall be deemed filed against the consolidated Debtors and shall be deemed joint and several obligations of the Debtors' estates. Notwithstanding the foregoing, substantive consolidation shall not affect the obligations of any Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is closed, dismissed or converted.

        41.   Bar Date for Administrative Claims. Holders of Administrative Claims that arose on or before April 30, 2003 were required to file an Administrative Claim on or before May 15, 2003, *i.e.*, the First Administrative Bar Date, pursuant to the Bar Date Order. Holders of Administrative Claims that arose after April 30, 2003 that have not been paid as of the Effective Date shall file a request for payment of Administrative Claims with the Court and serve a copy of such request upon counsel to each of the Trustees such that it is received no later than the date that is forty-five (45) days after the Confirmation Date, *i.e.*, the Second Administrative Bar Date. If an Administrative Claim was not timely filed by the First Administrative Bar Date or is not timely filed by the Second Administrative Bar Date, as applicable, then such Administrative Claim shall be forever barred and shall not be enforceable against Debtors, their successors, their assigns or their property, Administrative Claims Reserve Fund or the Creditor Trust. The foregoing shall not apply to the Professional Fee Claims. An objection to an Administrative Claim filed pursuant to this provision must be filed within ninety (90) days from the later of the date such Administrative Claim is filed and properly served or ninety (90) days after the Effective Date. The Debtors and Creditor Trust shall have the right to seek an extension

21

JUN-10-2004  12:06                                                          P.23

of the time to object. The following persons or entities need not file a proof of Administrative Claim:

> i.   any person who, or entity which, has already filed a proof of Administrative Claim against the Debtors with the clerk of the Court; and
>
> ii.  any holder of an Administrative Claim that has heretofore been deemed Allowed under the Plan or been Allowed by Order of the Court.

42.   _Professional Compensation and Reimbursement Claims._ The Creditor Trust shall pay Professionals who are entitled to allowance of fees and reimbursement of expenses as of the Effective Date from the Creditor Trust Expense Fund as provided under the Asset Reallocation and Settlement Agreement and the Plan.

43.   The Court shall rule on each request for payment of Professional Fees before the fees will be paid, except as such fees have been paid pursuant to the Interim Compensation Order. For all Professional Fees, the Professional in question shall file and serve a properly noticed fee application and the Court shall rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan; provided that nothing herein shall be deemed a waiver by the Professionals of the unpaid portions of their Allowed but unpaid Professional Fee Claims, nor shall anything herein abrogate or modify the terms of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees.

44.   Except as otherwise provided by Order of the Court for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve, pursuant to the notice provisions of the Interim Compensation Order and the Bankruptcy Code, an application for final

22

JUN-18-2004  12-47                                                    P.24

allowance of compensation and reimbursement of expenses by no later than the Second
Administrative Bar Date. All such applications for final allowance of compensation and
reimbursement of expenses will be subject to the authorization and approval of the Court and to
the provisions of the Cash Collateral Order as such Order pertains to the payment of Allowed
Professional Fees. Holders of Administrative Claims (including, without limitation,
Professionals) requesting compensation or reimbursement of expenses that do not file such
requests by the applicable bar date shall be forever barred from asserting such claims against the
Debtors or their successors, their assigns or their property. Any objection to Professional Fee
Claims shall be filed on or before the date specified in the application for final compensation.

     45.    Notwithstanding anything herein to the contrary, following the occurrence
of the Effective Date, Professionals shall be authorized to retain any funds held on retainer for
payment of fees and expenses authorized to be paid pursuant to the Plan, including fees and
expenses approved by the Court in connection with such Professionals' final applications for
allowance of compensation and reimbursement of expenses. Thereafter, (a) Shearman &
Sterling LLP, counsel for the Debtors, shall be authorized to continue to hold a retainer in the
amount of $25,000 until the earlier of (i) six months after the Effective Date or (ii) entry of the
Final Decree, and shall be authorized without further order of the Court to apply such retainer to
fees and expenses incurred in connection with services rendered on behalf of the Debtors, their
estates or the Creditor Trust on or after the Effective Date and (b) other Professionals shall return
the unapplied balance of any retainer to the Senior Lenders' Trustee for distribution to the Senior
Lenders.

     46.    Payment of Fees. All fees due and payable under 28 U.S.C. § 1930 that
have not been paid shall be paid on or before the Effective Date from the Budget. Payments

after the Effective Date shall be made as required by statute and shall be paid by the Creditor

Trust in accordance with the Budget.

47.     Failure to Consummate Plan.  If the Effective Date does not occur on or

before the date that is sixty (60) days after the Confirmation Date, the Debtors may seek to have

this Confirmation Order vacated and the Plan revoked and withdrawn.

48.     Retention of Jurisdiction.  Except as otherwise provided in the Plan, the

Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy

Code, arising in or related to these chapter 11 cases and the Plan.  The Court shall also have

exclusive jurisdiction:

      i.     to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any of the Debtors was or is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

      ii.    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, transactions and other agreements or documents created in connection with the Plan;

      iii.   to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

      iv.   to ensure that Distributions to Holders of Allowed Claims are accomplished as provided in the Plan;

      v.    to hear and determine any timely objections to Administrative Claims or to proofs of Claims and Interests filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part;

24

vi.   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

vii.   to issue orders in aid of execution of the Plan;

viii.   to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

ix.   to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

x.   to hear and determine disputes arising in connection with or relating to the Plan, the interpretation, implementation or enforcement of the Plan, or the extent of any Entity's obligations incurred in connection with or released under the Plan;

xi.   to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

xii.   to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

xiii.   to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

xiv.   to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-filed proofs of claim in accordance with Rule 9006(b) of the Bankruptcy Rules;

xv.   to enter a Final Decree closing these chapter 11 cases;

xvi.   to determine matters that may arise in connection with the Creditor Trust or the Trust Agreement;

xvii.   to determine and hear any actions or controversies by or against Trustees or Plan Oversight Committee; and

25

JUV-10-2004  12:47

xviii. to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including, without limitation, the Global Settlement or any other act or omission taken or to be taken in connection with these chapter 11 cases commenced against any party in these chapter 11 cases, including, without limitation, the Creditor Trust, the Debtors, the Creditors' Committee, the Lenders and their respective current and former directors and officers, members, agents, advisors, attorneys, advisors and other professionals and Entities employed pursuant to sections 327 and 1103 of the Bankruptcy Code.

49.     <u>Acceptance by Governmental Units</u>. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan including, without limitation, documents and instruments for recording in county and state offices where any document may need to be filed in order to effectuate the Plan, including any documents executed by the Creditor Trust as successor to the Debtors.

50.     <u>Notice of Entry of Confirmation Order; Notice of Second Administrative Bar Date</u>. On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order (which notice shall include notice of the Second Administrative Bar Date) pursuant to Rules 2002(f)(7), 2002(k) and 3020(c) of the Bankruptcy Rules on all creditors, the United States Trustee and other parties in interest, by causing a notice of entry of the Confirmation Order and the Second Administrative Bar Date in substantially the form of the notice annexed hereto as Exhibit B, which form is hereby approved (the "Notice of Confirmation and Second Administrative Bar Date"), to be delivered to such parties by first class mail, postage prepaid; <u>provided however</u>, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this

26

Confirmation Order to any person to whom the Debtors mailed a notice of the Confirmation Hearing but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address" or "forwarding order expired," or similar marking, unless the Debtors have been informed in writing by such person of that person's correct address. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

51.    _References to Plan Provisions_. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

52.    _Confirmation Order Controlling_. If there is any direct conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, provided however that nothing in this Confirmation Order shall undermine or impair the effectiveness of the Asset Reallocation and Settlement Agreement, and to the extent there is any conflict between this Confirmation Order and the provisions of the Asset Reallocation and Settlement Agreement, the provisions of the Asset Reallocation and Settlement Agreement shall control.

53.    _Reversal_. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent Order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such Order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or

27

vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

54.    Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

55.    Rule 7062.  Notwithstanding Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry.

56.    Releases by the Debtors and the Creditors' Committee.  Pursuant to Paragraph 4A of the Asset Reallocation and Settlement Agreement, the Debtors and the Creditors' Committee have provided the releases, waivers and discharge in respect of the Released Lender Parties as set forth therein.  Pursuant to Paragraph 4C of the Asset Reallocation and Settlement Agreement, the release, waiver and discharge of the Term C Lenders is expressly limited and qualified as set forth therein.

57.    Exculpation.  Pursuant to Section 14.10 of the Plan, none of the Agent, the Debtors, the Creditor Trust, the Trustees, the Creditors' Committee, the Senior Lenders or the Indenture Trustees, nor any of their respective present or former members, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any Holder of a Claim or Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, including, without limitation, the Asset Reallocation and Settlement Agreement, the formulating, negotiating or implementing of the Plan, the solicitation of acceptances of the Plan, the pursuit of

28

confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the

administration of the Plan or the property to be distributed under the Plan, except for their gross

negligence or willful misconduct, and in all respects such parties shall be entitled to reasonably *(if any)*

rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11

Cases and under the Plan, *provided, however, that nothing in the Plan or this Confirmation Order shall affect or abrogate the rights of the State of New York to exercise its police or regulatory powers.*

58.    Noteholder Releases.  No Holder of a Claim in Class 5 or Class 6 having

returned a ballot opting out of the Noteholder Releases, as of the Effective Date, each Holder of

a Claim in Class 5 and each Holder of a Claim in Class 6 that is entitled to vote on the Plan

(including any Holders of Class 5 Claims or Class 6 Claims that did not return a ballot or any

Holders of Class 5 Claims or Class 6 Claims that accept a distribution under the Plan) shall be

deemed to have unconditionally and fully waived, released and forever discharged the Released

Lender Parties from any and all manner of actions, causes of action, in law or in equity, suits,

debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies,

trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever,

known or unknown, fixed or contingent, which such Holder or Trustee has had, now has, or may

hereafter have against the Released Lender Parties, by reason of any matter, cause or thing

whatsoever, from the beginning of time through and to the Effective Date, relating to or

concerning the Debtors, the Credit Agreement, the Senior Subordinated Notes or the Senior

Discount Notes; provided however, that the foregoing release does not apply to claims (if any)

for enforcement of the Senior Lenders' obligations under the Asset Reallocation and Settlement

Agreement.  In addition, the releases set forth in and in the manner provided by Section 4B of the

Asset Reallocation and Settlement Agreement shall be deemed delivered by the 12% Note

Indenture Trustee and the 14% Note Indenture Trustee as of the Effective Date.

29

59.    Releases by the Agent and the Senior Lenders.  Pursuant to Paragraph 4D of the Asset Reallocation and Settlement Agreement, the Agent and the Senior Lenders waived and relinquished any and all interest in and claims that each of them have or may have against the Excluded Assets, including the Contributed Assets and Rights of Action, except to the extent specifically set forth in the Asset Reallocation and Settlement Agreement.

60.    Approval of the Trustees.  The appointment of Chad Shandler as the Unsecured Creditors' Trustee and the appointment of Robert Troisio of BTB Associates LLC as the Senior Lenders' Trustee are hereby approved.  The liability of the Trustees shall be limited as set forth in the Plan and the Trust Agreement, and without the permission of this Court, no judicial, administrative, arbitration or other action or proceeding shall be commenced against the Trustees in their official capacity, with respect to their status, duties, powers, acts or omissions as Trustees in any forum other than this Court.  The Trustees shall be vested with the rights, powers and benefits set forth in the Trust Agreement.

61.    Distributions to Noteholders.  In accordance with Section 9.1 of the Plan, the record date for the purpose of determining which Noteholders are entitled to receive any and all distributions on account of Noteholder Claims, irrespective of the date of or number of distributions, shall be 5:00 p.m., prevailing Eastern Time, on the date the Confirmation Order is entered on the Court's docket (the "Noteholder Record Date"). On the Noteholder Record Date the registers with respect to Noteholder Claims (the "Noteholder Registers") shall be deemed closed for purposes of determining whether a holder of a Noteholder Claim is a record holder entitled to distributions under the Plan.  The Debtors, the Indenture Trustees and their respective agents, successors, and assigns shall have no obligation to recognize, for purposes of

30

A - 535

distributions pursuant to or in any way arising from the Plan, any Noteholder Claim or Claim arising therefrom or in connection therewith transferred after the Noteholder Record Date. Instead, they all shall be entitled to recognize and deal for distribution purposes with only those record holders set forth in the Noteholder Registers as of the Noteholder Record Date irrespective of the number of distributions to be made under the Plan or the date of such distributions.

62.    References to Plan Provisions. The failure to specifically include or reference to any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed and approved in its entirety.

63.    No Waiver of Rights. Unless otherwise agreed to in writing, no distribution on account of any Claim, whether allowed on or after the Effective Date shall be deemed to waive the rights of the Debtors or the Creditor Trust in connection with any causes of action against the Holder of any Claim receiving such distribution, including without limitation, any Rights of Action or any other causes of action under Chapter 5 of the Bankruptcy Code.

64.    Technical Adjustments. Prior to the Effective Date, the Debtors with the reasonable consent of the Agent and the Creditors' Committee may make appropriate technical adjustments and modifications to the Plan without further order or approval of this Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests.

31

65.    <u>Binding Effect</u>.  Pursuant to sections 1123(a) and 1142(a) of the

Bankruptcy Code and the provisions of this Confirmation Order, the Plan shall apply and be

enforceable notwithstanding any otherwise applicable non-bankruptcy law.

Dated:    Wilmington, Delaware
          June ___, 2004

                                    _____
                                    HONORABLE KEVIN J. CAREY
                                    UNITED STATES BANKRUPTCY JUDGE

32

A - 537

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------x
                       :      Chapter 11
In re                  :
                       :      Case No. 02-13672 (KJC)
INSILCO TECHNOLOGIES, INC., et al.,[1]  :
                       :      (Jointly Administered)
           Debtors.    :
                       :
--------------------------------------------x

AMENDED JOINT LIQUIDATING PLAN PURSUANT TO
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

SHEARMAN & STERLING LLP
Constance A. Fratianni
Scott C. Shelley
Susan A. Fennessey
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

       – and –

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Pauline K. Morgan (Del. 3650)
Maureen D. Luke (Del. 3062)
Sharon M. Zieg (Del. 4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Co-Counsel for the Debtors and Debtors in Possession

Dated: February 13, 2004

---

[1]    The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

NYDOCS03/672357.16

WP3-973424.1         616830001

ii

## TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME
    AND GOVERNING LAW ....................................................................................1
Section 1.1. Rules of Interpretation, Computation of Time and Governing Law .................1
Section 1.2. Defined Terms ......................................................................................1

ARTICLE II SUBSTANTIVE CONSOLIDATION OF DEBTORS; CANCELLATION OF
    INTERCOMPANY CLAIMS ...............................................................................11
Section 2.1. Substantive Consolidation ...................................................................11
Section 2.2. Cancellation of Intercompany Claims .....................................................11

ARTICLE III ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES .....................12
Section 3.1. Introduction .......................................................................................12
Section 3.2. Administrative Claims ..........................................................................12
Section 3.3. Statutory Fees ....................................................................................13
Section 3.4. Professional Fees ................................................................................13

ARTICLE IV CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
    INTERESTS .....................................................................................................14
Section 4.1. Summary ...........................................................................................14
Section 4.2. Class 1 – Senior Lenders' Claims ..........................................................14
Section 4.3. Class 2 – Other Secured Claims ............................................................14
Section 4.4. Class 3 – Priority Claims ......................................................................15
Section 4.5. Class 4 – General Unsecured Claims ......................................................15
Section 4.6. Class 5 – Senior Discount Notes ...........................................................16
Section 4.7. Class 6 – Senior Subordinated Notes .....................................................16
Section 4.8. Class 7 – Term-C Loan Claims ..............................................................17
Section 4.9. Class 8 – Equity Interests ....................................................................17
                                                                                         18

ARTICLE V ACCEPTANCE OR REJECTION OF PLAN .............................................18
Section 5.1. Voting Classes ....................................................................................18
Section 5.2. Acceptance by Class of Creditors and Holders of Interests ........................18
Section 5.3. Cramdown .........................................................................................18

ARTICLE VI EFFECT OF CONFIRMATION ...........................................................19
Section 6.1. Vesting of Assets in the Creditor Trust ...................................................19
Section 6.2. Authority to Effectuate Plan .................................................................19
Section 6.3. Dismissal of Officers and Directors and Dissolution of the Debtors and Board ...20
Section 6.4. Status Reports ....................................................................................20
Section 6.5. Escrows ............................................................................................20
Section 6.6. Binding Effect .....................................................................................20
Section 6.7. Corporate Action .................................................................................20
Section 6.8. Amendment of Final Cash Collateral Order ..............................................20
Section 6.9. Dissolution of Creditors' Committee; Plan Oversight Committee ..................21
Section 6.10. Late Claims ......................................................................................21

ARTICLE VII IMPLEMENTATION OF THIS PLAN ..................................................21
Section 7.1. Funding of Plan ..................................................................................21
Section 7.2. Creation of the Creditor Trust ...............................................................22

NYDOCS03/672357.16

WP3:973424.1         61683.1001

A - 539

iii

Section 7.3. The Trustees ....................................................................................................22

ARTICLE VIII RIGHTS OF ACTION ...........................................................................24
Section 8.1. Maintenance of Rights of Action .......................................................................24
Section 8.2. Preservation of All Rights of Action Not Expressly Settled or Released .................24

ARTICLE IX PROVISIONS REGARDING DISTRIBUTIONS ..........................................25
Section 9.1. Distribution to Creditors ...................................................................................25
Section 9.2. Claims Allowed as of the Effective Date .............................................................25
Section 9.3. Unsecured Disputed Claims Reserve ..................................................................25
Section 9.4. Time and Manner of Payments ..........................................................................26
Section 9.5. Delivery of Distributions ..................................................................................26
Section 9.6. Undeliverable Distributions ..............................................................................26
Section 9.7. Compliance with Tax Requirements/Allocation ....................................................26
Section 9.8. Time Bar to Cash Payments ..............................................................................27
Section 9.9. Fractional Dollars, De Minimis Distributions .......................................................27
Section 9.10. Set-Offs ......................................................................................................28

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED CLAIMS ..............................28
Section 10.1. Prosecution of Objections to Claims .................................................................28
Section 10.2. Estimation of Claims .....................................................................................28
Section 10.3. Cumulative Remedies ....................................................................................29
Section 10.4. Allowance of Claims and Interests ...................................................................29

ARTICLE XI EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................29
Section 11.1. Rejection of Executory Contracts and Unexpired Leases ......................................29
Section 11.2. Rejection Damage Claims ...............................................................................30

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF
    THIS PLAN ..............................................................................................................30
Section 12.1. Conditions Precedent to Confirmation Date of this Plan ........................................30
Section 12.2. Conditions Precedent to Effective Date of this Plan .............................................30
Section 12.3. Waiver of Conditions Precedent .......................................................................30

ARTICLE XIII RETENTION OF JURISDICTION ...........................................................31
Section 13.1. Retention of Jurisdiction .................................................................................31

ARTICLE XIV MISCELLANEOUS PROVISIONS ..........................................................32
Section 14.1. Title to Assets ..............................................................................................32
Section 14.2. Releases of All Liens .....................................................................................32
Section 14.3. Modification of Plan ......................................................................................32
Section 14.4. Revocation or Withdrawal ..............................................................................32
Section 14.5. Injunction ...................................................................................................33
Section 14.6. Discharge ...................................................................................................33
Section 14.7. Indemnification ............................................................................................33
Section 14.8. Term of Existing Injunctions or Stays ..............................................................34
Section 14.9. Releases .....................................................................................................34
Section 14.10. Exculpation and Limitation of Liability ...........................................................35
Section 14.11. Cancellation of Notes, Instruments, Debentures and Equity Securities ...................36
Section 14.12. Post-Effective Date Fees and Expenses ...........................................................36
Section 14.13. Section 1146 Exception .................................................................................36
Section 14.14. Severability ...............................................................................................36

NY DOCS03/672357 16

WP3:973424.1          61683 1001

A - 540

iv

Section 14.15. Recognition .................................................................................................36
Section 14.16. Governing Law .............................................................................................36
Section 14.17. Notices .........................................................................................................37
Section 14.18. Closing of Cases ..........................................................................................38
Section 14.19. Section Headings ..........................................................................................38
Section 14.20. Primacy of Asset Reallocation and Settlement Agreement ..........................38
Section 14.21. Continuing Viability of Other Orders/Agreements ......................................38
Section 14.22. Administration of Wind Down Budget ..........................................................39

NYDOCS03/672357 16

WP3:973424 1                    61683 1001

The above-captioned debtors and debtors in possession respectfully propose the following Amended Joint Liquidating Plan (this "Plan") pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101-1330.

## ARTICLE I
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

Section 1.1. *Rules of Interpretation, Computation of Time and Governing Law*

    (a)    For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (e) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (f) any term used in capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

    (b)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply

    (c)    Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

Section 1.2. *Defined Terms*

    (a)    As used in this Plan, the following terms have the respective meanings specified below, which meanings are equally applicable to both the singular and plural forms of the terms defined:

    Administrative Claim: Any Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors in Possession, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the administration and implementation of this Plan, any Claims for compensation and reimbursement of expenses arising during the period from and after the Petition Date and to the Confirmation Date or otherwise in accordance with the provisions of this Plan, any fees or charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930 or as determined by the Bankruptcy Court to be an Administrative Claim in a Final Order.

    Administrative Claims Reserve Fund: Such amount of Cash, constituting proceeds of Excluded Assets, which are allocable to Administrative Claims under the Asset Reallocation and Settlement

2

Agreement (including under any applicable line items in the Wind Down Budget), as the Debtors and the Creditors' Committee shall determine to be necessary to retain on the Effective Date in respect of unpaid Allowed Administrative Claims and Professional Fees or, if Disputed, for the purpose of paying such Disputed amounts to the extent such Disputed amounts become Allowed. Such Administrative Claims Reserve Fund shall be equal to an amount to be disclosed in a notice that the Debtors will file and serve on or before five (5) days prior to the Confirmation Date (which amount shall not exceed the sum of (i) expenses set forth in the Wind Down Budget from the Effective Date to entry of the Final Decree), and (ii) amounts attributable to Disputed Administrative Claims (not to exceed the amounts available under the Asset Reallocation and Settlement Agreement for the payment of such claims. The Debtors will serve this notice via overnight express mail or Federal Express upon (i) the US Trustee, (ii) counsel to the Lenders, (iii) counsel to the Creditors' Committee, and (iv) parties that have requested notice pursuant to Rule 2002 of the Bankruptcy Rules.

Administrative Expense Carve Out: The amount of Contributed Assets described in Paragraph 3Aii of the Asset Reallocation and Settlement Agreement, up to $250,000 allocated for the payment of administrative expenses, as more particularly defined and provided in Section 3Aii of the Asset Reallocation and Settlement Agreement.

Agent: Bank One, N.A., as Administrative Agent under the Credit Agreement.

Allowed: The term "allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which the Debtors or other party in interest have not filed an objection by the Effective Date; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) in any stipulation with the Debtors of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, (ii) in any stipulation with the Debtors of amount and nature of Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court, or (iii) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with this Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of this Plan.

Allowed Claim/Allowed Interest: Any Claim against or Interest in the Debtors (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim against or Interests in the Debtors, (ii) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent or (iii) any Interest registered in the stock register or partnership documents maintained by or on behalf of the Debtors as of the Record Date and, in each such case in clauses (i), (ii) and (iii) above, a Claim or Interest as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to section 553 of the Bankruptcy Code.

Asset Reallocation and Settlement Agreement: The settlement agreement dated as of May 13, 2003, and approved by Order of the Bankruptcy Court entered on June 16, 2003, by and among (i) Insilco Technologies and its affiliated debtors, (ii) the official committee of unsecured creditors appointed in the Insilco Technologies bankruptcy cases, (iii) Bank One N.A., as agent and the lenders, including Bank One N.A., under the Second Amended and Restated Credit Agreement dated as of August 25, 2000, as

3

amended, (iv) Wachovia Bank, National Association as indenture trustee for the 12% senior subordinated notes due 2007 issued by Insilco Technologies, and (v) U.S. Bank, National Association as indenture trustee for the 14% senior discount notes due 2008 issued by Insilco Holding Co., Inc. A true and correct copy of the Asset Reallocation and Settlement Agreement and the Final Order approving it are attached hereto as Exhibit A and incorporated herein by reference.

Assets: Any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Rights of Action and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

Avoidance Actions: All actions, causes of action or claims of the Debtors or their estates arising under chapter 5 of the Bankruptcy Code, whether or not commenced as of the Effective Date.

Bankruptcy Code: Title 11 of the United States Code, as applicable to the Chapter 11 Cases, as amended.

Bankruptcy Court: The United States Bankruptcy Court for the District of Delaware.

Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court.

Bar Date: May 15, 2003.

Bar Date Order: The Order (A) Establishing Procedures and Deadlines for the Filing of (i) Proofs of Claim and (ii) Requests for Payment of Administrative Expenses, (B) Establishing Consequences for the Failure to Comply with Such Procedures and Deadlines and (C) Approving Form and Scope of Notice of Such Procedures and Deadlines, entered by the Bankruptcy Court on March 25, 2003.

Budget: The budget annexed to this Plan as Exhibit B, which sets forth the expenses of the wind-down of the Debtors from and after the Effective Date, and which is incorporated by reference in its entirety in this Plan. The Budget shall be funded exclusively from Excluded Assets subject to and in accordance with the Asset Reallocation and Settlement Agreement and as provided under the Cash Collateral Order in respect of the Wind Down Budget and the Carve Out (as defined in the Cash Collateral Order).

Cash: Cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

Cash Collateral Order: The Final Order Authorizing Use of Cash Collateral and Granting Replacement Liens entered by the Bankruptcy Court on January 16, 2003, as amended.

Chapter 11 Cases: The cases under chapter 11 of the Bankruptcy Code, commenced by Debtors in the Bankruptcy Court, being jointly administered under Case No. 02-13672 (KJC).

4

Charging Lien:  Any lien or other priority in payment arising prior to the Effective Date to which the Indenture Trustees are entitled, pursuant to the Indentures, against distributions to be made to Noteholders.

Claim:  Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Claims Reserve Balance:  The Cash constituting proceeds of Excluded Assets in the Unsecured Creditor Disputed Claims Reserve on the first date after which (a) all Distributions or payments to be made under this Plan or a Final Order in respect of each Allowed Unsecured Creditor Claim have been made, (b) no Unsecured Creditor Claim is a Disputed Claim and (c) all payments to be made from the Unsecured Creditor Disputed Claims Reserve have been made.

Class:  A category of Holders of Claims or Equity Interests as set forth in Article IV of this Plan.

Confirmation Date:  The date upon which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

Confirmation Order:  The order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

Consummation:  The occurrence of the Effective Date.

Contributed Assets:  Subject to the provisions of Paragraph 4B of the Asset Reallocation and Settlement Agreement, the following cash and proceeds have been reallocated by the Senior Lenders to the Holders of Allowed Unsecured Claims pursuant to Paragraph 3 of the Asset Reallocation and Settlement Agreement:

(a)    $1,750,000 from the Net Proceeds realized from the closing of the Going Concern Sales;

(b)    Net Proceeds from the sale of the Debtors' real properties located in Larne, Northern Ireland, Taylorsville, North Carolina and McAllen, Texas and the Net Proceeds from the sale of the miscellaneous office equipment and furnishings located in the Debtors' Columbus, Ohio offices as listed on Schedule 1 hereto; provided, however, that, to the extent that the Estates do not otherwise have sufficient readily available unencumbered assets to pay Administrative Claims (other than Professional Fees) required to be paid in order to obtain confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, the Estates shall be entitled to use up to $250,000 of the Net Proceeds described in this subparagraph (b) for the payment of such Administrative Claims; and provided further that the aggregate Net Proceeds provided in this subparagraph (b) shall not exceed $1,250,000 (inclusive of the $250,000 that may be allocated for Administrative Claims hereunder)  Any Net Proceeds from the sale of the assets described in this subparagraph (b) that exceed $1,250,000 shall not be considered Contributed Assets and shall be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement;

5

(c)     $250,000 of cash collateral (which shall be asset sale proceeds), plus 10% of the net recoveries derived from (x) the Debtors' claims and causes of action against Star Services, Inc. relating to the litigation bearing Supreme Court of the State of New York Index No. 605676/97 and generally referred to as the "Star Services Litigation" and (y) income tax refunds received by the Debtors from and after April 15, 2003, for the purpose of establishing a "Creditor Trust" to investigate and pursue Rights of Action Recoveries, provided the Contributed Assets under this subparagraph (c) shall not exceed $750,000, with any excess over $750,000 to be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement and which excess (including any net recoveries derived from the assets described under (x) and (y) beyond the amount allocated to the Creditor Trust in this paragraph (c)) will not constitute "Contributed Assets";

(d)     the Reallocated Monies; provided, however, that the first $200,000 of any such Reallocated Monies shall be allocated first to the payment of the Allowed fees and expenses of the Creditors' Committee's professionals incurred from and after May 1, 2003, with any remaining Reallocated Monies available for the payment of other Administrative Claims.

Credit Agreement:  The Second Amended and Restated Credit Agreement, dated as of August 25, 2000, as thereafter amended from time to time, among Insilco Technologies and TAT Technology Inc , as Borrowers, U.S. Bank, N A., as Administrative Agent, DLJ Capital Funding, Inc , as Lead Arranger and Syndication Agent, TransAmerica Business Credit Corporation and LaSalle National Bank, as Co-Documentation Agents, and the various financial institutions party thereto.

Creditor Trust:  The statutory trust created pursuant to the Delaware Statutory Trust Act (12 Del. C. Section 3801 et. seq ), organized in series and composed of an Unsecured Creditor Series and a Senior Lender Series, created pursuant to Sections 3804 and 3806(b)(2) of the Delaware Statutory Trust Act, the Trust Agreement and this Plan.

Creditor Trust Expense Fund:  A fund, which shall be held by the Creditor Trust for use in paying the expenses of administering the Unsecured Creditor Series of the Creditor Trust, consisting of the following Contributed Assets: $250,000 of cash collateral plus ten percent of the net proceeds recovered from (a) the Star Services Litigation and (b) Tax Refunds, with all of the foregoing to be used to fund prosecution of the Rights of Action and expenses of the Creditor Trust or otherwise distributed to Holders of Allowed Unsecured Claims pursuant to the provisions of the Asset Reallocation and Settlement Agreement, as incorporated in this Plan; provided, however, that the aggregate amount of the Contributed Assets funding the Creditor Trust Expense Fund shall not exceed $750,000, with any excess over $750,000 deemed not to constitute Contributed Assets and to be immediately remitted to or retained by the Agent for the benefit of the Senior Lenders in accordance with the Asset Reallocation and Settlement Agreement.

Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on or about January 3, 2003.

Debtors or Debtors in Possession:  Insilco Technologies, Inc., Insilco Holding Co , InNet Technologies, Inc., Insilco International Holdings, Inc , Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc , Signal Caribe, Inc and Signal Transformer Co , Inc

NYDOCS03/672357 16

WP3:973424 1          61683 1001

A - 546

6

Disclosure Statement:   The amended disclosure statement for this Plan, filed concurrently herewith, and approved by the Bankruptcy Court as containing adequate information on or about February 13, 2004.

Disputed:  Any Claim or Equity Interest (a) listed on the Schedules as unliquidated, disputed or contingent, or (b) as to which Debtors or any other party in interest with standing have interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtors or any other party in interest with standing in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) unless otherwise indicated in this Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

Distribution:  The Cash or Assets to be distributed to Holders of Allowed Claims under the terms of this Plan.

Distribution Date:  Any date on which the Creditor Trust makes a Distribution pursuant to this Plan.

Effective Date:  The eleventh day following the Confirmation Date or, if an appeal of the Confirmation Order has been taken, the first business day following the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions specified in Article XII of this Plan have been (i) satisfied or (ii) waived pursuant to Article XII.

Effective Date Distributions:  Those Distributions payable on the Effective Date in respect of (i) Allowed Administrative Claims, (ii) Other Secured Claims, and (iii) Priority Claims.

Entity:  An entity as defined in section 101(15) of the Bankruptcy Code.

Equity Interests:  Any equity interest in one or more of the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

Excluded Assets:   Those Assets defined as Excluded Assets in Paragraph 2 of the Asset Reallocation and Settlement Agreement.

Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

Final Order:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

First Administrative Bar Date: May 15, 2003.

14% Note Indenture:  That certain Indenture governing the Senior Discount Notes dated August 17, 1998, between Silkworm Acquisition Corporation, as issuer, and Star Bank, N.A. n/k/a U.S. Bank, as indenture trustee, together with any amendments thereto

NYDOCS03/672357 16
WP3:973424 1          61683 1001

A - 547

7

14% Note Indenture Trustee:  Star Bank, N.A. n/k/a U.S. Bank, National Association, as indenture trustee under the 14% Note Indenture.

General Unsecured Claims:  Unsecured Claims other than Noteholder Claims and Term-C Loan Claims.

Going Concern Sales:  The sales of substantially all of the Debtors' Assets pursuant to (i) an Asset Purchase Agreement with SRDF Acquisition Company, LLC for the sale of assets related to the Debtors' precision stampings business for approximately $13 million dated as of December 15, 2002; (ii) a Stock and Asset Purchase Agreement with Amphenol Corporation and Amphenol Technical Products International Co. for the sale of the assets related to the Debtors' custom assemblies business for $10.14 million, dated as of December 15, 2002; (iii) a Stock and Asset Purchase Agreement with Bel Fuse Ltd., Bel Fuse Macau, L.D.A., Bel Connector Inc. and Bel Transformer Inc. for the sale of the assets related to the Debtors passive components business for $35 million, dated as of December 15, 2002; (iv) a Share Sale and Purchase Agreement with Stephen Bullock for the sale of the Debtors' interest in Insilco Teoranta for $100,000 and the assumption of certain liabilities, dated as of December 15, 2002; and (v) an Asset Purchase Agreement with LL&R Partnership for $1.7 million for the sale of the Debtors' North Myrtle Beach, South Carolina facility, dated as of December 15, 2002.

Holder:  An Entity holding an Equity Interest or Claim.

Impaired:  A Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

Indenture:  The 12% Note Indenture and the 14% Note Indenture.

Indenture Trustees:  The 12% Note Indenture Trustee and the 14% Note Indenture Trustee.

Initial Distribution Date:  The first Distribution Date, which date shall be fifteen days following the date on which at least 80% in amount of the General Unsecured Claims filed against the Debtors in these cases are Allowed Claims or have been disallowed or as soon as practicable thereafter.

Intercompany Claims:  Any Claim held by any of the Debtors against any other Debtor.

Interim Compensation Order:  The Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Professionals entered by the Bankruptcy Court on January 10, 2003, as amended by the amended order dated February 20, 2003.

Lenders:  The lenders and financial institutions (and any of their successors or assigns) that are party to the Credit Agreement.

Lien:  Any charge against or interest in property to secure payment or performance of a claim, debt or obligation.

Net Proceeds:  The total proceeds derived from the sale, liquidation, disposition or other recoveries on any Asset or the Going Concern Sales, net of all direct and indirect expenses of such disposition, including, but not limited to, the costs of maintaining, preparing and marketing such Asset for sale.

Noteholder Claims:  The Claims of Noteholders.

NYDOCS03/672357.16
WP3 973424.1          61683.1001

A - 548

8

**Noteholder Release:**  The release, waiver and discharge of the Senior Lenders described in Paragraph 4B of the Asset Reallocation and Settlement Agreement and set forth in Section 14.9 hereof.

**Noteholders:**  The Holders of the Senior Discount Notes and the Senior Subordinated Notes.

**Noteholder's Share:**  The ratio of (x) the allowed claims of Holders of Class 5 Claims or Class 6 Claims that have not granted or are not deemed to have granted the Noteholder Release to (y) the allowed claims of all Unsecured Creditors.

**Other Secured Claims:**  Those Secured Claims other than the Senior Lenders' Secured Claims as of the Petition Date.

**Petition Date:**  December 16, 2002

**Plan Oversight Committee:**  The committee created pursuant to Section 6.9 of this Plan.

**Priority Claims:**  Those claims afforded priority under sections 507(a) and 502(f) of the Bankruptcy Code.

**Professionals:**  An Entity (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**Professional Fees:**  Those fees and expenses claimed by Professionals retained through a Bankruptcy Court order under sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Effective Date.

**Reallocated Monies:**  A sum of Cash, not to exceed $500,000, equal to the difference between (x) the amounts allocated to line items other than "Selling Costs" in the Wind Down Budget and (y) the actual amounts necessary to fund such line items, which sum may be reallocated and used by the Debtors' estates for the purposes set forth in Paragraph 3A(iv) of the Asset Reallocation and Settlement Agreement.

**Record Date:**  The Confirmation Date, unless otherwise provided by order of the Bankruptcy Court.

**Released Claims:**  Those Rights of Action or Claims that were specifically waived and released under the Asset Reallocation and Settlement Agreement.

**Released Employees:**  Collectively, Michael Elia, Fred Stewart, Steve Crea and Phil Pitman

**Released Lender Parties:**  The Agent and each of the Senior Lenders and each of their agents, employees and professionals.

**Releasing Estate Parties:**  The Debtors and the Creditors' Committee, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns.

**Rights of Action:**  All actions, causes of action, suits, rights of action, counterclaims, crossclaims, rights of setoff, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

9

contracts, controversies, agreements, promises, variances, trespasses, damages or judgments arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including the Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender Parties and Released Employees), in each case held by or in favor of any of the Debtors or their estates whether or not commenced as of the Effective Date, but excluding any of the foregoing which (i) are Released Claims or (ii) relate to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.

Rights of Action Recovery: Any Cash recovery from the Rights of Action less those costs and expenses of the Unsecured Creditors' Trustee and Plan Oversight Committee relating to the prosecution of the Rights of Actions (including those costs and expenses incurred by professionals retained by the Unsecured Creditors' Trustee and Plan Oversight Committee that are not paid from the Reallocated Monies) in excess of the Creditor Trust Expense Fund, that shall be payable to Holders of Unsecured Claims pursuant to the Asset Reallocation and Settlement Agreement, as incorporated in this Plan.

Schedules: The Debtors' schedules of assets and liabilities, statements of financial affairs, and such other schedules filed with the Bankruptcy Court on January 23, 2003 by the Debtors in accordance with section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as amended.

Second Administrative Bar Date: The date that is forty-five (45) days after the Confirmation Date.

Secured Claim: A Claim against the Debtors that is secured by a Lien on the Debtors' property or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Debtors' property or to the extent of the amount subject to setoff as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code.

Senior Discount Notes: The 14% Senior Discount Notes issued by Insilco Holding Co., f/k/a Silkworm Acquisition Corporation, due 2008, and governed by the 14% Note Indenture.

Senior Lenders: The Lenders other than the Term C-Lenders.

Senior Lender Series: The series of the Creditor Trust created and maintained for the benefit of the Senior Lenders.

Senior Lenders' Trustee: The co-trustee of the Creditor Trust appointed by the Agent to administer the Senior Lender Series of the Creditor Trust.

Senior Notes: Collectively, the Senior Discount Notes and the Senior Subordinated Notes.

Senior Subordinated Notes: The 12% Senior Subordinated Notes issued by Insilco Technologies, Inc., f/k/a Insilco Corporation, due 2007, and governed by the 12% Note Indenture.

Series: The Senior Lenders Series and/or the Unsecured Creditor Series.

Settlement Proceeds: The total proceeds derived from the sale, liquidation, disposition or other recoveries on all Assets except Excluded Assets, and including, without limitation, (i) all proceeds, all Cash or cash equivalents in the possession of the Debtors as of the Effective Date or to which the Debtors